Memorandum:

To : The Honorable Rosemary M. Collyer

From : Larry D. Epps, D.C. DC. No. 188-413
D.C. Detention Facility
1901 D. Street S.E.
Washington, D.C. 20003

**RECEIVED**
NOV 2 8 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Subj : Former Assistant United States Attorney
Cause of Action : 42: U.S.C. 1983 Civil Rights Act
Civil Docket for Case #: 1:06-CV-00717-RMC
https://ecf.ded.circdc.dcn/cgi-bin/DktRpt.pl?633932286?

Date : Nov. 2, 2006

To whom it may Concern:

I am writing to make an inquire into obtaining legal assistance concerning a pro-se law suit filed under 42: USC 1983, Civil Rights Act. The suit demands: $25,000,000. The case concerns a massive cover-up and 15 years of wrongful incarceration by

<u>Defendants</u> : United States Attorney General
<u>Defendant</u> : United States Parole Commission
<u>Defendant</u> : Gov., of The District of Columbia Board of Parole
<u>Defendant</u> : Paul G. Howes Former Assistant United States Attorney

Currently, the United States Parole Commission is housing me at the D.C. Detention Facility - pending a revocation hearing to determain whether or not to violate my parole. I am classified as a moderate risk to the community. Subject of violation: Medication prescribed by doctors, failure to report to supervising officer as directed and failure to submit to drug testing. All of the above listed charges could have been handle in society. There was no reason to remove me from the community. However, I've been asked to respond by Nov. 2, 2006 to the Civil Rights Action but I'm unprepared to address the next level of said action. I've filed a motion for "Leave of Court," 556 S.W. 2d 726, 728.

-1-

Also See: R. Civ. Proc. 6(b). I am in dire need of legal assistance in this subject matter. All of the leg-work has been done in this matter, in terms of gathering the evidence needed to slam dunk this case.

## Case History

On August 9th 1988, Government Charges Petitioner with two counts of First degree Murder, one count of Armed Robbery, case # F-14570-A88. Petitioner surrendered himself to Sixth District Police Station, where Petitioner was advised of his rights under Miranda. Petitioner was transported down town to One District where Homicide detective officer Jullier Cobb, took me Petitioner two booking and had him book for two First degree Murder one count of Armed Robbery. I was then taken to homicide at 3:10 AM, and aweighted Arraignment, where that morning August 10, 1988, The honorable Judge Peter Wolf, presided, Charles Cobb, represented the Gov.; and Shealy-Mary McCray Gray was assigned Pro-bono to represent Petitioner.

## Fast Foward

Eight month later while awaiting trial the Government, Paul Howes sends an investigator to interview me. At first I was under the impression that this person was assign by the defense counsel to come and question me... but soon thought better after a few questions. I stopped all lines of questioning and asked this person where he was from. His answer was: The Prosecutors office. I called for the Corrections officer to terminate this interview. The following few days or so, Officers woke me up 3:00 AM for court, even though I was not suppose to be going to court. Once Petitioner arrived at the Court House, United States Marshalls took custody, with orders from AUSA Paul G. Howes to transport Petitioner, Larry D. Epps to 555 4th St. N.W. Upon arriving at Grand Jury, Officers working under directive of AUSA G. Paul Howes, took further custody of Petitioner. Officer Jullier Cobb, asked the U.S. Marshalls to remove their handcuffs, and she put a fresh set on Petitioner. Petitioner was then escorted up some back stare well to the 5th floor where I was then taken to Paul Howe's Grand Jury Minutes Room, where my Blood Brother was setting. Officer Wayne W, Epps, G. Paul Howes and 5. other white people of who I never got their names. Petitioner was sat down in the medelle of the room, directly behind Paul Howes, who after 3 or 4 minutes of silence, spends around in his chair and states, "Larry, I understand that up there at 5929, You can get your DICK SUCKED for a little of nothing." This comment was to breake the ice.

2

Petitioner gave no response. G. Paul Howes forged on to state, "Listen Larry, we now know that you didn't do this murder." Petitioner's response was, "How do you know I didn't do it?" Well we now have infomation that says you didn't do it. Petitioner then request his lawyer's presence, and stated: "You charged me with it 8. months ago now all of a sudden you have information that says I didn't do it. Again Petitioner invoks his right to have Counsel Counsel present during questioning. Petitioner's repeted request for counsel began to got under Paul Howes collor. Paul Howes told Petitioner, "You don't need a lawyer, You're not being charged... Plus Your brother is sitting right there. Petitioner's second reponse was, "You charged me 8. months ago Now you want to tell me I don't need a lawyer, every time I've ever come to court, I've always had a lawyer. You say my brother is here, but my brother is not my lawyer." At this point Mr. Howes tells my brother to take me into the next room and explain to him "that He Iether get on the train or get run over by the train." Petitioner got run over by the train. For three two four week after this first meeting Petitioner was brought to Grand Jury everyday and given creature comforts. Hand Cuffs were removed and Petitioner was allowed to rome from office toffice. Petitioner would get on the phone every day to call his lawyer, but could never catch her. finnally, one day I caught her and she came over to the AUSA office and informed Mr. Howes that she would be filing a Prosecutorial Misconduct Complaint with the Court. This is when strange things began to happen. My lawyer goes from Pro-Bono, to Public Defender Servic because its a conflect of interest. Charles Cobb, offers a plea, to: Drop Armed Robbery, Count A., First Degree Murder, Count C., First Degree Murder, Count B. and reduce count B. to second degree murder, if I intera a Plea of Guilty. I would have to drop the Prosecutorial Mis-conduct Complaint, The Government would not allocute and would not oppose a Rule 35....

-3-

if Petitioner Plead Guilty to the One count of Second degree Murder. On May 8th 1989, Judge Peter Wolf, Reluctantly accepted the Plea. Petitioner was ask to detail a narrative of the events that lead up to the May 8th Plea agreement. When Petitioner was through talking Judge Wolf said, "This dose nt sound to Me like Second degree Murder to Me, it sounds more like self defense... I'm Reluctant to accept This Plea." At this point Judge Wolf wanted to hear from the Government. Mr. Charles Cobb, said, "Your honor, the government has no Representation, your honor." Judge Wolf jumped up out of his chair, but Mr. Cobb, continued to speak, as Judge Wolf said, "Something is wrong here, this man has 11. Pryor felony convictions And the Gov., has nothing bad to say about him?" Mr. Cobb went on to say, your honor, Mr. Epps will also be coming up for a Rule 35. hearing in which the government will not oppose." Judge Peter Wolf, then stated that he Wolf, would not hear the Rule 35., until after the Daerly Smith case, which was one of the murder cases that was being dismissed before Judge Wolf. On 6/23/89 Judge Peter Wolf sentenced Petitioner to Twelve #12. Years to life. The following week The Honorable Peter Wolf was ask to step down And was place in family Court due to his son selling pounds of Marijuana out of the bastment of the Judge's Home. The D.E.A. Watched The Honorable Peter Wolf's Home for one year to determain whether or not the Judge was involved. Judge Wolf Retired from felony case... When the Rule 35. came up in April of 1990. The Honorable Ricardo M. Urbina was assign to hear the Rule 35. The Honorable Ricardo M. Urbina, heard Representations from G. Paul Howes: "Your Honor, Mr. Epps Plead Guilty to Second degree Murder, but after further investigation, Mr. Epps shot seconds before he would have been shot him self." Judge Urbina asked Petitioner if he had a sentence prior to the current sentence... Petitiones stated that he did. Judge Urbina, then asked, how much time was left on the sentence? Petitioner Stated Three Years your honor. The Judge did Not ask me if I had made parole from the Three Years, to the twelve to life and Petitioner did not volenteer to tell

- 4 -

Judge Urbina how to do his job, when the honorable Judge had the Public Record before him. What was I to say? "Oh!" "Your Honor, if you If you sign that Probation order, I will not be Released three years from today, but in fact, I'll be Released as soon as I'm taken back down stares. Now how does this make the Judge look in the eye of the Public? So I kept my mouth shut. That evening, I was released with instructions to Report to the Probation office in 48. hours. The following day, I Reported to my Former Attorney's office, Ms. Sherly Mary McCray Gray, who was now settled in her newly. Earn Job, As Public Defender, who sold me out. Ms Gray, thought I had escaped. The Judge did not know I was Released, the Prosecutor did not know I was Released, and my lawyer, who was now a Carry Fair, stand in Counsel, had no knowledge of my newly gained Freedom. Ms. Gray, Acted to Notify all of the Afforemention that I was now free on Probation and need to be in a drug treatment Program. Me trusting the Government who had practically become my lawyer at this point, said he Paul Howes knew of a drug program that he could get me in. Me and my dumb self jumped for joy at being so luckey not knowing that My Howes would later turn on me, but in fact had me set up for failure from the words "Stout Street." Stout Street turn out to be a "Witness Protection."/Drug Program, that the Gov., was using to hide all of its witnesses who had testified for the Government, in verious case. Well I was not one of the Snitch Crooew, so I was expelled with Mr. Howes Sanction. One day I came back to the drug House on Gavloud, and my bags were packed for me with a Plane ticket on them first class, back to Washington. Because I had done nothing wrong, I went to see the Probation officer, Mr. Albert McNeall. Mr. McNeall, informed me that I was in Violation of my Probation only because I was not in a drug Program. Mr. McNeall then gave me an extensive list of drug Programs and Stated: "If you can get into one of

-5-

drug programs, of which I doubt, I'll go to bat for you!" I left Mr. McNeall's office, and went to Mr. Ruffis Mayfields office, who was then director of the department of Humain Resources, who were the Gov. Agency that funded KaDak. over at St. Elizabeth's Hospital. Mr. Mayfield talked with the director John White, who had an opening to come open on the up coming Friday. I then called Mr. McNeall, back in his office and told him I was in KaDak. Mr. McNeall said. "You're in what?" He then asked me to hold on, while he put through a conference call to John White at KaDak. "Hey John, do you know anything about a Larry Epps?" "Oh! Yes, Epps will be in here Friday." Thank you John. Mr. McNeall then said to me. "I don't know who you know or what you know, but if you can do all of this, you have my vote. On the day of the Show Cause Hearing. Mr. Ruffis Mayfield was there, Mr. Arvy Jackson, Rep. from KaDak, and Mr. McNeall. Paul Howes spoke first, Mr. Howes told Judge Urbina we can not allow criminals to dictate to us what Drug Programs they want to be in and I just want him back in jail until the suitable drug program can be found. Mr. McNeall, then spoke in the favor of Petitioner remaining in the Drug Program as well as society, for 30 minutes. Judge Urbina had to shut Mr. McNenth, up. Judge Urbina, then asked what I had to say. Petitioner attempted to explaine how Mr. Howes was the unethical force behind Petitioners expelltion from the drug program. When Petitioner was finnish talking, Judge Urbina Resentence Petitioner to the orriginal sentence of 12-years to life. Instead of Mrs Carrie Fair, my stand in lawyer for Mrs. Gray, filing an appeal to the Rule 35 that was on the table, Mrs. Fair filed a new Rule 35, which allowed Paul Howes the option to deny and oppose, due to the plea agreement only pertaining to the May 8th 1989 agreement, and not any newly established Rule 35.

After August 26, 1990... the Show Cause hearing, A Mr. Dennis Heart filed an Appeal in the case where he requested the transcripts of the May 8th 1998 Plea Agreement. And the Appeals Court never ordered the production of the transcripts, which Mr. Dennis Heart filed a Motion to be release from the case. SEE Jone v. Barns and Anders v. California.

Then Appellate counsel stated: "He was not Trail counsel and without the production of the transcripts he could not know the merits in the case. Because The Honorable Judge Ricardo M. Urbina, had SEAL the Public Record, the Appeals Court Rubber Stamp Petitioner's Appeal and just hoped that Petitioner would remain Unaware about the truth. For 15 years, Petitioner was deny Parole by the D.C. Parole Board as well as the United States Parole Commission. It took 15 years for Petitioner to get the full Public Record. In 2004, Petitioner was represented by 3. Federal Prison Staff who gave representation on behalf of Petitioner. Mr. James Stewart, Unit Manager, Mr. J. Browning, Counselor, and Mr. Masters. Mr. Bob Hayworth, Commissioner, for the commission. Asked how it was that the accused had information that they did not have. And all these years of denying Petitioner Parole was based on Mis-information. Now here we are with Petitioner being further incarcerated when he is not even suppose to be on Parole to began with. SEE: Federal Reporter Obstruction of Justice, Darely Jermain Smith v. United States 1992.

-7-