UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY EPPS, | ) |
| Plaintiff, | ) Civil Action No.: 06-717 (PLF) |
| v. | ) |
| PAUL HOWES, *et al.*, | ) |
| Defendants. | ) |

**MOTION TO DISMISS**

The Federal Defendants, former Assistant U.S. Attorney Paul Howes, the U.S. Attorney General Alberto Gonzales, and the U.S. Parole Commission, respectfully move to dismiss this case pursuant to Rules 12(b)(1), (2), (5), and (6).  Plaintiff, Larry D. Epps, brings this action *pro se* seeking damages for alleged violations of his constitutional rights arising from his prosecution for homicide in 1989.  His claims are all subject to dismissal for lack of subject matter jurisdiction: the claims against Mr. Howes and Mr. Gonzales are barred by absolute immunity and his claims against the Parole Commission are barred by sovereign immunity.  In addition, he failed to serve Defendants Howes or Gonzales.  Moreover, his constitutional allegations fail to state a claim.  Finally, because he was free to bring his claims at any time over the past 18 years but did not, his claims should be further barred by laches.

*Pro se* Plaintiff will take note that if he fails to respond to this motion to dismiss, the Court may grant this motion and dismiss his case because of his failure to respond.  See Fox v. Strickland, 837 F.2d 507 (D.C. Cir. 1988).

A memorandum in support of this motion and a proposed order are attached.

June 27, 2007                                        Respectfully submitted,

 

JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

 /s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

 /s/
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W., Washington, D.C. 20530
(202) 514-7204, alan.burch@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| LARRY EPPS, | ) |
| Plaintiff, | ) Civil Action No.: 06-717 (PLF) |
| v. | ) |
| PAUL HOWES, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

The Federal Defendants, former Assistant U.S. Attorney Paul Howes, the U.S. Attorney General Alberto Gonzales, and the U.S. Parole Commission, respectfully move to dismiss this case pursuant to Rules 12(b)(1), (2), (5), and (6). Plaintiff, Larry D. Epps, brings this action *pro se* seeking damages for alleged violations of his constitutional rights arising from his prosecution for homicide in 1989. His claims are all subject to dismissal for lack of subject matter jurisdiction: the claims against Mr. Howes and Mr. Gonzales are barred by absolute immunity because he alleges misconduct within their roles as prosecutors, and his claims against the Parole Commission are barred by sovereign immunity because he has failed to identify a colorable waiver of sovereign immunity and it does not appear that one exists. In addition, he failed to serve Defendants Howes or Gonzales. Moreover, his constitutional allegations against the Parole Commission fail to state a claim. Several of his claims lack any explanation of who allegedly caused them, and it does not appear that any of the named Defendants could have. Finally, because he was free to bring his claims to court at any time over the past 18 years but did not, all of his claims should be further barred by laches.

## Background

1.  **His prosecution**.  Plaintiff alleges that in 1988 the U.S. Attorney's Office here in Washington, acting through former Assistant U.S. Attorney Paul Howes, indicted him for first degree murder and that in 1989 he pleaded guilty to second degree murder as part of a plea bargain for the indictment.  (Complaint 2-4.)  According to public records, Plaintiff was sentenced by the District of Columbia Superior Court on June 23, 1989, to 12 years to life imprisonment for second degree murder.  (Exhibit 1, judgment and commitment order.)

Plaintiff alleges Defendant Howes threatened to charge Plaintiff with two homicides, Plaintiff pleaded guilty to the first one, and thereafter Howes prosecuted someone else for the second homicide.  (Complaint at 3.)  The prosecutorial misconduct, as alleged by Plaintiff, was that Howes "had evidence" that Plaintiff was not present for the second homicide but threatened to bring the second prosecution anyway if Plaintiff did not accept a plea in the first.  (Complaint at 4.)  The complaint cites Smith v. United States, 591 A.2d 229 (D.C. 1991), to suggest that Howe's evidence of Plaintiff's involvement in the second homicide was fabricated, and the complaint surmises that Howes knew about the fabrications at the time he applied the allegedly improper pressure on Plaintiff to accept the plea bargain for the first homicide.  (Complaint at 3.)

Plaintiff also alleges that Howes:

- negotiated a plea bargain with Plaintiff outside the presence of Plaintiff's counsel. (Complaint at 5, "First Cause of Action.");

- "initiated" Plaintiff's ejection from a drug treatment program run by the State of Colorado, id. at 5 ("Second Cause of Action");

- somehow caused Plaintiff to lose his liberty, (id. at 5-6, "Third Cause of Action"),

2

>   apparently either by requesting his arrest or simply by prosecuting him; and

- "came before . . . the Unit[ed] States Parole Commission on several occasions,"
  id. at 7-8 ("Seventh Cause of Action").

Plaintiff's complaint makes no specific allegations or references to conduct, decisions, or inaction by Attorney General Alberto Gonzales, whom he names as a Defendant in the caption of the complaint.

   2.   **His Parole**.  Plaintiff alleges that the U.S. Parole Commission improperly "rubber-stamped" the D.C. Parole Board's denial of his parole request in September 2002. (Complaint at 8, "Eighth Cause of Action.")  According to public records, Plaintiff was first considered for parole by the D.C. Board of Parole in 1997, (Exhibit 2), the request was denied, and reconsideration scheduled for no later than October 2002, (Exhibit 3).  In 1998, the National Capital Revitalization and Self-Government Improvement Act took effect, transferring jurisdiction over D.C. parolees to the U.S. Parole Commission.[1]  The Parole Commission conducted a parole hearing for Plaintiff on September 23, 2002.  (Exhibit 4, hearing summary.) The Commission denied parole, and ordered reconsideration in one year. (Exhibit 5, notice of action.)

   After a rehearing in December, 2004, the Commission ordered plaintiff paroled effective June 8, 2005.  (Exhibit 6, notice of action.)  This date was retarded by three months for institutional misconduct, then by another month to allow additional time to secure placement in a Community Corrections Center.  (Exhibits 7 and 8, notices of action.)  Plaintiff was paroled on

---

[1] See Public Law No. 105-33, §11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code §24-131 (formerly 24-1231).

October 8, 2005, to remain under parole supervision for the remainder of his sentence, *i.e.*, for life. (Exhibit 9 hereto, certificate of parole.) This condition--parole for life--constitutes Plaintiff's second claim against the Parole Commission. (Complaint at 8-9, "Ninth Cause of Action.").[2]

    3.    **Other claims**. Although Plaintiff did not name the United States as a defendant in the caption of his complaint, he claims the United States was negligent in its hiring and training of Defendant Howes. First, he claims the United States did not properly investigate Defendant Howes' "propensity for truth, honesty and integrity." (Complaint at 6, "Fifth Cause of Action.") Second, he alleges negligent training with respect to handling evidence, conducting plea negotiations and contacting represented parties. (Id.)

Further, although Plaintiff does not name any particular personnel connected to the prison(s) where he was incarcerated, he alleges cruel and unusual punishment in violation of the Eighth Amendment for failure to provide proper medical treatment for "a fracture to his arm and wrist." (Complaint at 7, "Sixth Cause of Action.")

Plaintiff seeks compensatory damages of $5 million and punitive damages of $20 million.

## STANDARD OF REVIEW

In resolving a motion to dismiss, the Court must construe the factual allegations in

---

[2] On April 4, 2007, the U.S. Parole Commission issued a warrant charging him with violating the conditions of parole by failing to submit to drug testing as required by the conditions of release, using illegal drugs, and violating other laws, specifically, misuse of temporary tags, possession of drug paraphernalia and driving an unregistered vehicle. (Exhibit 10, warrant application.) He was arrested on the warrant on April 16, 2007, and a probable cause hearing took place on April 20, 2007. (Exhibit 11, probable cause hearing digest.) The Commission found probable cause to believe plaintiff had violated the conditions of parole as charged, and scheduled a local revocation hearing. The hearing was scheduled for June 11, 2007. (Exhibit 12.)

complaint in the light most favorable to plaintiff, but need not accept legal conclusions or allegations without factual support in the allegations made. See Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1965 (2007). The Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). The public records attached hereto, therefore, should not convert this motion into one for summary judgment.

## ARGUMENT

**I.   Defendant Howes is Protected by Absolute Immunity.**

Any Bivens cause of action[3] in this case would be defeated by the well-settled absolute immunity applicable to prosecutors. Few areas of the law draw a brighter line than the doctrine of absolute immunity for prosecutors and their actions within their prosecutorial function. See, e.g., Mitchell v. Forsyth, 472 U.S. 511, 520 (1985) (absolute immunity for judges and prosecutors); Nixon v. Fitzgerald, 457 U.S. 731 (1982); Sloan v. HUD, 231 F.3d 10, 19 (D.C. Cir. 2000). For example, both the Supreme Court and the D.C. Circuit have found that a prosecutor's failure to satisfy Brady obligations falls within the protections of absolute prosecutorial immunity. See Hartman v. Moore, 547 U.S. 250, 126 S. Ct. 1695, 1700 (2006) (noting that claims against prosecutor were dismissed "in accordance with the absolute immunity for prosecutorial judgment"); Moore v. Valder, 65 F.3d 189, 192-94 (D.C. Cir. 1995), cert. denied 519 U.S. 820 (1996); see also; Porter v. White, 483 F.3d 1294, 1305 n.8 (11th Cir. 2007)

---

[3] See, e.g., Wilkie v. Robbins, No. 06-219, 2007 WL 1804315, --- U.S. --- (June 25, 2007) (explaining when to recognize a Bivens cause of action).

5

("Injury flowing from a procedural due process violation that results from a prosecutor's failure to comply with the Brady rule cannot be redressed by a civil damages action against the prosecutor under § 1983 because the prosecutor is absolutely immune from such liability.") (citing Imbler v. Pachtman, 424 U.S. 409, 427, 430 (1976)); Villasana v. Wilhoit, 368 F.3d 976, 979 (8th Cir. 2004) ("the prosecutor has absolute immunity from Brady damage claims"). The Ninth Circuit has reached this conclusion as well, gathering a long list of other Supreme Court and circuit opinions for support:

> A prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction is a violation of due process under Brady v. Maryland, 373 U.S. 83, 87, 83 S. C. 1194, 10 L. ED.2d 215 (1963). It is, nonetheless, an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages. See, e.g., Imbler, 424 U.S. at 431-32 n.34, 96 S. C. 984 (explaining that the "deliberate withholding of exculpatory information" is included within the "legitimate exercise of prosecutorial discretion"); Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999) (per curiam) (quoting and affirming opinion of the district court to confirm the principle that, because "'[t]he task of evaluating the credibility of the alleged exculpatory information, and of determining its bearing on the trial and the prosecutor's decision whether to confess error and agree to have the verdict set aside, no doubt requires the exercise of prosecutorial discretion,'" a prosecutor is protected by absolute immunity for the failure to turn over exculpatory evidence that was discovered shortly after the defendant was sentenced); Carter v. Burch, 34 F.3d 257, 263 (4th Cir. 1994) (holding that a prosecutor's decision whether or not to give defense counsel evidence alleged to be materially exculpatory which was either discovered "after [the § 1983 plaintiff's] arrest, but before his conviction," or while the prosecutor was "still functioning as an advocate for the State" in "post-trial motions and preparations for appeal," is "clearly part of the presentation of the State's case," and therefore a prosecutor is absolutely immune from liability for failure to turn over evidence); Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 679 (9th Cir. 1984) (holding that a district attorney's duty to preserve exculpatory evidence "would arise from his role as an officer of the court charged to do justice. An act or an omission concerning such a duty cannot be construed as only administrative or investigative; it too is necessarily related to [the prosecutor's] preparation to prosecute.") (citation omitted); Fullman v. Graddick, 739 F.2d 553, 559 (11th Cir. 1984) (holding that "[t]he district court properly dismissed plaintiff's claims that [the prosecutor] conspired to withhold evidence and to create and proffer perjured testimony"); Prince v. Wallace, 568 F.2d 1176, 1178-79 (5th Cir. 1978) (per curiam) (extending absolute immunity to a prosecutor's actions in "initiating and pursuing a

>criminal prosecution and in presenting the state's case ... even where the prosecutor knowingly used perjured testimony, deliberately withheld exculpatory information, or failed to make full disclosure of all facts"); Hilliard v. Williams, 540 F.2d 220, 221 (6th Cir. 1976) (per curiam) (holding that notwithstanding acts and omissions of state prosecutor in withholding certain information and in failing to prevent or correct deceptive and misleading testimony "'deprived [the state defendant] of her constitutional right to a fair trial,'" prosecutor was absolutely immune) (quoting Hilliard v. Williams, 516 F.2d 1344, 1349 (6th Cir. 1975)).

Broam v. Bogan, 320 F.3d 1023, 1030 (9th Cir. 2003). Accordingly, the only possible escape for Plaintiff's claims is to argue that Defendant Howes and Gonzales acted beyond their roles as prosecutors.

It is clear from the complaint, however, that Defendant Howes' alleged actions all fell squarely within the job of a prosecutor. Plaintiff alleges that Howes threatened to charge Plaintiff with two homicides, Plaintiff pleaded guilty to the first one, and thereafter Howes prosecuted someone else for the second homicide. See Complaint at 3. The prosecutorial misconduct, as alleged by Plaintiff, was that Howes "had evidence" that Plaintiff was not present for the second homicide but threatened to bring the second prosecution anyway if Plaintiff did not accept a plea in the first. See Complaint at 4. Thus, at worst, this implies that Howes violated his ethical duties and/or failed to comply with his obligations, under Brady and Giglio, to turn over exculpatory evidence. See id. ("the exculpating evidence advanced in the foregoing case was always in the possession of AUSA Howes. Nevertheless, AUSA Howes continued to use the foregoing case to assert pressure on plaintiff Epps."). But these allegations do nothing to suggest that Howes was acting beyond the role of a prosecutor. Indeed, the complaint's reliance on the obligations of a prosecutor confirms that Howes' actions fell within that role.

Plaintiff's citation, in his complaint, of Smith v. United States, *supra*, does nothing to

change this result. In Smith, the D.C. Court of Appeals affirmed the conviction of Darryl Smith for obstruction of justice relating to the second homicide described in Plaintiff's complaint in this case. As explained by the D.C. Court of Appeals, Mr. Smith attempted to persuade three of his friends to testify falsely that Plaintiff had been present at the homicide and that Plaintiff, not Mr. Smith, committed the homicide. Id. at 230. Plaintiff implies that the Court decision in Smith establishes that Plaintiff did not commit the murder, but the decision should be read instead as finding only that none of the three friends of Smith witnessed Plaintiff at the scene or committing homicide. To infer more from Smith is to read the complaint too expansively. See Twombly, 127 S. Ct. at 1965 (court need accept only factual assertions in the complaint, not legal conclusions). But even if Smith could be read as Plaintiff implies, however, it would do nothing to change the over-arching conclusion that all of the alleged misconduct by Howes occurred within his role as prosecutor and is, therefore, not actionable by virtue of absolute immunity.

Similarly, it is clear that Plaintiff's other allegations specific to Howes describe actions well within the prosecutorial role: negotiating a plea with Plaintiff, allegedly outside presence of counsel, Complaint at 5 ("First Cause of Action"); causing Plaintiff to lose his liberty, id. at 5-6 ("Third Cause of Action"), apparently either by requesting his arrest or simply by prosecuting him; "initiat[ing]" Plaintiff's ejection from a drug treatment program run by the State of Colorado, id. at 5 ("Second Cause of Action"); "c[oming] before . . . the Unit[ed] States Parole Commission on several occasions," id. at 7-8 ("Seventh Cause of Action"). All these are prosecutorial functions covered by absolute immunity.

**II.     Defendant Gonzales Is Protected by Absolute Immunity and May Not be Sued under <u>Bivens</u> on a *Respondeat Superior* Theory.**

Any actions that might be ascribed by implication to Defendant Gonzales must be dismissed. Because the complaint fails to describe any actions, decisions or inaction by Defendant Gonzales, Plaintiff's theory must be that <u>Bivens</u> liability for Defendant Gonzales is based on the Attorney General's role as ultimate supervisor for DOJ prosecutors. That this cannot succeed was made expressly clear by the D.C. Circuit in <u>Cameron v. Thornburgh</u>, 983 F.2d 253 (D.C. Cir. 1993), which involved analogous claims against then-Attorney General Richard Thornburgh:

> The complaint itself did not even allege that Thornburgh and Quinlan had participated in any decision or approved any policy that related to the case. . . . . In the absence of any allegations specifying involvement of Thornburgh or Quinlan in this case, the claims against them are based upon nothing more than a theory of *respondeat superior*, which of course cannot be used in a Bivens action.

<u>Id.</u> at 258. Alternatively, if there were any actions by Defendant Gonzales relating to this prosecution of Plaintiff, those actions would be covered by absolute immunity as described above. Either way, all claims against Defendant Gonzales in his personal capacities must be dismissed.

**III.    The United States, U.S. Parole Commission, and DOJ are Protected by Sovereign Immunity.**

Federal agency Defendants are protected by sovereign immunity. <u>See, e.g.,</u> <u>United States v. Nordic Village</u>, 503 U.S. 30 (1992); <u>United States v. Testan</u>, 424 U.S. 392, 399 (1976) ("except as Congress has consented to a cause of action against the United States, 'there is no jurisdiction . . . to entertain suits against the United States'"); <u>Clark v. Library of Congress</u>, 750 F.2d 89, 101-02 (D.C. Cir. 1984); <u>Meyer v. Reno</u>, 911 F. Supp. 11 (D.D.C. 1996); <u>Marshall v.

9

Reno, 915 F. Supp. 426 (D. D.C. 1996); Deutsch v. U.S. Dept. of Justice, 881 F. Supp. 49, 55 (D.D.C. 1995).  In the absence of a waiver of sovereign immunity, a federal agency may not be sued.  See FDIC v. Meyer, 510 U.S. 471 (1994).  Plaintiff's complaint fails to identify a colorable waiver of sovereign immunity applicable to either the United States, the Parole Commission or DOJ and it does not appear that one exists.

Specifically, Section 1983 of Title 42 does not provide a waiver of sovereign immunity as to the United States, the Parole Commission or DOJ for the simple reason that Section 1983 applies only to state-level governmental entities, not federal instrumentalities, such as the Parole Commission and DOJ.  See 42 U.S.C. § 1983 ("under color of any statute, ordinance, regulation, custom, or usage, of an State or Territory or the District of Columbia"); Settles v. United States Parole Commission, 429 F.3d 1098, 1106 (D.C. Cir. 2005) ("Despite its role in administering D.C. Code offenders, the [U.S. Parole] Commission retains the immunity it is due as an arm of the federal sovereign.").  Similarly, the United States is not subject to suit under section 1983 by its plain terms.

Similarly, Plaintiff has identified no colorable waiver of sovereign immunity for his claims that the United States was negligent in failing to "properly assess former AUSA Howes' propensity for truth, honesty and integrity," Complaint at 6 ("Fifth Cause of Action"), or that he was denied proper medical treatment, id. at 7 ("Sixth Cause of Action").  Even if these were interpreted as attempts to bring claims under the Federal Tort Claims Act, the attempts should be properly dismissed for failure to exhaust administrative remedies, because Plaintiff is required to demonstrate such exhaustion to establish the requisite subject matter jurisdiction for such a claim.  See McNeil v. United States, 508 U.S. 106, 111 (1993); GAF Corp. v. United States, 818

F.2d 901, 919-20 (D.C. Cir. 1987); In re Agent Orange Products, 818 F.2d 210, 214 (2d Cir. 1987). Plaintiff has failed to demonstrate any such exhaustion and so these claims must be dismissed for lack of jurisdiction.

Plaintiff's claims of negligent hiring and training (fifth cause of action) and cruel and unusual punishment (sixth cause of action) similarly fail for lack of jurisdiction because he has not established that he properly exhausted these claims pursuant to the FTCA, as he is required to do. These claims also fail to identify any particular officials responsible for the allegedly tortious conduct.

**III.    Plaintiff's Parole Allegations do Not State a Claim.**

It is well-settled law that the District of Columbia parole statute does not create a liberty interest, so due process does not attach to parole deliberations under that statute. A constitutionally-protected interest may arise either from the due process clause itself, or from a statute, rule, or regulations. Hewitt v. Helm, 459 U.S. 460, 466 (1983). A liberty interest "inherent" in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its loss is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Liberty interests that fall within this category include the revocation of parole, Morrissey v. Brewer, 408 U.S. 471 (1972), and the revocation of probation, Gagnon, 411 U.S. at 778. However, release on parole is not a constitutionally-protected liberty interest inherent in the due process clause; any liberty interest in parole release must be found in the parole statute. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979).

It is settled law that neither the D.C. parole statute, nor the regulations, create a liberty

interest in parole release. See e.g., McRae v. Hyman, 667 A.2d 1356, 1361 (D.C. App. 1995) ("the District's parole scheme does not create . . . a liberty interest in the granting of parole."); Ellis v. District of Columbia, 84 F.3d 1413, 1415-20 (D.C. Cir. 1996) (neither the Constitution nor the D.C. regulations create a liberty interest in parole); Blair-Bey v. Quick, 151 F.3d 1036, 1047 (D.C. Cir. 1998); Brandon v. D.C. Board of Parole, 823 F.2d 644, 648 (D.C. Cir. 1987).

Accordingly, there was no violation of Plaintiff's due process rights in the parole proceedings before the U.S. Parole Commission. Plaintiff received all the process to which he was due: a hearing, and a statement of reasons for denial of parole. Greenholtz, *supra*.

Likewise, Plaintiff's claim that his constitutional rights have been violated by requiring him to remain on parole for life is without merit. Under the applicable statute, a person released on parole is subject to parole supervision for the remainder of the term imposed by the court. D.C. Code §24-404 ("While on parole, a prisoner shall remain in the legal custody and under the control of the Attorney General of the United States or his authorized representative *until the expiration of the maximum of the term or terms specified in his sentence* without regard to good time allowance.") (emphasis added). Plaintiff was sentenced to a life term for second degree murder, so he is lawfully subject to parole supervision for life. Id.

Such life supervision does not violate the Eighth Amendment. United States v. Moriarty, 429 F.3d 1012 (11th Cir. 2005) (imposition of life supervised release term for child pornography offenses not "grossly disproportionate", and therefore did not violate Eighth Amendment ban on cruel and unusual punishment). Similarly, for plaintiff's offense of murder, life supervision on parole is not grossly disproportionate, and does not violate the Eighth Amendment.

## V. Plaintiff Has Failed to Effect Personal Service on Defendants Howes or Gonzales.

It is well-established that, in an action against a federal employee in his or her individual capacity, the individually sued defendant must be served with process in accordance with Rule 4(e), which requires that a copy of a summons and complaint be delivered to the defendant (or his appointed agent) personally, or be left "at his dwelling house or usual place of abode with some person of suitable age and discretion" who resides there. Service on the U.S. Attorney in the district where the action was brought will not substitute for technically proper service under Rule 4 and will not permit the District Court to render a personal judgment against an individually-named defendant. See, e.g., Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 514 (D.C. Cir. 2002); Sieg v. Karnes, 693 F.2d 803 (8th Cir. 1982); see also Stafford v. Briggs, 444 U.S. 527 (1980).

Here, neither Howes nor the Attorney General were served personally or at their home. Howes was not served at any location, while the Attorney General was served only at his place of work. The service of process thus being defective as to these Defendants in their individual capacities, this action cannot proceed against them personally. (Defendants limited appearance herein in the form of this motion to dismiss does not constitute an acquiescence in the manner of service, a waiver of proper service, or a voluntary entrance of appearance.)

## VI. Laches Separately Bars Plaintiff's Suit.

Separate from any statutory limitations period, laches bars an action brought after an unreasonable delay where the delay prejudices the position of the defendant. See, e.g., Abbott Laboratories v. Gardner, 387 U.S. 136, 155 (1967); Pfeiffer v. Central Intelligence Agency, 60 F.3d 861, 865 (D.C. Cir. 1995) (barring former CIA employee's claim that government waived

13

its property right in document under doctrine of laches); Village of Elk Grove Village v. Evans, 997 F.2d 328, 331 (7th Cir. 1993); Independent Bankers Ass'n of Am. v. Heimann, 627 F.2d 486, 488 (D.C. Cir. 1980) (laches barred claim brought 12 years after accrual).

By statute, the District of Columbia tolls the running of statutory limitations periods during a plaintiff's incarceration or incompetency due to being either a minor or "*non compos mentis*." D.C. Code § 12-302.  It does not appear, however, that this D.C. statute is intended to bar prisoners from bringing civil actions by declaring them constructively incompetent.  See Interdonato v. Interdonato, 521 A.2d 1124, 1131 n.10, 1138 n.26 (D.C. 1987) (applying laches to affirm dismissal of inheritance claim of son who was infant at time of testator's death); but cf. Wilson v. Wilson, 785 A.2d 647, 650 n.4 (D.C. 2001) (noting in dicta that "At least on its face, D.C. Code § 12-302(a)(3) (1995) treats Mr. Wilson as 'disab[led]' by his imprisonment, so that his right of action would not accrue until his release from imprisonment.").  This Court has not addressed the issue often, but has found that the D.C. statute's tolling period applies equally to laches only where the "the class members are *non compos mentis* and are unable to comprehend their legal rights and remedies." Does I thru III v. District of Columbia, 232 F.R.D. 18, 32 (D.D.C. 2005) (Kennedy, J.) (citing cases all involving *non compos mentis* plaintiffs).

Here, there is no reason to conclude that Plaintiff was barred from bringing this action earlier, either from being underage, blocked by D.C. Code § 12-302, or *non mentis compos*.[4] Indeed, the Court may take judicial notice of Plaintiff's ability to bring suit in this Court while he

---

[4] In his recently served (but as yet unfiled), two-page "Motion to Appoint Guardian Ad Litem," Plaintiff asserts that he "was unable to represent himself some eighteen years ago against the agents of the (DOJ) due to incompetent disablement." Mot. at 1. But the motion provides no explanation or evidence for the "disablement," its duration, or his current competency.

was incarcerated.  See Epps v. Turne, et al., No. 99-2574-RMU (D.D.C. filed Sep. 28, 1999). Thus, Plaintiff's delay of 18 years in bringing this suit should be found unreasonable for the simple reason that it is clear from his complaint and the public record that Plaintiff could have brought this action years ago.

In addition, the passage of time has the strong potential to prejudice Defendants' ability to defend the merits of this case, given the inevitable erosion of memory of all people involved and the fact that Defendant Howes no longer lives in the District of Columbia.  Accordingly, even if the Court rejected all the other defenses above, both elements of laches are satisfied and Plaintiff's claims should be dismissed as untimely.

## Conclusion

For the foregoing reasons, Defendants respectfully dismissal of the complaint.

June 27, 2007                                          Respectfully submitted,

                                                       JEFFREY A. TAYLOR, D.C. Bar # 498610
                                                       United States Attorney

                                                        /s/
                                                       RUDOLPH CONTRERAS, D.C. Bar # 434122
                                                       Assistant United States Attorney

                                                        /s/
                                                       ALAN BURCH, D.C. Bar # 470655
                                                       Assistant United States Attorney
                                                       555 4th St., N.W., Washington, D.C. 20530
                                                       (202) 514-7204, alan.burch@usdoj.gov

**Certificate of Service**

I hereby certify that I caused a copy of the foregoing Motion to Dismiss and accompanying Memorandum, exhibits and proposed order to be served upon *pro se* Plaintiff by first class mail addressed to:

    LARRY EPPS
    DC 188-413
    D.C. JAIL
    1901 D Street, SE
    Washington, DC 20003

on this 27th day of June, 2007.

                                              ALAN BURCH, D.C. Bar # 470655
                                              Assistant United States Attorney
                                              555 4th St., N.W.
                                              Washington, D.C. 20530
                                              (202) 514-7204
                                              alan.burch@usdoj.gov