# U.S. DEPARTMENT OF JUSTICE
# UNITED STATES PAROLE COMMISSION

**WARRANT APPLICATION**
**D.C. Code Offender**

Name.............................. Epps, Larry

Reg. No............................ 36966-118
DCDC No. ...................... 188-413
FBI No ............................ 278412M4
Birth Date ...................... October 13, 1955
Race ............................... Black

Date.......................................... April 4, 2007
Termination of Supervision ..... LIFE
[If Conviction Offense Before April 11, 1987 And Offender Is On Mandatory Release, Termination Date Is 180 Days Prior To Full Term]
Violation Date .......................... December 15, 2005
Released .................................. October 7, 2005

Sentence Length............. LIFE
Original Offense ............ Second Degree Murder

**The subject should receive credit towards his re-parole guidelines from 9-8-06 thru 11-20-06 for time spent in custody on warrant dated 8-25-06.**

If you have been arrested on a violator warrant in the District of Columbia and you have not been convicted of a new offense, you shall be given a probable cause hearing within five days of your arrest and violator warrant. Probable cause hearings are normally scheduled on Tuesdays and Fridays at the Central Detention Facility. The purpose of the probable cause hearing is to determine if there is probable cause to believe that you have violated the conditions of your release, and if so, whether to release you or hold you for a revocation hearing. If no probable cause is found, you will be released and either reinstated to supervision, or discharged from further supervision if your sentence has expired.

At your probable cause hearing and any subsequent revocation hearing you will be apprised of the information supporting the violation charges. You may present documentary evidence and voluntary witnesses on your behalf. If you deny the charge(s) against you, you may request the presence of those persons who have given information upon which the charges are based. Such adverse witnesses will be made available for questioning unless good cause is found for their non-appearance.

You may be represented by an attorney or, if you are unable to pay for such representation, an attorney will be appointed for you if you fill out and promptly return a request for representation to the hearing examiner.

If, after a revocation hearing, you are found to have violated the conditions of your release the Commission may: (1) restore you to supervision, and, if appropriate, (a) reprimand you; (b) modify your conditions of supervision; or (c) refer you to a residential community treatment center for the remainder of your sentence; or (2) revoke your parole, mandatory release, or supervised release in which case the Commission will also decide when to consider you for further release.

If the Commission revokes your parole, mandatory release, or supervised release you will not receive credit toward service of your sentence for time spent on parole/mandatory release/supervised release.

## CHARGES:

**Charge No. 1 - Failure to Submit to Drug Testing.** The releasee failed to submit urine specimens on 9-11, 9-18-06, 1-5, 2-9 and 3-16-07. This charge is based on the information contained in the violation report dated 2-6 and 3-27-07 from supervising Officer Emesha James.
**I ADMIT [  ] or DENY [  ] this charge.**



**Charge No. 2 - Use of Dangerous and Habit Forming Drugs.** The releasee submitted urine specimens which tested positive for:

Cocaine and Opiates on 2-5-07

Cocaine on 2-16, 3-2 and 3-9-07

This charge is based on the information contained in the violation report dated 2-6 and 3-27-07 from supervising officer Emesha James and corresponding drug report dated 3-20-07
I ADMIT [  ] or DENY [   ] this charge.

**Charge No. 3 - Law Violation. A) Misuse of Temporary Tags; B) Possession of Drug Paraphernalia; C) Unregistered Vehicle.** On 2-4-07, the releasee was operating a vehicle which had tags that were registered to another vehicle. During the search incident to arrest, an officer recovered a syringe from the releasee's pants pocket. In addition a makeshift pipe made from a plastic bottle was located where the releasee was seated. The releasee was arrested by the Metropolitan Police Department for the above-cited offense on 2-4-07. This charge is based on the information contained in the violation report dated 2-6-07 from supervising officer Emesha James and a police report dated 2-4-07. Status of Custody/Criminal Proceedings: The subject was released on 2-12-07. A status hearing is scheduled for charges (A) and (C) on 4-9-07. A non-jury trial is scheduled for charge (B) on 5-14-07
I ADMIT [  ] or DENY [   ] this charge.

Probable Cause Hearing Is Required

Warrant Recommended By:

*Rhonda A. Shelton*

Warrant Issued................... April 4, 2007

Rhonda A. Shelton, Case Analyst
U.S. Parole Commission

Community Supervision Office Requesting Warrant: General Supervision Unit IX-Team 53, 1418 Good Hope Road

---

Court Services and Offender Supervision Agency
for the District of Columbia

*Community Supervision Services*
*Anacostia Field Unit*

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| **TO:** Rhonda Shelton | **FROM:** Emesha Bruce |
| **COMPANY:** CSOSA ANACOSTIA FIELD UNIT | **DATE:** 8/27/07 |
| **FAX NUMBER:** 301 492 5505 | **TOTAL NO. OF PAGES INCLUDING COVER:** |
| **PHONE NUMBER:** | **SENDER'S REFERENCE NUMBER:** |
| **RE:** Larry Epps DCDC # 188-413 | **YOUR REFERENCE NUMBER:** |

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

**NOTES/COMMENTS:**

FYI

*Confidential Court Services and Offender Supervision Agency Facsimile Communication*

*The information contained in this facsimile message and any and all accompanying documents may constitute privilege and/or confidential information. This information is the property of the Court Services and Offender Supervision Agency. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you received this message in error, please notify us immediately at the number listed below to make arrangements for its return to us.*

*1418 Good Hope Rd. S.E. -Washington, DC 20020*
*Voice: (202) 585-7800  Fax: (202) 585-7840*



# Court Services and Offender Supervision Agency
## for the District of Columbia
### Community Supervision Services
### Branch IIB

## Alleged Violation(s) Report (Addendum)

3/27/07

**To:**    Rhonda Shelton

The United States Parole Commission

5550 Friendship Boulevard
Chevy Chase, MD 20815



| | | | |
|---|---|---|---|
| **From:** | Emesha James<br>Community Supervision Officer | **Unit:** | Team 53 |
| **Please send<br>all inquiries<br>to:** | 1418 Good Hope Road SE<br>Washington, DC 20020 | **Telephone:**<br>**Fax:** | (202) 585-7804<br>(202) 585-7840 |
| | | **Email:** | emesha.james@csosa.gov |

| | |
|---|---|
| **Subject:** | Non-Compliance with Parole |
| **Docket:** | F-9286-88B |
| **Offender:** | LARRY D EPPS |
| **Address:** | 113 Wilmington Place SE<br>Washington, DC 20032 |
| **FEDREG #:** | 36966-118 |
| **FBI #:** | 278412M4 |
| **DCDC #:** | 188-413 |
| **PDID #:** | 304-430 |
| **Action Recommended:** | Warrant |

Court Services and Offender Supervision Agency
Page 2

**Name:** Larry Epps
**PDID:** 304-430
**Subject:** Alleged Violation Report

████████████████████████████████████████████████

LARRY D EPPS is a 52 year old male who was sentenced on 5/8/1989 to Not less than 12 years, not more than life for:

2nd Degree Murder

LARRY D EPPS started parole on 10/8/2005 with a full-term/expiration date of 10/8/2050.
The offender has the following special conditions:
 Drug Testing
 Drug/Alcohol Treatment

████████████████████████████████████████████████

Since 2/4/2007, LARRY D EPPS is alleged to have violated the following conditions and had the corresponding sanction(s) imposed:

Failed To Obey All Laws
    Sanction: 2/6/2007    AVR

This officer was informed by Pretrial Services on 2/5/07 that the offender was arrested on 2/4/07 for possession of drug paraphernalia with intent to use, misuse of tag and operating an unregistered auto.

Tested positive for an illegal substance.
    Sanction: 2/6/07    AVR
According to the drug status report the offender tested positive for cocaine and opiates on 2/5/07.

████████████████████████████████████████████████

Larry D. Epps lives at 113 Wilmington Place SE Washington, DC 20032 and can be reached at (202) 561-0115 by telephone. Mr. Epps has been at this place of residence for 3 months. The last home verification was on 1/17/07 and was verified during an in person home visit.

Mr. Epps last reported employment with National Tire and Battery 12241 Nebel Street Rockville, MD. The offender has reported employment with the company since November 2006. However, the offender has not submitted any pay stubs for employment verification.

This report serves as an addendum to the previously submitted Alleged Violation Report dated February 6, 2007. The offender is testing positive for cocaine. This officer referred the offender to the Central Intervention Team (CIT) for a treatment assessment. The offender was assessed on 2/26/07 by the CIT and at that time it was determined that the offender could not be placed in a treatment program based on his medical problems and his current prescribed medications. Please see the attached email from treatment specialist Jamese Massey. Further the offender was

Court Services and Offender Supervision Agency

**Name:** Larry Epps                                                                 Page 3
**PDID:** 304-430
**Subject:** Alleged Violation Report

asked to consult his primary physician regarding alternative medications and or medical clearance for potential placement into treatment by March 14, 2007, however to date the offender has not provided documentation. Please see the attached supervision report form. During the interim this officer has instructed the offender to attend sanction groups 1x week.

In regards to the offenders rearrest matter; the offender is scheduled for a status hearing on 4/9/07 in Dkt. 2007-CTF-003029 for Unregistered Vehicle before Judge McCarthy. The offender is scheduled for a non-jury trial on 5/14/07 in Dkt. 2007-CMD-003027 for Possession of Drug Paraphernalia. Offender is also being supervised by pretrial services officers Ms. Nelson.

The offender is currently in the contemplation stage of change. Offender knows that he has a substance abuse problem however he is not taking the steps to assist supervision with placing him into treatment.

This Community Supervision Officer concludes that the offender poses a potential risk for Community Supervision because he continues to indulge in illegal substances. Therefore, this Community Supervision Officer is respectfully requesting a warrant.

Respectfully submitted,

_____                          3/27/2007
                                                        _____
Emesha James                                            (Date)
Community Supervision Officer
Telephone Number: (202) 585-7804

Approved by:

_____                          _____
Joseph Alston                                           (Date)
Supervisory Community Supervision Officer
Telephone Number: (202) 585-7803

Court Services and Offender Supervision Agency

**Name:** Larry Epps                                                                    Page 4
**PDID:** 304-430
**Subject:** Alleged Violation Report

cc: File

JUNE 11 th
Hearing Date

## Emesha James

**From:** Jamese Massey
**Sent:** Monday, March 12, 2007 4:29 PM
**To:** Emesha James
**Subject:** FW: Offender Larry Epps PDID # 304-430

Hello Ms. James:

I sent you this e-mail concerning the medications and offender receiving a medical clearance from his primary care doctor. CSOSA cannot refer client's to any CSOSA vendor program while offenders are taking prescribed Opiate based medications. Mr. Epps is also being prescribed Marinol which is a Cannabnoid.

From

Jamese B. Massey, TS
202-585-7616

**From:** Jamese Massey
**Sent:** Monday, March 05, 2007 10:35 AM
**To:** Emesha James
**Subject:** Offender Larry Epps PDID # 304-430
**Importance:** High

Please be advised that the above offender was evaluated on 2/26/07. Based on the evaluation the offender appears to be a good candidate for detox and long term inpatient treatment. Due to the Agency's limited treatment resources, CIT has implemented a system for prioritizing offenders in need of treatment. Cases are prioritized by evaluating each case in the areas of public safety; amenability to treatment; prior treatment history; and medical/mental health issues.

After reviewing this case, client reports that he has a host of medical problems and is taking lots of medications. He states that the medications prescribed for him is causing him to test positive. Please be advised, clients cannot be referred to any CSOSA vendor program while taking prescribed Opiate based medications. The lab confirmed that offender provided prescriptions to the lab for Roxicet and Doxazoxin Mes on 4/3/06. There was another prescription filled for Endocet on 4/13/06. The assessor researched the medications and Roxicet is a combination of a narcotic, Oxycodone and a non-narcotic, Aetaminophen used to relieve pain. The medication called Endocet is a combination of Oxycodone and Acetaminophen. Morphine was confirmed by the urine lab on 2/5/07. Marinol which is a Cannabnoid is being prescribed by his health care provider. The offender has been without his insulin for awhile. Mr. Epps was instructed to bring in the medications he is currently taking. Mr. Epps will need a medical clearance from his doctor indicating that he is medically clear to go in treatment. The offender needs to explore other pain medication management. In the meantime, I encouraged client to attend twelve step support groups, such as Alcoholic Anonymous and Narcotic Anonymous Meetings in the community. Please be advised that CSOSA is not legally permitted to compel participation in twelve step support groups. This offender should be given the option of participating.

A listing of available community-based treatment resources is available in the DC Cure Directory. The Cure Director can be accessed on the CSOSA WEB under "Links and Resources".

Please contact CIT should there be a change in the offender's status that requires immediate attention from CIT. Please feel free to contact me or the Acting Supervisory Treatment Specialist, Kevin Moore should you have any questions regarding this report.

Sincerely,

Jamese B. Massey, BS, CAC II
Treatment Specialist
202-585-7615
202-585-7613 (fax)

3/20/2007

# SMART
## Drug Status Report

**Offender Data**    **Name:**  LARRY EPPS

PDID:  304430

DCDC:  188413

Printed By:  Emesha James - CSO

Date/Time:    3/20/2007 11:03 AM

**Drug Testing Information**

| Test Date | Description | AMP | COC | METH | OPI | PCP | MARI | ALC | CREA | Result Status | Compl | Specimen# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/16/2007 | Surveillance | . | . | . | . | . | . | . | | NoReport | - | 31648691 |
| 3/9/2007 | Surveillance | . | . | . | . | . | . | . | | RovdinLab | | 31639017 |
| | Oral Fluid Test Results: Positive for Cocaine. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Cannabinoids, Opiates, and Phencyclidine. | | | | | | | | | | | |
| 3/2/2007 | Surveillance | . | . | . | . | . | . | . | | RovdinLab | . | 31623395 |
| | Oral Fluid Test Results: Positive for Cocaine. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Cannabinoids, Opiates, and Phencyclidine. | | | | | | | | | | | |
| 2/23/2007 | Surveillance | . | . | . | . | . | . | . | | RovdinLab | . | 31611376 |
| | Oral Fluid Test Results: Positive for Cocaine. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Cannabinoids, Opiates, and Phencyclidine. | | | | | | | | | | | |
| 2/16/2007 | Surveillance | . | . | . | . | . | . | . | | RovdinLab | . | 31601864 |
| | Oral Fluid Test Results: Positive for Cocaine. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Cannabinoids, Opiates, and Phencyclidine. | | | | | | | | | | | |
| 2/9/2007 | Surveillance | . | . | . | . | . | . | . | | NoReport | . | 31580410 |
| 2/6/2007 | Leak Up | Neg | Pos | . | Pos | Neg | . | . | Neg | - | . | 31580304 |
| | Cocaine Metabolite (BZE) confirmed by GCMS. Morphine confirmed by GCMS. | | | | | | | | | | | |
| 2/2/2007 | Surveillance | . | . | . | . | . | . | . | | RovdinLab | . | 31575619 |
| | Oral Fluid Test Results: Positive for Cocaine, Phencyclidine and Cannabinoids. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), and Opiates. | | | | | | | | | | | |
| 1/26/2007 | Surveillance | . | . | . | . | . | . | . | | Pending | . | 31557191 |
| | Oral Fluid Test Results: Positive for Cocaine, Cannabinoids and Opiates. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), and Phencyclidine. | | | | | | | | | | | |
| 1/19/2007 | Surveillance | . | . | . | . | . | . | . | | RovdinLab | . | 31556561 |
| | Oral Fluid Test Results: Positive for Cannabinoids. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Opiates, Cocaine, and Phencyclidine. | | | | | | | | | | | |
| 1/12/2007 | Surveillance | . | . | . | . | . | . | . | | RovdinLab | . | 31545721 |
| | Oral Fluid Test Results: Positive for Cannabinoids. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Opiates, Cocaine, and Phencyclidine. | | | | | | | | | | | |
| 1/5/2007 | Surveillance | . | . | . | . | . | . | . | | NoReport | . | 31533795 |
| 12/29/2006 | Surveillance | . | . | . | . | . | . | . | | RovdinLab | . | 31524691 |
| | Prescription provided: Marinol 5mg. Oral Fluid Test Results: Positive for Cannabinoids. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Opiates, Cocaine, and Phencyclidine. | | | | | | | | | | | |
| 12/22/2006 | Surveillance | . | . | . | . | . | . | . | | RovdinLab | . | 31516301 |
| | Oral Fluid Test Results: Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Cannabinoids, Cocaine, Opiates, and Phencyclidine. | | | | | | | | | | | |
| 12/15/2006 | Surveillance | . | . | . | . | . | . | . | | RovdinLab | . | 31502970 |
| | Oral Fluid Results: Positive for Cannabinoids. | | | | | | | | | | | |
| 12/8/2006 | Surveillance | . | . | . | . | . | . | . | | RovdinLab | . | 31490666 |

The information contained is for official use only and is protected by the Federal Privacy Act of 1974, 5 U.S.C.§552a (2000).

# SMART
## Drug Status Report

| Offender Data | Name: | LARRY EPPS |
| | PDID: | 304430 |
| | DCDC: | 188413 |

Printed By: Emesha James - CSO
Date/Time:              3/20/2007 11:03 AM

### Drug Testing Information

| Test Date | Description | AMP | COC | METH | OPI | PCP | MARI | ALC | CREA | Result Status | Compl | Specimen# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Oral Fluid Results: Negative | | | | | | | | | | | |
| 12/1/2006 | Surveillance | • | • | • | • | • | • | • | | InTransit | • | 31478861 |
| 11/24/2006 | Placement | • | • | • | • | • | • | • | | RavdinLab | • | 31468423 |
| | Oral Fluid Results: Negative | | | | | | | | | | | |
| 9/18/2006 | Surveillance | • | • | • | • | • | • | • | | NoReport | • | 31366217 |
| | Drug testing suspended due to multiple failure to report | | | | | | | | | | | |
| 9/11/2006 | Surveillance | • | • | • | • | • | • | • | | NoReport | • | 31343183 |
| 8/28/2006 | Surveillance | • | • | • | • | • | • | • | | RavdinLab | • | 31321543 |
| | Oral Fluid Test Results: Positive for Cocaine and Cannabinoids. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Opiates, and Phenoyclidine. | | | | | | | | | | | |
| 8/21/2006 | Surveillance | • | • | • | • | • | • | • | | NoReport | • | 31309827 |
| 8/14/2006 | Surveillance | • | • | • | • | • | • | • | | RavdinLab | • | 31298025 |
| | Oral Fluid Test Results: Positive for Cocaine and Opiates. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Cannabinoids, and Phenoyclidine. | | | | | | | | | | | |
| 8/9/2006 | Surveillance | • | • | • | • | • | • | • | | RavdinLab | • | 31283239 |
| | Oral Fluid Test Results: Positive for Cocaine and Opiates. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Cannabinoids, and Phenoyclidine. | | | | | | | | | | | |
| 8/16/2006 | Surveillance | • | • | • | • | • | • | • | | NoReport | • | 31200087 |
| | Drug testing suspended due to multiple failures to report | | | | | | | | | | | |
| 8/12/2006 | Surveillance | • | • | • | • | • | • | • | | NoReport | • | 31192987 |
| 8/8/2006 | Surveillance | • | • | • | • | • | • | • | | NoSubmit | • | 31188805 |
| 8/5/2006 | Surveillance | • | • | • | • | • | • | • | | NoReport | – | 31181045 |
| 8/1/2006 | Surveillance | • | • | • | • | • | • | • | | NoSubmit | • | 31176848 |
| 5/19/2006 | Surveillance | • | • | • | • | • | • | • | | NoReport | • | 31154940 |
| | Drug testing suspended due to multiple failures to report | | | | | | | | | | | |
| 5/16/2006 | Surveillance | – | • | • | • | • | • | • | | NoReport | • | 31147905 |
| 5/11/2006 | Surveillance | • | • | • | • | • | • | • | | Unable | • | 31143634 |
| 5/9/2006 | Surveillance | • | • | • | • | • | • | • | | NoReport | • | 31136387 |
| 5/5/2006 | Surveillance | • | • | • | • | • | • | • | | NoSubmit | • | 31135810 |
| | Offender provided RX Roxicet 5/325 and Doxazoxin Mes both dated 4/3/06 and Endocet 5-325 mg filed 4/13/06 and Marinol 5mg. | | | | | | | | | | | |
| 4/6/2006 | Surveillance | • | • | • | • | • | • | • | | Suspend | • | 31082965 |
| | Due to 2nd failure to appear. | | | | | | | | | | | |
| 4/3/2006 | Surveillance | • | • | • | • | • | • | • | | NoReport | • | 31075263 |

# SMART
## Drug Status Report

| Offender Data | Name: | LARRY EPPS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | PDID: | 304430 | | | | | Printed By: Emesha James - CSO | | | | |
| | DCDC: | 158413 | | | | | Date/Time: | | | 3/20/2007 11:03 AM | |

### Drug Testing Information

| Test Date | Description | AMP | COC | METH | OPI | PCP | MARI | ALC | CREA | Result Status | Compl | Specimen# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/30/2006 | Surveillance | • | Neg | • | Pos | • | Pos | • | Neg | • | | 31070621 |
| 3/27/2006 | Surveillance | • | Pos | • | Pos | • | Pos | • | Neg | • | | 31085904 |
| 3/20/2006 | Surveillance | • | • | • | • | • | • | • | | NoReport | • | 31061278 |
| | Drug testing suspended due to multiple failures to report | | | | | | | | | | | |
| 3/16/2006 | Surveillance | • | • | • | • | • | • | • | | NoReport | | 31046696 |
| 3/13/2006 | Surveillance | • | Neg | • | Neg | • | Pos | • | Neg | • | | 31038943 |
| 3/9/2006 | Surveillance | • | Neg | • | Neg | • | Pos | • | Neg | • | | 31034215 |
| 3/6/2006 | Surveillance | • | • | • | • | • | • | • | | NoReport | • | 31026534 |
| 3/2/2006 | Surveillance | • | Neg | • | Neg | • | Pos | • | Neg | • | | 31021581 |
| 2/27/2006 | Surveillance | • | Neg | • | Neg | • | Pos | • | Neg | • | | 31014066 |
| 2/23/2006 | Surveillance | • | Neg | • | Neg | • | Pos | • | Neg | • | | 31006266 |
| 2/16/2006 | Surveillance | • | Neg | • | Neg | • | Pos | • | Neg | • | | 30998415 |
| 2/13/2006 | Surveillance | • | • | • | • | • | • | • | • | NoReport | • | 30991677 |
| 2/8/2006 | Surveillance | • | Neg | • | Neg | • | Pos | • | Neg | • | | 30987146 |
| 2/6/2006 | Surveillance | • | • | • | • | • | • | • | | NoReport | • | 30979471 |
| 2/2/2006 | Surveillance | • | Neg | • | Neg | • | Pos | • | Neg | • | | 30974666 |
| 1/30/2006 | Surveillance | • | • | • | • | • | • | • | | NoReport | • | 30967364 |
| 1/26/2006 | Surveillance | • | Neg | • | Neg | • | Pos | • | Neg | • | | 30962445 |
| | Marijuana Metabolite (THC-COOH) confirmed by GCMS. GCMS results consistent with medication provided. | | | | | | | | | | | |
| 1/23/2006 | Surveillance | • | • | • | • | • | • | • | | NoReport | • | 30954799 |
| 1/19/2006 | Surveillance | • | Neg | • | Neg | • | Pos | • | Neg | • | | 30949967 |
| 1/12/2006 | Surveillance | • | Neg | • | Neg | • | Pos | • | Neg | • | | 30940033 |
| 1/9/2006 | Surveillance | • | • | • | • | • | • | • | | NoReport | • | 30933292 |
| 1/5/2006 | Surveillance | • | Neg | • | Neg | • | Neg | • | • | • | | 30927666 |
| 12/29/2005 | Surveillance | • | Neg | • | Neg | • | Neg | • | • | • | | 30918474 |
| 12/22/2005 | Surveillance | • | Neg | • | Neg | • | Neg | • | • | • | | 30908270 |
| 12/19/2005 | Surveillance | • | Neg | • | Neg | • | Neg | • | • | • | | 30901443 |
| 12/15/2005 | Surveillance | • | • | • | • | • | • | • | | NoReport | • | 30896699 |
| 12/12/2005 | Surveillance | • | Neg | • | Neg | • | Neg | • | • | • | | 30888927 |
| 12/8/2005 | Surveillance | • | Neg | • | Neg | • | Neg | • | • | • | | 30884430 |
| 12/5/2005 | Surveillance | • | Neg | • | Neg | • | Neg | • | • | • | | 30876799 |

The information contained is for official use only and is protected by the Federal Privacy Act of 1974, 6 U.S.C.§552a (2000).          P3 of 4

# SMART
## Drug Status Report

| Offender Data | Name: | LARRY EPPS |
|---|---|---|
| | PDID: | 304430 |
| | DCDC: | 188413 |

Printed By: Emesha James - CSO
Date/Time:            3/20/2007 11:03 AM

**Drug Testing Information**

| Test Date | Description | AMP | COC | METH | OPI | PCP | MARI | ALC | CREA | Result | Status | Compl | Specimen# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/1/2006 | Surveillance | | Neg | | Neg | | Neg | | | | | | |
| 12/1/2006 | Surveillance | | | | Neg | | | | | | | | 30874648 |
| 11/28/2006 | Surveillance | | Neg | | Neg | | Neg | | | InsuffQty | | | 30872109 |
| 11/21/2006 | Surveillance | | Neg | | Neg | | Neg | | | | | | 30864770 |
| 11/17/2006 | Surveillance | | Neg | | Neg | | Neg | | | | | | 30856351 |
| 11/14/2006 | Surveillance | | Neg | | Neg | | Neg | | | | | | 30850459 |
| 11/10/2006 | Surveillance | | Neg | | Neg | | Neg | | | | | | 30842745 |
| 11/7/2006 | Surveillance | | Neg | | Neg | | Neg | | | | | | 30836567 |
| 11/3/2006 | Surveillance | | Neg | | Neg | | Neg | | | | | | 30831630 |
| 10/31/2006 | Surveillance | | Neg | | Neg | | Neg | | | | | | 30828961 |
| 10/27/2006 | Surveillance | | Neg | | Neg | | Neg | | | | | | 30819301 |
| 10/24/2006 | Surveillance | | Neg | | Neg | | Neg | | | | | | 30814690 |
| 10/20/2006 | Placement | Neg | Neg | Neg | Neg | Neg | Neg | Neg | | | | | 30806826 |
| 10/12/2006 | Initial test | | Neg | | Neg | | Neg | | | | | | 30804786 |
| | | | | | | | | | | | | | 30789006 |

The Information contained is for official use only and is protected by the Federal Privacy Act of 1974, 5 U.S.C.§552a (2000).        P4 of 4



# Court Services and Offender Supervision Agency
## for the District of Columbia
### *Community Supervision Services*
##### *CJP Branch   Offender Empl/Voc Program*

### Alleged Violation(s) Report

2/6/2007

**To:**

The United States Parole Commission

5550 Friendship Boulevard
Chevy Chase, MD 20815



US PAROLE
FEB 9 2007
COMMISSION



**From:**     Emesha James
              Community Supervision Officer

**Unit:**      Team 53

**Please send**   1418 Good Hope Road
**all inquiries** Washington, DC 20020
**to:**

**Telephone:**  (202) 585-7804
**Fax:**        (202) 585-7840

**Email:**     emesha.james@csosa.gov

**Subject:**     Non-Compliance with Parole
**Docket:**      F-9286-88B
**Offender:**    LARRY D EPPS
**Address:**     113 Wilmington Place
                 Washington, DC 20032

**FEDREG #:**    36966-118
**FBI #:**       278412M4
**DCDC #:**      188-413
**PDID #:**      304-430
**Action Recommended:**  Warrant

Court Services and Offender Supervision Agency

**Name:**   Larry Epps
**PDID:**   304–430                                                        Page 2
**Subject:** Alleged Violation Report

███████████████████████

LARRY D EPPS is a 52 year old male who was sentenced on 5/8/1989 to Not less than 12 years, not more than life for:

   2nd Degree Murder

LARRY D EPPS started parole on 10/8/2005 with a full-term/expiration date of 10/8/2050. The offender has the following special conditions:
   Drug Testing
   Drug/Alcohol Treatment

███████████████████████

Since 2/4/2007, LARRY D EPPS is alleged to have violated the following conditions and had the corresponding sanction(s) imposed:

Failed To Obey All Laws
         Sanction: 2/6/2007    AVR

This officer was informed by Pretrial Services on 2/5/07 that the offender was arrested on 2/4/07 for possession of drug paraphenialia with intent to use, misuse of tag and operating an unregistered auto.

Tested positive for an illegal substance.
         Sanction: 2/6/07    AVR
According to the drug status report the offender tested positive for cocaine and opiates on 2/5/07.

███████████████████████

Larry D. Epps lives at 113 Wilmington Place Washington, DC 20032 and can be reached at (202) 561-0115 by telephone. Mr. Epps has been at this place of residence for 3 months. The last home verification was on 1/17/07 and was verified during an in person home visit.

Mr. Epps last reported employment with National Tire and Battery 12241 Nebel Street Rockville, MD. The offender has reported employment with the company since November 2006. However, the offender has not submitted any pay stubs for employment verification.

Mr. Epps was reinstated to parole supervision in November 2006. The offender reported to supervision upon release. The offender reported residence with his girlfriend Linda McNeal. Within 30 days of his release, the offender obtained employment with National Tire and Battery as a tire technician.

Court Services and Offender Supervision Agency

**Name:** Larry Epps                                                                        Page 3
**PDID:** 304-430
**Subject:** Alleged Violation Report

This officer was informed on 2/5/07, that Mr. Epps was rearrested for possession of drug paraphernalia with intent to use, misuse of tag and operating an unregistered auto. According to court view the offender is scheduled to attend a detention hearing on 2/12/07 in Dkt.# 2007 CMD-003027 for Possession of Drug Paraphernalia before Judge Wingo. The offender is also scheduled to appear for a status hearing on 4/29/07 in Dkt.# 2007-CTF-003029 for misuse of tag and unregistered auto before Judge McCarthy. According to the drug status report, at the time of lockup the offender tested positive for cocaine and opiates. This officer is awaiting GCMS verification and upon receipt will forward to USPC. At this time the offender is currently being detained at the Central Detention Facility.

███████████████████████████████████████████████████████████

This Community Supervision Officer concludes that the offender poses a potential risk for Community Supervision because he continues to participate in illegal activities. Therefore, this Community Supervision Officer is respectfully requesting a warrant.

Respectfully submitted,


_____                    2/6/2007
                                                    _____
                                                    (Date)

Emesha James
Community Supervision Officer
Telephone Number: (202) 585-7804


Approved by:


_____
                                                    _____
                                                    (Date)

Joseph Alston
Supervisory Community Supervision Officer
Telephone Number: (202) 585-7803


cc:  File

**METROPOLITAN POLICE DEPARTMENT**
**Washington, D. C.**

ARREST/PROSECUTION REPORT

P.D. 163 Rev. 1/2002                          G.O. 401.5

| 1. PERSON NOTIFIED OF NAME CHANGE – UNIT – DATE/TIME – NCIC NO. (ID ONLY) | 2. ID NUMBER (ID ONLY) 304430 |
|---|---|

| 5. UNIT ARREST NO. 070700533 | 3. DEFENDANT'S TRUE NAME – LAST, FIRST, MIDDLE (ID ONLY) | 4. CID NUMBER |
|---|---|---|

| 8. Arresting Officer's Name Lafranchise, James M | 9. TYPE OF RELEASE ☐ CITATION ☐ BOND ☐ COLLATERAL | 6. DEFENDANT'S NAME – LAST, FIRST, MIDDLE (At time of arrest) Washington, James | 7. DEA LAB NUMBER |
|---|---|---|---|

Rank SGT   Badge # S-127   Agency MPD

| 12. COURT DATE 2-5-06 | 10. NICKNAME / ALIAS ▶ Epps, Larry Darnell | 11. PHONE NUMBER 202-561-0115 |
|---|---|---|

| 13. ADDRESS (Include Room / Apt. No. City & State / Outside D.C.) ▶ 113 Wilmington Place SE #303 | 14. TIME IN D.C. LIFE |
|---|---|

| 15. ☐ CHILD ABUSE  ☐ GANG  ☐ HATE  SPECIAL INTELLIGENCE | ☐ SENIOR CITIZEN  ☐ DOMESTIC VIOLENCE | 16. SEX ▶ Male | 17. RACE ▶ Black | 18. BIRTHDATE ▶ 10/13/56 | 19. SOCIAL SECURITY NUMBER 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 |
|---|---|---|---|---|---|

| 20. NEED INTERPRETER ☐ YES ☐ NO | 21. HEIGHT 5'9" | 22. WEIGHT 150 | 23. HAIR Blk | 24. EYES Blk | 25. COMPLEX Med | 26. PERMIT NO/ST 1746286/DC | 27. BIRTHPLACE (City & State) Washington, D. C. |
|---|---|---|---|---|---|---|---|

| 28. CO-DEFENDANTS: Number ____ (If more than 3, list on back) NAME, ADDRESS, ZIP CODE AND PHONE NUMBER | 29. IMPERSONATION ☐ M ☐ F ☐ NO | 30. ETHNICITY AA | 31. CAUTION |
|---|---|---|---|

1.

2.

3.

| CHECK MADE BY (Name) | 32. SCARS/MARKS/TATTOOS |
|---|---|

33. HAT Brown
34. JACKET
35. PANTS Brown
36. COAT Brown
37. SHIRT Brown
38. SKIRT/DRESS

| 39. WALES/NCIC CHECK |
| NCIC NUMBER | WARRANT ON FILE (If Yes, enter Warrant Numbers) Yes ☐ No ☒ |

| 40. LOCATION OF OFFENSE (Exact Address, Include Room / Apt No.) ▶ 2100 Block Alabama Avenue Southeast | DATE OF OFFENSE ▶ 2-4-07 | TIME OF OFFENSE ▶ 0923 |
|---|---|---|

| 40. LOCATION OF ARREST (Exact Address, Include Room / Apt No.) ▶ 2300 Block Alabama Avenue Southeast | DATE OF ARREST ▶ 2-4-07 | TIME OF ARREST ▶ 0925 |
|---|---|---|

| 42. ASSISTING OFFICER'S NAME, RANK, BADGE NO. & UNIT OR AGENCY ▶ | ASSISTING OFFICER'S NAME, RANK, BADGE NO. & UNIT OR AGENCY |
|---|---|

| DATE | TIME | LOCATION NOT ADVISED | 43. DEFENDANT ADVISED OF RIGHTS OFFICER'S NAME – ADVISING / COMPLETING PD FORM 47/47A | BADGE NO. | UNIT |
|---|---|---|---|---|---|

| 44. COMPLAINANTS / WITNESSES (If sworn member – Name, Rank, Badge No. and Unit) MORE ☐  See Back |
| NAME – LAST, FIRST, M.I. | ADDRESS – STREET, CITY, STATE, ZIP CODE | BIRTHDATE | HOME PHONE NO. | WORK PHONE NO. |
| W-1 ▶ Society | | | | |
| W-2 ▶ Lafranchise, James M | 2455 Alabama Avenue Southeast | ADULT | | 202-698-1500 |

| 45. SPEC. OPS None | 46. TACTICS 4 – Traffic Stop | 47. PREMISES 29 – Vehicle | 48. SCHOOL ZONE PUBLIC HOUSING ☐ |
|---|---|---|---|

| CHARGES | NCI OR WARRANT NUMBER | CCN | NPD DISPOS. | COLLA./BOND/RECEIPT NO. |
|---|---|---|---|---|
| 1. PDP With Intent to Use | | 016-018 | | |
| 2. Misuse of Tag | | 016-018 | | |
| 3. Operating an Unregistered Auto | | 016-018 | | |
| 4. | | | | |
| 5. | | | | |

| 50. PROPERTY RECOVERY / ITEMS OF EVIDENCE | 51. INITALS – DATE – UNIT OF PERSON TAKING PRINT | 53. RIGHT THUMB PRINT |
| PROPERTY BOOK/PAGE NO. 1571/369  1281/37 | CSES NO. | 52. M. O. WEAPONS, HANGOUTS, HABITS, INSTRUMENTS | |

| 54. FOR CCB USE ONLY 25 | HEIGHT | WEIGHT | HAIR | EYES | COMPLEX. | SCARS/MARKS/TATTOOS |

DISTRIBUTION: Page 1 to ID & R.; Page 2 & 3 to Prosecutor; Page 4, Unit Copy; Page 5 Officer's Copy

**COMPLETE ALL REQUIRED FIELDS AND MAKE FIVE COPIES FRONT TO BACK**

| 55. EMPLOYMENT HISTORY (List present employment if any, on Line 1) | | | | |
|---|---|---|---|---|
| FROM –DATE –TO | EMPLOYER | ADDRESS | BUS. PHONE | OCCUPATION |
| 1. Present | MBT Tires | Rockville, MD | 301-881-6134 | Tire Repair |
| 2. | | | | |

**56. NAMES OF LIVING FAMILY, RELATIVES, FRIENDS AND ASSOCIATES (Begin with immediate family)**

| RELATIONSHIP | DOB/AGE | NAME - LAST, FIRST, M.I. | ADDRESS - STREET, CITY, STATE, ZIP CODE | PHONE NUMBER |
|---|---|---|---|---|
| | | | | |

**57. MILITARY SERVICE: BRANCH/DATE FROM – TO**
N/A

**58. TELEPHONE CALL MADE** ☐ YES ☒ NO ☐ REFUSED

**59. PHONE NUMBER**

**60. STATEMENT OF FACTS:** (Give a brief statement in your own words, of the facts surrounding the offense and the arrest. (Use Continuation Form PD 202A for additional space. Note present condition of any injured person(s). Do not give Witnesses' Names or Addresses. Refer to them as W1 or W2, etc as indicated in Item 31.)

The event occurred on 2-4-07 at approximately 0923 at 2100 Block Alabama Avenue Southeast in Washington DC.

On February 4, 2007, at approximately 0923 hours, while in the 2100 block of Alabama Avenue Southeast, Washington, D. C., the undersigned observed a grey Ford with one rear District of Columbia license plate and no inspetion/registration sticker displayed. A trafic stop was initiated and the vehicle was stopped in the 2400 block of Alabama Avenue SE. The driver, later identified by DC driver's license as Larry Epps, was advised why he was stopped. Mr. Epps was asked for his driver's license, registration and proof of insurance. Mr. Epps produced his license but stated that the vehicle belonged to his daighter and he was going to Auto Zone to get parts to fix the vehicle. A WALES check of the tag revealed that it is registered to a Toyota. Mr. Epps was then placed under arrest. A search incident to arrest revealed from his rear right pants pocket a rolled up piece of tiolet paper with a syringe with a clear liquid at the very tip and from his front left pants pocket was a rubber tube that is commonly used to make a vien more visible for injecting heroin. Also found in the console next to where Mr. Epps was seated was a small plastic bottle that has been fashioned into a makeshift pipe commonly used to smoke crack cocaine. Mr. Epps was asked if he was on parole or probation and he stated he was. When asked what for he stated Murder. Mr. Epps was then asked if his urine would be dirty and he stated probably. The undersigned then asked Mr. Epps the last time he used heroin and he stated last night. Mr. Epps was then transported to the 7th District where he was processed further. Mr. Epps was subsequently identified as James Washington form prior arrests.
A WALES check of the Vehicle Identification Number of 1FMDU34X6NUA98736 revealed that the vehicle was once registered in Virginia but the registration has lapsed.

**61. DEFENDANT'S VERSION / REMARKS:** [What did defendant say about the offense or his/her whereabouts at the time of offense? (Use PD 119 for defendant's written statement.)]

SEE ABOVE

| 62. RECORD CLERK'S NAME | 3. | 5. | 64. PROPERTY BOOK/PAGE NO. PRISONER'S PROPERTY ONLY |
|---|---|---|---|
| ARREST RECORD SUMMARY | 4. | 6. | |
| 1. | 2. | | |

**63. BAIL REFORM ACT CASES:** Was a statement made by defendant in reference to his/her failure to appear? ☐ Yes ☐ no [If yes, include in Defendant's Version/Remarks Section above.]

| 65. PRINTED NAME – OFFICER MAKING STATEMENT | BADGE NUMBER | RANK | 66. SIGNATURE OF REVIEWING OFFICIAL | | |
|---|---|---|---|---|---|
| Lafranchise, Jarius M | S-127 | SGT | | | |
| 67. SIGNATURE OF OFFICER MAKING STATEMENT | UNIT 7D | DATE 2/4/2007 | UNIT 7D | DATE 2/4/07 |



Special Projects use:

SMART ☐
Tracking ☐

**Court Services and Offender Supervision Agency
for the District of Columbia**
*Special Projects Unit*

## NOTICE OF OFFENDER ARREST

**To:**

<u>53</u>        <u>IIB</u>
Supervisory Community Supervision Officer    Team    Branch

<u>James, Emesha</u>
Community Supervision Officer

**From:**    Special Projects Unit

**SUBJECT:**    Offender Re-arrest

| Name | PDID | Supervision Type |
|------|------|------------------|
| Larry Epps | 304430 | Parole |

**Arrest Summary:**

| New Charge ☐<br>Fugitive From Justice ☐ | Bench Warrant ☐<br>Prob. Violation ☐<br>Parole Violation ☐<br>Paternity Warrant ☐ | Citation ☐<br>Court date _____ | E/F ☐<br>Fine _____ |
|---|---|---|---|

**Other comments (Those that apply are checked)**

☐ Case information has not been updated in CIS or PRISM
☐ Disposition information is not updated in CIS
☐ MPD copy of PD163 is missing a page or is not legible.
☐ PD163 could not be located. Additional attempts to locate PD163 will be made.
☐ Alternate Documentation Attached.
☐ Other _____



# SMART
## Drug Status Report

**Offender Data**  **Name:** LARRY EPPS

**PDID:** 304430

**DCDC:** 188413

**Printed By:** Emesha James - CSO

**Date/Time:** 2/5/2007 4:04 PM

**Drug Testing Information**

| Test Date | Description | AMP | COC | METH | OPI | PCP | MARI | ALC | CREA | Result Status | Compl | Specimen# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/5/2007 | Lock Up | Neg | Pos | - | Pos | Neg | - | | Neg | | - | |
| 2/2/2007 | Surveillance | - | - | | - | - | - | - | | | - | 31580304 |
| 1/26/2007 | Surveillance | - | - | | | | | - | | InTransit | - | 31578619 |
| 1/19/2007 | Surveillance | - | - | | | | | - | | InTransit | - | 31567191 |
| 1/12/2007 | Surveillance | | | | | | | - | | RcvdInLab | - | 31555461 |

Oral Fluid-Test Results: Positive for Cannabinoids. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Opiates, Cocaine, and Phencyclidine.

| 1/5/2007 | Surveillance | | | | | | | - | | RcvdInLab | - | 31545721 |

Oral Fluid Test Results: Positive for Cannabinoids. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Opiates, Cocaine, and Phencyclidine.

| 12/29/2006 | Surveillance | - | - | | - | - | - | - | | NoReport | - | 31533795 |
| 12/22/2006 | Surveillance | | | | | | | - | | RcvdInLab | - | 31524501 |

Prescription provided: Marinol 5mg.
Oral Fluid Test Results: Positive for Cannabinoids. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Opiates, Cocaine, and Phencyclidine.

| 12/15/2006 | Surveillance | - | - | | - | - | - | - | | RcvdInLab | - | 31515301 |

Oral Fluid Test Results: Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Cannabinoids, Cocaine, Opiates, and Phencyclidine.

| 12/8/2006 | Surveillance | | | | | | | - | | RcvdInLab | - | 31502970 |

Oral FLuid Results: Positive for Cannabinoids.

| 12/1/2006 | Surveillance | | | | | | | - | | RcvdInLab | - | 31490956 |

Oral Fluid Results: Negative

| 12/1/2006 | Surveillance | - | - | | - | | | - | | InTransit | - | 31478661 |
| 11/24/2006 | Placement | - | - | | - | | | - | | RcvdInLab | - | 31468423 |

Oral Fluid Results: Negative

| 9/18/2006 | Surveillance | | | | | | | - | | NoReport | - | 31355217 |

Drug testing suspended due to multiple failures to report.

| 9/11/2006 | Surveillance | - | - | | - | | | - | | NoReport | - | 31343193 |
| 8/28/2006 | Surveillance | | | | | | | - | | RcvdInLab | - | 31321843 |

Oral Fluid Test Results: Positive for Cocaine and Cannabinoids. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Opiates, and Phencyclidine.

| 8/21/2006 | Surveillance | - | - | | - | - | | - | | NoReport | - | 31309927 |
| 8/14/2006 | Surveillance | | | | | - | | - | | RcvdInLab | - | 31298025 |

Oral Fluid Test Results: Positive for Cocaine and Opiates. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Cannabinoids, and Phencyclidine.

| 8/9/2006 | Surveillance | | | | | - | | - | | RcvdInLab | - | 31293238 |

Oral Fluid Test Results: Positive for Cocaine and Opiates. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Cannabinoids, and Phencyclidine.

The information contained is for official use only and is protected by the Federal Privacy Act of 1974, 5 U.S.C.§552a (2000).

# SMART
## Drug Status Report

**Offender Data**  **Name:** LARRY EPPS
**PDID:** 304430
**DCDC:** 188413

**Printed By:** Emesha James - CSO
**Date/Time:** 2/6/2007 4:04 PM

*Drug Testing Information*

| Test Date | Description | AMP | COC | METH | OPI | PCP | MARI | ALC | CREA | Result Status | Compl | Specimen# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/15/2006 | Surveillance | - | - | - | - | - | - | - | | NoReport | - | 31200057 |
| | Drug testing suspended due to multiple failures to report | | | | | | | | | | | |
| 6/12/2006 | Surveillance | - | - | - | - | - | - | - | | | | |
| 6/8/2006 | Surveillance | | | | | | | - | | NoReport | - | 31192687 |
| 6/5/2006 | Surveillance | - | - | - | - | - | | - | | NoSubmit | - | 31188505 |
| 6/1/2006 | Surveillance | - | - | - | - | - | | - | | NoReport | - | 31181043 |
| 5/18/2006 | Surveillance | - | - | - | - | - | | - | | NoSubmit | - | 31178846 |
| | | | | | | | | - | | NoReport | - | 31154940 |
| | Drug testing suspended due to multiple failures to report | | | | | | | | | | | |
| 5/15/2006 | Surveillance | - | - | - | - | - | | | | | | |
| 5/11/2006 | Surveillance | - | - | - | - | - | | - | | NoReport | - | 31147505 |
| 5/8/2006 | Surveillance | - | - | - | - | - | | | | Unable | - | 31143624 |
| 5/5/2006 | Surveillance | - | - | - | - | - | | - | | NoReport | - | 31136367 |
| | | | | | | | | - | | NoSubmit | - | 31135819 |
| | Offender provided RX Roxicet 5/325 and Doxazoxin Mes both dated 4/3/06 and Endocet 5-325 mg filled 4/13/06 and Marinol 5mg. | | | | | | | | | | | |
| 4/6/2006 | Surveillance | | | | | - | | - | | Suspend | | 31082988 |
| | Due to 2nd failure to appear. | | | | | | | | | | | |
| 4/3/2006 | Surveillance | - | - | - | - | - | | - | | NoReport | - | 31075282 |
| 3/30/2006 | Surveillance | - | Neg | - | Pos | - | Pos | - | Neg | | - | 31070921 |
| 3/27/2006 | Surveillance | - | Pos | - | Pos | - | Pos | - | Neg | - | - | 31065804 |
| 3/20/2006 | Surveillance | - | - | - | - | - | | - | | NoReport | - | 31061278 |
| | Drug testing suspended due to multiple failures to report | | | | | | | | | | | |
| 3/16/2006 | Surveillance | - | - | - | - | - | | - | | NoReport | - | 31046599 |
| 3/13/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | - | - | 31038943 |
| 3/9/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | - | - | 31034218 |
| 3/6/2006 | Surveillance | - | - | - | - | - | | - | | NoReport | - | 31026524 |
| 3/2/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | - | - | 31021881 |
| 2/27/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | - | - | 31014095 |
| 2/23/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | - | - | 31009286 |
| 2/16/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | - | - | 30999413 |
| 2/13/2006 | Surveillance | - | - | - | - | - | | - | | NoReport | - | 30991877 |
| 2/9/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | - | - | 30987145 |
| 2/6/2006 | Surveillance | - | - | - | - | - | | - | | NoReport | - | 30979471 |

The information contained is for official use only and is protected by the Federal Privacy Act of 1974, 5 U.S.C.§552a (2000).

# SMART
## Drug Status Report

**Offender Data**  **Name:** LARRY EPPS

**PDID:** 304430

**DCDC:** 188413

**Printed By:** Emesha James - CSO

**Date/Time:** 2/8/2007 4:04 PM

**Drug Testing Information**

| Test Date | Description | AMP | COC | METH | OPI | PCP | MARI | ALC | CREA | Result Status | Compl | Specimen# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/2/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | - | - | 30974568 |
| 1/30/2006 | Surveillance | - | - | - | - | - | - | - | - | NoReport | - | 30967254 |
| 1/26/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | - | - | 30962448 |
| | Marijuana Metabolite (THC-COOH) confirmed by GCMS. GCMS results consistent with medication provided. | | | | | | | | | | | |
| 1/23/2006 | Surveillance | - | - | - | - | - | - | - | - | NoReport | - | |
| 1/19/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | - | - | - | 30954739 |
| 1/12/2006 | Surveillance | - | Neg | - | Neg | - | Pos | Neg | - | - | - | 30949667 |
| 1/9/2006 | Surveillance | - | - | - | - | - | - | Neg | - | - | - | 30940033 |
| 1/5/2006 | Surveillance | - | - | - | - | - | - | - | - | NoReport | - | 30932252 |
| 12/29/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30927698 |
| 12/22/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30918474 |
| 12/19/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30909270 |
| 12/15/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30901443 |
| 12/12/2005 | Surveillance | - | - | - | - | - | - | - | - | NoReport | - | 30893699 |
| 12/8/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30888927 |
| 12/5/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30884439 |
| 12/1/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30876799 |
| 12/1/2005 | Surveillance | - | - | - | - | - | - | - | - | InsuffQty | - | 30874648 |
| 11/28/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30872109 |
| 11/21/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30864770 |
| 11/17/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30855351 |
| 11/14/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30850459 |
| 11/10/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30842745 |
| 11/7/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30839667 |
| 11/3/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30831630 |
| 10/31/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30826861 |
| 10/27/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30819201 |
| 10/24/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | - | - | - | 30814590 |
| 10/20/2005 | Placement | Neg | Neg | Neg | Neg | Neg | Neg | Neg | - | - | - | 30806836 |
| 10/12/2005 | Initial test | - | Neg | - | Neg | - | Neg | - | - | - | - | 30804736 |
| | | | | | | | | | | | - | 30789005 |

The information contained is for official use only and is protected by the Federal Privacy Act of 1974, 5 U.S.C.§552a (2000).

# Court Services and Offender Supervision Agency
## for the District of Columbia
*Community Supervision Services*
*General Supervision Branch "IIB"*

| | |
|---|---|
| **Offender Name:** | **LARRY BING** |
| **Docket Number:** | **2005-FEL-001410** |

**PDID Number:** **507-843**

The following sanction(s) were imposed prior to writing the violation report:

☐ Daily supervision check-in for 5 working days.

☒ Increased drug testing 2 times per week/CIT assessment.

☐ SCSO Conference/Reprimand

☒ Attend sanction groups for 2 weeks.

☐ Increased Supervision
____ Med ____ Max _____ Intensive

☐ Electronic Monitoring
____ 30 days or more (_____)

☐ 7 days residential sanctions facility (Halfway Back)

☐ 14 days residential sanctions facility (Halfway Back)

☐ Continued stay at residential sanctions facility
for up to ____ 30 ____ 60 ____ 90 days
(Halfway Back).

☐ Placement in inpatient treatment as
warranted by substance abuse assessment.

☒ Other ___THERAPEUTIC TASKS___

☐ **No Sanction(s) Imposed State Reason:**

☐ Telephone Call to Offender ☐ Home Visit Conducted ☐ Certified Letter Sent ☐ Record Check ☐ Collateral Contacts

## SCSO Review

**X** Sanctions imposed and/or loss of contact procedures followed.

☐ Sanctions not imposed appropriately and/or loss of contact procedures not followed. Case returned to CSO with the following instructions:

_____ SCSO Signature _____ Date

*Revised January 15, 2002*

*1418 Good Hope Road, SE, Washington, DC 20020*
*Voice: (202) 585-7800   Fax: (202) 585-7829*

**U.S. Department of Justice**
**United States Parole Commission**

## CERTIFICATE OF PAROLE
### District of Columbia Offender

Having determined that (1) Epps, Larry, Register No. 36966-118, (DCDC No. 188-413) (the "inmate") is eligible for parole; (2) there is a reasonable probability that the inmate will live and remain at liberty without violating the law; and (3) the inmate's release is not incompatible with the welfare of society, the United States Parole Commission (the "Commission") ORDERS that the inmate be paroled on October 8, 2005 and remain under parole supervision through LIFE. The conditions listed in this certificate apply during the inmate's parole supervision.

Given under the hand and the seal of the Commission on September 29, 2005.

UNITED STATES PAROLE COMMISSION

_Deborah M. Boge-Hill_

Technician                           By: Deon M. Bogie-Hill, Case Services

Docket/Case Number: FO286-98DA
Initial Risk Category: SFS

### Acknowledgement of Parole Conditions

I have read, or had read to me, the conditions that are listed on this CERTIFICATE OF PAROLE. I have received a copy of this CERTIFICATE OF PAROLE. I fully understand the conditions that have been imposed upon me and I know that if I violate any of these conditions I may be sent back to prison.

### Consent to the Disclosure of Drug/Alcohol Treatment Information

By signing this CERTIFICATE OF PAROLE, I consent to unrestricted communication between any facility administering a drug or alcohol treatment program in which I am or will be participating, on the one hand, and the Commission and the office responsible for supervising me, on the other hand. I consent to disclosure by such facility to the Commission and the office responsible for supervising me of any information requested related to my supervision; and the disclosure by the Commission and the office supervising me to any agency that requires such information for the performance of an official duty. This consent is irrevocable until the end of parole supervision.

_____          _____
        Name                                      DCDC No.

Witnessed: _____

_____          _____
     Name and Title                              Date

The above-named inmate was released on the _____ day of _____, 20____ with a total of _____ days remaining to be served.

_____
Official Certifying Release

Queued: 09-29-2005 12:08:45 BOP-Atlanta USP | BOP-Hope Village CCC |

This CERTIFICATE OF PAROLE becomes effective on the day of release set forth above, after you sign this certificate. If you fail to comply with any of the conditions, you may be summoned to a hearing, or retaken on a warrant and reimprisoned pending a hearing, to determine if your parole should be revoked.

## GENERAL CONDITIONS

1.  A.  You must go directly to Washington, D.C. and appear in person at the Intake Office of the Court Services and Offender Supervision Agency for the District of Columbia (CSOSA), 300 Indiana Avenue, N.W., Washington, D.C. 20001. If you are unable to appear in person at that office within three days of release, you must appear in person at the United States Probation Office nearest to you and follow the instructions of the duty officer.

    B.  If you are not released to the community after your parole, you must follow the instructions in 1.A. above when you are released to the community.

2.  You must not leave the Washington, D.C. metropolitan area without the written permission of the officer supervising you. The Washington, D.C. metropolitan area consists of the District of Columbia, Prince Georges and Montgomery Counties in Maryland, Arlington and Fairfax Counties in Virginia, and the Cities of Alexandria, Fairfax, and Falls Church in Virginia. For the purpose of applying all conditions of release, "the officer supervising you" includes any supervision officer assisting, substituting for, or acting on behalf of the officer assigned to your supervision.

3.  You must, between the first and third day of each month, make a written report to the officer supervising you. In addition, you must meet with the officer supervising you at such times and in such a manner as that officer directs, and provide such information as that officer requests. All information that you provide to the officer supervising you must be complete and truthful.

4.  You must notify the officer supervising you within two days of (A) an arrest or questioning by a law-enforcement officer, (B) a change in your residence, and (C) a change in your employment.

5.  You must permit the officer supervising you to visit your place of residence and your place of business or employment.

6.  You must permit the officer supervising you to confiscate any material that officer believes may be contraband and that is in plain view in your possession and in your residence, place of business or employment, and vehicle.

7.  You must submit to a drug or alcohol test whenever ordered to do so by the officer supervising you.

8.  You must not violate any law, and must not associate with anyone who you know to be violating any law.

9.  You must not possess a dangerous weapon while under supervision.

10. You must not drink alcohol to excess, and must not illegally buy, sell, or possess a controlled substance. You must not frequent a place where you know a controlled substance is illegally used, sold, or distributed.

11. You must not associate with a person who has a criminal record without permission from the officer supervising you.

12. You must not enter into an agreement to act as an informant or undercover agent for a law-enforcement agency without permission from the Commission.

13. You must make a diligent effort to work regularly, unless excused by the officer supervising you, and to support any legal dependent.

14. You must make a diligent effort to satisfy any fine, restitution order, court cost or assessment, or child-support or alimony payment to which you are subject. You must provide financial information relevant to the payment of such a financial obligation if requested by the officer supervising you. If you are unable to pay such a financial obligation in one sum, you must cooperate with the officer supervising you to establish an installment-payment schedule.

15. If you are being paroled from a sentence imposed following conviction of a domestic-violence crime, and that conviction is your first conviction for such a crime, you must, as directed by the officer supervising you, attend an approved offender-rehabilitation program if such a program is readily available within a 50-mile radius of your residence.

16. If you are required by law to report and register as a sex-offender, you must comply with that law.

17. You must provide a DNA sample if the officer supervising you determines that collection of such sample is required by law.

18. You must participate in an Employment Readiness Program if so directed by the officer supervising you.

19. If you are being supervised by CSOSA, you must submit to the sanctions imposed by the officer supervising you within the limits established by an approved schedule of graduated sanctions.

20. If so directed by the officer supervising you, you must notify a person of your criminal history or characteristics to inform that person of a risk of harm.

Queued: 09-29-2005 12:08:45 BOP-Atlanta USP | BOP-Hope Village CCC |

**SPECIAL CONDITIONS**

In addition, you shall reside in and participate in a program of a Community Corrections Center as instructed by your Supervision Officer until discharged by the Center Director, but no later than 120 days from admission.

In addition, you shall be subject to the Special Drug Aftercare Condition that requires that you participate as instructed by your Supervision Officer in a program (inpatient or outpatient) approved by the D.C. Court Services and Offender Supervision Agency for the treatment of narcotic addiction or drug dependency. That program may include testing and examination to determine if you have reverted to the use of drugs. You shall also abstain from the use of alcohol and all other intoxicants during and after the course of treatment.

U.S. PAROLE COMMISSION • DEPARTMENT OF JUSTICE • QUI PRO DOMINA JUSTITIA SEQUITUR

Queued: 09-29-2005 12:08:45 BOP-Atlanta USP | BOP-Hope Village CCC |

*EX. 13*
*PAGES = (7)(8)*

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
SOCIAL SERVICES DIVISION – ADULT BRANCH

PRESENTENCE REPORT

|  |  |
|---|---|
| | PDID No.: 304-430 |
| | Docket No.: F9286-88B |
| Re: James Washington | Date Referred: 5/15/89 |
| To: The Honorable Peter H. Wolf | Date Due: 6/21/89 |
| From: Probation Officer Marian Yates | Sentencing Date: 6/23/89 |

**Defendant Information:**

True Name: Larry Darnell Epps                     Address: 4238 Gault Pl. N.E.
                                                  Washington, D.C.  20019

                                                  Tel. #: 396-4461 (disconct.)
Aliases:   James Washington      James Wendell Epps      Larry Edwards
           Larry Donnell Epps      Craig Edward Deskins

Age/Birthdate: 33 (10/15/55) Sex: Male            Birthplace: Washington, D.C.

Time in D.C. Area: Life                           Citizenship: U.S.
                                                  Alien No.: N/A

Marital Status: Single      Dependents: 0         Education: 10th grade completed

Social Security No.: 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                  Permit No.: DC 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

DCDC No.: 188-413                                 FBI No.: 278 412 M4

Offense, Code and Penalty: Murder II; 6122-2404(c); at least 20 years up to life

Plea: Guilty      Judgment: Guilty                Bond Status: Held without
                                                  bond

Detainers or Pending Charges: None known

Co-defendants:
None                    (Dkt No.):               (Status):
                        (Dkt No.):               (Status):

AUSA: Paul Howes                                  Telephone: 272-9284

Defense Counsel: Shirley Marie Gray               Telephone: Unknown

"In accordance with the U.S. Parole Commission and Reorganization Act, Public Law
94-233, dated March 15, 1976 this report is disclosable to inmates in federal
institutions for purposes of parole consideration."

Disposition and Date:

2

**CONTACTS:**

5/23/89    Attempt to contact AUSA.

5/9/89     Interviewed defendant, Lorton Facility.

           Attempt to contact AUSA.

           Attempt to contact defendant's mother, Ms. Elaine Hall (441-
           1085).

           Attempt to contact defendant's brother, Mr. Wayne Epps (577-
           8832).

5/13/89    Attempt to contact AUSA

           Contacted Parole Department, records.

           Contacted defendant's uncle, Frank Epps (336-7855).

           Attempt to contact AUSA.

5/15/89    Attempt to contact AUSA.

           Conversation with defendant's mother, Ms. Elaine Hall.

           Conversation with defendant's uncle, Frank Epps (336-7885)

6/16/89    Attempt to contact AUSA.


**OFFICIAL VERSION:**

     According to the information in support of the arrest warrant on
Wednesday, 7/13/88, at about 9:40 p.m., officers of the 1st District
responded to 634 I Street S.E. #32, for a shooting.  When they entered
apartment 32, they observed a black male lying on the living room floor
suffering from a gunshot wound to the head.  The body was removed from
the scene and transported to D.C. General Hospital, where the decedent
was pronounced dead at 11:10 p.m. by Dr. Daniels of staff.

     On 7/14/88, an autopsy was performed on the decedent by Dr.
Pierre-Louis who ruled the manner of death a homicide and the cause of
death due to gunshot wound to the head.

3

**OFFICIAL VERSION:** (continued)

A witness was interviewed and stated it was inside of apartment 32 along with the decedent and subjects known to it as Larry and Lawrence. The witness states that Larry and Lawrence were in the bedroom with the door closed and that the witness and the decedent were in the living room. The witness went into the bedroom to put some cold water on its face. About five or ten minutes went by and the witness heard a gunshot. The witness exited the bathroom and observed the decedent lying on the floor unconscious and suspects Larry and Lawrence standing over the decedent's body. Lawrence ran into the bedroom of the apartment and Larry armed with a handgun ran toward the witness. The witness ran into the bathroom and while inside of the same he became involved in a struggle with Larry over the gun. At this time, the gun discharged. The witness pushed Larry out of the bathroom into the bedroom where he observed Lawrence reach behind the bed and produce a second handgun. The witness pushed Larry onto the bed, ran out of the bedroom slamming the door behind him, ran into the bathroom and closed the door and jumped out the third floor window.

A second witness was located and related it heard two gunshots coming from 634 I Street S.E. and observed two subjects run out of the building armed with guns.

**DEFENDANT'S VERSION:**

"I had known a Mr. Dudley a month prior to this. When I met him he was already selling cocaine but he didn't know how to cook it up. I didn't know that he was also a user of heroin. One day I came to his home. I found out he was a heavy heroin addict. I used to cook cocaine for him and things like that. One day I went there, New York guys had come down and were selling drugs out of his house. They had been there two weeks prior to that. I had been there before knocking. They would not let me in. This particular day, it was about 10:00 in the morning, I was ushered into Lawrence's bedroom. I was asking 'what's up with these guys'? He told me they were paying him $500 a week to rent the living room, but they hadn't paid him yet. He asked me to stay in the apartment. He had to make a run, pick up some cocaine, 613 I Street S.E. I cut his hair before he left. After I cut his hair, the guy in the living room asked if I could cut his hair. I cut his hair. He went back in the living room. Lawrence had given me two 50's to smoke. He asked the guy for some money. They got in an argument. They said Lawrence stole some drugs the night before. He said he didn't. Lawrence brought the TV and stereo out of the living room. Lawrence left. I didn't come out the living room. The guys were paranoid. They had guns. If I wanted anything I'd them to get it.

4

**DEFENDANT'S VERSION:** (continued)

Lawrence came back about 6:30 or 7:00 that night. I was smoking. I was noid to. Lawrence sent Bunny, his girlfriend, to get him some heroin. They shot that. They started smoking cocaine with me and bagging it up for sale. He sent Bunny out to get some more heroin. After she left he went out and got to arguing with them. Lawrence looked out the window and suspected that the guy from New York served an undercover. He told a lie and said he didn't serve em. The other guy said he did. The other guy said, 'If the cop came back he would shoot him.' I said, 'No you're not, they'll come back and shoot all of us.' When they were arguing, I stepped out the room. The guy told Lawrence he wasn't going to give him his money. The big man would have to pay him. He was in another apartment. He looked over at me and said, 'This nigger, what is he doing.' I said, 'Why don't you give him his money.' He said, 'Fuck you, nigger.' He motioned to get a pistol. I shot him. The guy in the bathroom came out. Me and him got into it. He had left his gun on the couch. I didn't know that. I immediately went after him. He grabbed me. The gun went off. Lawrence went in the bedroom and locked the door. Lawrence opened the door, both of us fell in the floor. Lawrence was trying to get another gun. The guy ran into the bathroom and jumped out of the window. At that point, I took all the guns out of the place and my clothes. I saw Lawrence, maybe eight or nine hours after that. I threw all the guns in the river. I turned myself in a month later."

**PRIOR CRIMINAL RECORD:**

SEAT PLEASANT, MARYLAND
ADULT

| Date | Charge | Disposition | | |
|------|--------|-------------|---|---|
| 1/21/75 | Tampering With a Coin Operated Machine | 6 mos. ESS 24 mos. prob. on 10/22/75 | FBI | 1-0 |

WASHINGTON, D.C.

| 8/23/75 | UUV | No papered | DCPro | |

RICHMOND, VIRGINIA

| 2/2/76 | Concealed Weapon | $250/3 mos. suspended on 2/3/76 | FBI | 2-0 |
| 7/13/76 | Breaking and Entering (Residence) | Amended to Receiving Stolen Property, $25, 12 mos. suspended | FBI | 3-0 |

5

**PRIOR CRIMINAL RECORD:**   (continued)

SOUTH BEND, INDIANA
ADULT

| 7/2/76 | Vehicle Taking | Turned over to Virginia authority | FBI |

WASHINGTON, D.C.

| 9/4/76 | Breaking and Entering Vending Machine 082768-A76 (new dkt. no. given of 82768-B76 | Nolled | 1986 PSI |
| | Unlawful Entry Vending Machine Count B | Sent. of FYCA 5010(b) | DCSC/FBI | *4-1* |
| 9/14/76 | Marijuana Possession 080011-A76 | No papered | DCSC/FBI |
| 9/22/76 | Breaking and Entering Vending Machine and Failure to Appear | 6 yrs. FYCA 5010(b) on 11/16/77, paroled on 10/27/78 | DCPro/ 1986 PSI | *5-1* |

WILMINGTON, DELAWARE

| 11/19/76 | Carrying a Concealed Dangerous Weapon and Possession of Burglary Tools | Unknown | FBI |

WASHINGTON, D.C.

| 7/27/77 | Tampering With Auto and Uniform Narcotic Act | Nolled | 1987 PSI |

6

PRIOR CRIMINAL RECORD:   (continued)

ALEXANDRIA, VIRGINIA
ADULT

| Date | | | |
|---|---|---|---|
| 1/25/79 | Possession of Burglary Tools, Assault and Battery and Statutory Burglary | | |
| 3/16/79 | Possession of Burglary Tools, Petit Larceny, Breaking and Entering | 18 months to 5 years 5/16/79 | FBI/ 1987 PSI    6 - 2 |
| | Arson | No Papered | |

WASHINGTON, D.C.

| Date | | | |
|---|---|---|---|
| 10/26/83 | Possession of Preludin M14662-A83 | Nolled | DCSC/FBI |
| | Possession of Cocaine Count B | 1 yr. ESS 18 mos. prob. on 2/3/84, prob. was revoked on 8/20/85, sent. to 90 days | DCSC/FBI    7 - 2 |
| 1/5/84 | Burglary II F088-A84 | Indicted | DCSC/FBI    7 - 3 |
| | Burglary II Count B | Dismissed | DCSC/FBI |
| | Destruction of Property Count C | Dismissed | DCSC/FBI |
| | Armed Burglary II Count D | PLIO | DCSC/FBI |
| | Destruction of Property Over $200 Count E | Dismissed | DCSC/FBI |

7

PRIOR CRIMINAL RECORD:  (continued)

WASHINGTON, D.C.
ADULT

| | | | |
|---|---|---|---|
| 1/5/84 | Unlawful Entry Vending Machine Count F | Dismissed | DCSC/FBI |
| | CDW-Felony Count G | Dismissed | DCSC/FBI |
| | Burglary II Count H | 2 to 6 yrs. confinement | DCSC/FBI |

8 - 3

WILTON MANOR, FLORIDA

| | | | |
|---|---|---|---|
| 7/29/84 | L & P and Possession of Burglary Tools, Burglary and Theft | Unknown | FBI |

ALEXANDRIA, VIRGINIA

| | | | |
|---|---|---|---|
| 9/10/84 | Tampering With Vending Machine | Bench warrant was issued on 9/24/84, | VACC |

WASHINGTON, D.C.

| | | | |
|---|---|---|---|
| 3/10/88 | Burglary II M02844-A88 | No papered | DCSC |
| | Taking Property Without Right Count B | Work-release 60 days | DCSC |

9 - 4

| | | | |
|---|---|---|---|
| 7/13/88 | Felony Murder While Armed F09286-88A | Held SCGJ | DCSC |
| | Second Degree Murder Count B | INSTANT OFFENSE | DCSC |

10 - 5

8

PRIOR CRIMINAL RECORD:     (continued)

WASHINGTON, D.C.
ADULT

| 8/2/88 | Armed Robbery<br>F14510-A88 | Dismissed/plea bargain | DCSC/Def.'s<br>Court Papers |
| | First Degree<br>Murder While<br>Armed<br>Count B | Dismissed/plea bargain | DCSC/Def.'s<br>Court Papers |
| | First Degree<br>Murder While<br>Armed<br>Count C | Dismissed/plea bargain | DCSC/Def.'s<br>Court Papers |

PROBATION/PAROLE/PRE-DISPOSITION ADJUSTMENT:

The defendant has a history of community supervision via parole and probation.  In 1983, the defendant was sentenced in Dkt. M14662-83, Possession of Cocaine to 365 days ESS, 18 months probation with the special conditions of drug and mental health treatment and the payment of $10 to the Victim of Violent Crime Fund.  The defendant's probation was revoked due to technical violations on 8/20/85, prior to revocation a bench warrant was issued for the defendant on 4/25/84.  While on probation the defendant failed to maintain contact with the Probation Department.  The defendant failed to complete drug treatment and counseling.  He was cited for dirty urines.  He also failed to follow through with referral to Forensic Psychiatry.

In Virginia, the defendant was sentenced on 5/16/79 (117461) to 18 months to five years for Breaking and Entering, Possession Burglary Tools.  The defendant was paroled on November 1980 with a full-term date of 9/15/85.  The defendant's parole was completed on 1/16/81. Under this parole term the defendant used the name Larry Epps.

On 9/18/87, the defendant was placed on paroled in this jurisdiction under the supervision of Felix Smith having been sentenced to two to six years on 2/26/86 for Burglary II.  Special conditions of the defendant's parole included drug treatment and counseling.  On 7/28/88, a warrant was issued and the defendant's parole was revoked on 11/4/88 due to a rearrest.  On 5/9/88, defendant was up for reconsideration, however, it was continued until 7/27/89.  They are awaiting sentencing in the Instant Offense.  Under this term of parole the defendant is placed under the name of James Washington.



9

PROBATION/PAROLE/PRE-DISPOSITION ADJUSTMENT: (continued)

   During this pre-disposition period the defendant has been incarcerated. Upon, interviewing him at the Lorton Facility, he appeared fairly cooperative with this officer.

EMPLOYMENT HISTORY:

From: 3/28/88 to 6/28/88
Employer: Department of Corrections
Address: 300 Indiana Avenue N.W., Washington, D.C.
Telephone: 727-5347
Position/Salary: Plumber/$8.65 an hour
Reason for Leaving: Quit work
Verification: C. Alexander, personnel records

Comment: According to the defendant he quit work because he was using drugs heavily.


From: 7/16/87 to 3/88
Employer: Duncan Bros. Construction Company
Address: Unknown
Telephone: No listing
Position/Salary: Plumber and carpenter/Varied
Reason for Leaving: Quit
Verification: Unable to verify

Comment: According to Mr. Frank Epps, the defendant's uncle and also owner of Frank Epps Home and Auto Supply, Inc., the defendant has held employment with him on an off and on basis throughout the years. He stated, that the defendant, was not one who could be left alone to carry out his task of duties independently, but was in need of supervision.


SOCIAL HISTORY:

SOURCES OF VERIFICATION: Frank Epps/uncle; defendant and Ms. Elaine Hall/mother

   Family History:

   The defendant is the second of three children born to Ms. Elaine Hall. He is also the second of three children fathered by Mr. James Epps. The defendant is the second of two children, born to the relationship of Ms. Elaine Hall and Mr. James Epps.



SOCIAL HISTORY: (continued)

Family History: (continued)

The defendant from birth, until approximately six years of age was
reared by his maternal great-grandmother and reportedly his mother.
The defendant, however, at six years of age left his great-grandmother
and mother and went to live with his father. This was reportedly a
short lived situation. According to the defendant as well as Ms.
Elaine Hall. Mr. James Epps beat the defendant, once so severely, that
he produced permanent scars. Ms. Hall stated that the defendant was
beat with an extension cord to the point that his skin was broken
causing profuse bleeding. In order to circumvent the Court system, the
defendant was taken away from Mr. James Epps and taken in by his
paternal grandparents. According to the defendant the relationship
between he and his grandfather was excellent; however, the relationship
between him and he grandmother was not good. The defendant as well as
Ms. Hall stated that the defendant's grandmother often "slighted him".
It was reported that she treated the defendant's oldest brother, Wayne
Epps better than she did the defendant because she did not feel that
the defendant was her son's, James Epps son.

Prior to the defendant going to reside with his father, his mother
remarried, a Mr. Joe Childress. Born to this union was Kevin
Childress. This relationship, however, did not last long, reportedly
due to Mr. Childress' drug use. Nevertheless, the defendant has never
resided with his mother and younger brother during his childhood, nor
did Wayne Epps, the oldest of the children.

The defendant's grandfather reportedly died when the defendant
approximately 12 years of age. At this time it was reported that the
defendant's whole world began to crumble. He began to run away from
home due to what has been labled as mistreatment on the part of his
grandmother. The defendant involved himself in illegal criminal
activities and was incarcerated at that Oak HIll and also the Cedar
Knoll Facility. The defendant was initially sent to Junior Village.
According to the defendant he woke up one night and saw a counselor
having sex with one of the male residents. The defendant stated that
in order to secure the counselor's position he was sent down to the
Cedar Knoll Facility. The defendant stated that illegally he remained
there for a three-year period of time. It was during this period of
time the defendant stated he started using illegal drugs, heroin
intravenously. He was approximately 13 or 14 years of age. The
defendant came down with hepatitis and had to be hospitalized. He was
taken to D.C. General. While there, there was a NA meeting being held
in the hospital by the Black Men's Development Center. The defendant
that he went to the NA meeting. He discussed his case with a
representative from the Black Men's Development Center. After his
hospital stay, approximately six to eight weeks, the defendant was sent
back to Cedar Knoll, where sometime later he escaped and sought refuge

11

through the Black Men's Development Center. The Black Men's Development Center assisted the defendant with Court proceedings and the case was brought to the attention, reportedly of Judge Alexander. It was cited that the defendant was held illegally and he was released to the custody of the Black Men's Development Center.

During his entire period of incarceration he had no contact with any family members, including his mother and father. The defendant stated that the relationship between he and his family members was not a close one.

During the interview the defendant described his mother as an uneducated person and one who was unable to care for both he and his brother and thus the two were cared for by othe family members. Upon speaking with Ms. Elaine Hall, she did not impress this officer as one who was uneducated, in other words, she did not appear to be illiterate, as depicted by the defendant. According to Ms. Elaine Hall she is a high school graduate. Ms. Hall also stated that she was there throughout the defendant's childhood providing financial support for the defendant. Ms. Hall stated that she does not understand why the defendant's life has turned out the way it has when he has had basically the same opportunities that his older brother has had, Wayne Epps. It should be noted that Wayne Epps is a police officer for the D.C. Police Force. The defendant is reportedly the only family member known to the criminal justice system.

### Education and Training:

The defendant was educated by the D.C. Public School System. His junior high schol education was received through the Cedar Knoll and Oak Hill Facilities. The defendant last attended Phelps Vocational School where he began the tenth grade. While at Phelps he was involved with the cadets, but was labled as not not suitable. The defendant stated that he walked off and never returned. While incarcerated at the federal facility, Morgantown, West Virginia, the defendant reportedly took GED courses, but never successfully completed the examination which would have resulted in a certificate.

The defendant reportedly has several trades, plumbing, carpentry, and some tailoring.



12

SOCIAL HISTORY: (continued)

Military:

The defendant has never been a member of the United States Armed Forces.

Marital Status/Living Arrangments:

The defendant is a single male who claims parenting no children. Prior to incarceration, the defendant was residing at 4238 Gault Place N.E., Washington, D.C.  The home where the defendant was living is a family home.  The home belonged to the defendant's grandfather and was left to the family after his death.  According to the defendant's uncle, Mr. Frank Epps, the home was boarded up prior to the defendant going to live there.  The defendant unboarded the home and had the utilities turned on.  The defendant however, did not pay any rent while there.  It should be noted that the defendant informed this officer that he was paying rent to his uncle.

Financial Status:

The defendant has no monthly income.  He has no assets and by the same token no liabilities.

Health:

The defendant reportedly had hepatitis when he was approximately 13 or 14 years of age.  The defendant's mental health was in question on several occasions.  According to the defendant's mother, Ms. Elaine Hall, when the defendant was approximately ten or 11 years of age he was taken to a psychiatrist; however, Ms. Hall states that they found absolutely nothing wrong with him, but stated they questioned her mental health.

When the defendant was given a term of probation on 2/3/84 having been sentenced to 365 days ESS 18 months probation (M14662-83) a special condition of probation included a mental health program.  The defendant was referred to Forensic Psychiatry and was scheduled for an appointment with Dr. Kapit on 4/3/84, however, he failed to keep the appointment.



13

**SOCIAL HISTORY:** (continued)

### Substance Use/Abuse:

The defendant has admitted to the past use of marijuana, cocaine, LSD, mess, preludin and heroin. The defendant's drug use began when he was approximately 13 or 14 years of age while incarcerated at the Cedar Knoll Facility. The first drug the defendant reportedly used was heroin and he began using this drug intravenously. Prior to his incarceration the defendant stated that he was free-basing cocaine.

### EVALUATION AND DIAGNOSIS:

Mr. Larry Darnell Epps AKA James Washington, 33 years of age is before the Court for sentencing having pled guilty to Murder II. The Instant Offense adds to an array of adult charges the defendant has incurred since approximately 1975.

The defendant, although 33 years of age, and considered by the Court as an adult in this officer's opinion has not yet lived up to the qualities of an adult, that is to be a mature and responsible individual. The defendant blames his mother, his grandmother, and his father for the outcome of his life. The defendant also blames society, stating that he simply does not fit into the mainstream of society, primarily due to his acclimation to his criminal lifestyle.

Much of what the defendant has spoken has truth to it. All of the things that the defendant has gone through has assisted in developing who he is. However, what the defendant does not seem to understand is that he has a choice as to whether he is going to give in or whether he is going to seek for those things which are positive and move on with his life. Unfortunately, the defendant has decided to give in. He harbors bitterness and hatred, qualities which have led him on a road of destruction.

The defendant, although having a limited education was very articulate while speaking to this officer. His reasoning for having committed the Instant Offense to him made a great deal of sense. The defendant stated that if he did not kill the decedent, then decedent simply would have killed him. The way of the street is "that you take someone out before they take you out". The defendant described to this officer the drug culture. He was very adamant about the fact that this is simply the way things go in the drug community and basically you have to fin for yourself.



14

EVALUATION AND DIAGNOSIS:  (continued)

There has been some question in the past years concerning the
defendant's mental health capacity.  This officer does not believe that
the defendant has "a mental health problem" but rather some emotional
instability that needs to be addressed.  The defendant has fed off of
negativity since he was approximately 12 years of age and it would take
some doing on his part for him to redirect this.

The Instant Offense is a very serious charge and one not to be
taken lightly; however, so is the defendant's overall criminal record.
It appears that his charges have escalated as the years have gone by;
the ultimate being this, a murder.  The defendant has proven himself
throughout the years to be a menace to the community; however, his
misdoings have not only been toward the community but also toward
himself.  He has unknowingly robbed himself of life.  This officer is
requesting that the defendant be sent to a federal designation whereby
he will receive the proper treatment for what appears to be emotional
instability, substance abuse as well as vocational and educational
training.  Hopefully during his period of incarceration the defendant
will come to terms with himself and will begin to see that his life can
be better if he takes the first step to improve it.


TREATMENT PLAN:

   (1)  Drug treatment and counseling.

   (2)  Individual counseling.

   (3)  Academic training.

15

**RECOMMENDATION:**

Incarceration.

**INTENSIVE PROBATION SUPERVISION ELIGIBILITY:**

The defendant is <u>not</u> eligible for assessment by the Intensive
Probation Supervision Program.

Respectfully submitted,

Marian Yates
Probation Officer
879-1880

Approved By: *Robert Blunt (acting SPO)*
Supervisory Probation Officer
879-1929

MY



SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
SOCIAL SERVICES DIVISION

REVIEW OF ELIGIBILITY FOR INTENSIVE PROBATION SUPERVISION

| Defendant's Name: | Docket No: | PDID No: | Date: |
|---|---|---|---|
| Washington James | F9786-58 | 304-430 | 6/21/89 |

In accordance with the following criteria it has been determined that:

[ ] A. The defendant is eligible for assessment by IPS.

[✗] B. The defendant is NOT eligible for assessment by IPS as indicated below. (Check items as applicable for defendants NOT eligible).

[✗] 1. Current felony conviction is for one or more of the following: murder, forcible rape, armed robbery, kidnapping, voluntary manslaughter, burglary I, mayhem, obstruction of justice, arson, blackmail accompanied by threats of violence, assault with intent to commit a felony, assault with a gun resulting in injury, assault with any other object causing serious injury, taking indecent liberties with a minor, carnal knowledge, unlawful distribution of narcotics.

[ ] 2. Current charge carries a mandatory minimum sentence.

[ ] 3. The defendant has pending charges in the District of Columbia or another jurisdiction (except for pending probation revocation hearings).

[ ] 4. The defendant has or would have less than one year to serve in jail after being given credit for time served.

[ ] 5. The defendant has had two or more assaultive convictions in the past five years.

[ ] 6. The defendant resides outside the District of Columbia, or has no fixed address.

[ ] 7. The defendant is currently on parole.

[ ] 8. The defendant has not undergone a presentence investigation during the past year.

[ ] 9. The client has previously been an IPS participant.

Note:  If the court sentences under 541(e) (1), the defendant is not eligible for the program.

Form SS-1641/Apr.'88

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
SOCIAL SERVICES DIVISION - ADULT BRANCH

## PRESENTENCE REPORT

PDID No.:  304-430 (old Id 278-086)
Docket No.:  F088-84H

Re:   James Washington

To: The Honorable   Virginia L. Riley

From: Prob. Officer   Linda R. Mulford

Date Referred:   8/27/85

Date Due:   2/24/86

Sentencing Date:  2/26/86

---

Defendant Information:
    True Name:  Larry Darnell Epps

    Aliases:  James Washington   Wayne Epps
              Larry Edwards
              Craig Deskins
Age/ Birthdate:  30 (10/13/55) Sex:  Male

Time In D.C. Area:  Life

Marital Status: single   Dependents:  none

Social Security No.:  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

DCDC No.:  188-413

Address:   4102 Carozza Court
           Hillcrest Hgts., MD 20748
Tel. #:   894-8071

Birthplace:  Washington, DC

Citizenship:  USA
Alien No.:   N/A

Education:   10th grade

Permit No.:   (VA) # unknown

FBI No.:   278 412 M4

---

Offense, Code and Penalty:
Burglary II; 22-1801(b); at least 2 years up to 15 years.

Plea:  guilty   Judgment:   guilty   Bond Status:  $1000 surety

Detainers or Pending Charges:   see criminal record section

Co-defendants:
Joseph E. Crouch   (Dkt No.):   Unknown   (Status):   Unknown
                   (Dkt No.):            (Status):

AUSA:  James Rutherford   Telephone:   272-6173

Defense Counsel:  Anthony Stewart   Telephone:   789-2588

"In accordance with the U.S. Parole Commission and Reorganization Act, Public Law
94-233, dated March 15, 1976 this report is disclosable to inmates in federal
institutions for purposes of parole consideration."
==============================================================================
Disposition and Date:

POOPIE DEWS
202 563 1230
DENSIE 202 575 -4101

CONTACTS:

| | |
|---|---|
| 1/17/86 | Interviewed defendant; D.C. Jail |
| 1/27/86 | Ms. Lottie Branch; home visit (defendant's friend) |
| 2/10/86 | AUSA James Rutherford; telephoned |
| 2/21/86 | D.C. Parole Records; telephoned |
| 2/21/86 | Wilton Manors Police Dept., Florida; telephoned |
| 2/21/86 | Alexandria, VA Circuit Ct.; telephoned |
| 2/24/86 | Elaine Hall; telephoned(no contact)(defendant's mother) |

OFFICIAL VERSION:

The following information was extrapolated from the Metropolitian Police Report(#163.)
On 1/5/84, at approximately 3:05 am, the complainant, Mr. Thigden, of 4530
Connecticut Ave. NW, Washington, DC, reported that he was awaken by the sound of the
burglar alarm sounding in his room, indicating the laundry room of the above cited
address, at which juncture, he notified the police department. Officer James P. Wines
received the call for the burglar alarm at the above cited address. Upon arriving on
the scene, the officers began searching the laundry room area in the basement. While
walking down a stairwell, Officer Vines could smell something burning. Further investiga-
revealed that the lock and door knob and been burned off and the door was still hot.
While standing infront of the door, Officer Vines could hear the sound of metal pounding
on metal. He yelled through the door and after a few seconds- the defendant responded
back by saying, "I'm coming out." At this juncture, the defendant opened the door and
came out. Subsequently, the defendant was arrested, advised of his rights, and
transported to the second district police precinct. All evidence was recovered on the
scene of the laundry room floor. Further investigation revealed that another subject
was hiding in the room. It should be noted that one washing machine coin box had been
broken and four drying machines were opened.

DEFENDANT'S VERSION:

When asked about the circumstances surrounding the commission of the present offense,
the defendant stated, "I was thinking I was gonna get the change and get me some
cocaine."

CRIMINAL RECORD:

Seat Pleasant, MD

| | | | |
|---|---|---|---|
| 1/21/75 | Tampering W/ Coin Operated Machine | 6 mos ESS 24 mos probation 10/22/75 | Fi |

Washington, DC

| | | | |
|---|---|---|---|
| 8/23/75 | UUV | No papered | Prob. 1 |

Richmond, VA

| | | | |
|---|---|---|---|
| 2/2/76 | Concealed Weapon | $250,3 mos susp 2/3/76 | Fi |
| 7/13/76 | Breaking & Entering(Residence) (amended to RSP) | $25,12 mos suspended | • |

South Bend, IN

| | | | |
|---|---|---|---|
| 7/2/76 | Vehicle Taking | Turned over to Virginia authorities | • |

Washington, DC
9/4/76 | Breaking $ Entering (Vending machine) | Nolle prosequi | MPDC

9/14/76 | UNA(Possession Marijuana) #80011-76 | No papered 9/14/76 | DCSC

9/22/76 | Breaking & Entering (vending machine); Failure to appear | 6 yrs FYCA(5010B)11/16/77; paroled 10/27/78 | Prob.

Wilmington, DE
11/19/76 | Carrying Concealed Dangerous Weapon;Poss Burglary Tools | Unknown | FBI

Washington, DC
7/27/77 | Tampering with Auto; UNA | Nolle prosequi | MPDC

Alexandria, VA
1/25/79 | Possession Burglary Tools; Assault & Battery; Statutory Burglary | Unknown | FBI

Arlington, VA
3/16/79 | Possession Burglary Tools —— 1 year 5/21/79
Petit Larceny — 6 mos 5/21/79
Breaking & Entering — 4 years 5/21/79
Arson — No papered | FBI

Washington, DC
10/26/83 | UCSA(Possession Preludin) UCSA(Possession Cocaine) #M14662-83B | Nolle prosequi 12/1/83
1 yr ESS 18 mos probation 2/3/84; revoked 8/20/85; sentenced to 90 days. | DCSC

1/5/84 | Burglary II while Armed
Burglary II; DP(2 cts); B & E; CPW/OL
Burglary II while Armed

Burglary II #F088-84H | Dismissed 5/2/84
To be dismissed at sentencing
Plea to lesser included offense 8/27/85
INSTANT OFFENSE | DCSC

Wilton Manor, FL
7/9/84 | L & P;
Possession Burglary Tools; Burglary; Theft | Disp sition could not be ascertained. | FBI

Alexandria, VA
9/10/84 | Possession Burglary Tools
Statutory Burglary;
Tampering W/ Vending Machine #F7268-84 | PENDING-bench warrant issued 9/24/84 | Alex Ci Court

As is evident from the defendant's criminal record he has been supervised on prior terms of probation/parole, while his adjustment could be deemed as unsatisfactory given his rearrest for offenses of similiar nature and failure to keep regularly scheduled appoint ments with probation officer/parole officer. From what this officer can ascertain, the defendant is not being supervised on a term of probation or parole at this juncture. Contact with Ms. Joyce Johnston, Records Custodian, Buckingham Correctional Center, Dillwyn, VA, 804-983-3011 ext 234, informs the defendant was previously being detained on a parole violation warrant in the Virginia System; however, papers furnished by State of Virginia Probation/Parole reveal his discharge was effective 1/31 86, for his conviction in 1979 (Arlington Co. Circuit Court - see criminal record section.)

EMPLOYMENT HISTORY:

The defendant stated his last employment was from 1/84 to 7/85 when incarcerated for the present offense. He has been employed for Frank R. Epps Auto Parts, 301 Crown St., Seat Pleasant, MD, his uncle on/off for several years, between periods of incarceration. Contact with Mr. Epps, 336-7855 reveals confirmation of his nephew's employment with him stating, "...he's a very good worker...never had a problem with him... although he's had his own personal problems he's had to deal with." Mr. Epps informed the defendant was responsible for installing tires on automobiles, earning minimum wage.

Mr. Epps informs he has had a relatively limited employment history, but maintains his interest lies with leathercraft, having worked making leather hats at Leather Unlimited, Addison Rd. SE, in 1974.

Presntly, since his release from incarceration during the pre-dispositional period, Mr. Epps has gained employment as a porter at Burger King, 3939 Branch Ave., Marlow Heights, MD, working 4pm to 12am. This officer attempted to confirm this employment with the manager, Charles Carter, 423-1909; however, to date, no direct contact has been established to substantiate this.

SOCIAL HISTORY:

Family:

Larry D. Epps was born on 10/13/55, in Washington, DC, to his parents, Elaine Hall and James Epps. He was the second of two children born to this union, having an older brother, Wayne Epps, age 31, whom the defendant informs is employed by the Metropolitian Police Dept. as a police officer. The defendant informed his mother was extremely young when she gave birth to him so consequently, he was reared by his great grandmother in Fredricksburg for a short period, later relocating to the D.C. area to reside with his maternal grandfather and subsequently, his paternal grandmother.

Presently, the defendant informs his mother resides at 6009 Springhill Lake Dr. #301, Greenbelt, MD, 441-1085, while his father resides with at 1501 38th Street SE, Washingto DC, 583-1241. Mr. Epps st ted he maintains sporadic contact with both of his parents, seeing them on an occasional basis. To date, this officer has not spoken with the defendant's mother to ascertain pertinent background information about her son, which may have provided insight into his behavior.

Previously the defendant reported he injected heroin and preludin; however, he stated he has not used any of these substances since mid 1970. Mr. Epps stated he does not use PCP and is an occasional user of marijuana and consumes cognac infrequently. Mr. Epps stated that since 1983 he has snorted cocaine, progressing to freebasing and finally injecting such in the recent past. Specifically, he estimates he was using 3 sixteenths of cocaine 4-5 times per week. It should be noted that drug test results obtained through Pre-Trial Services on 7/10/85 indicate a positive reaction for cocaine, opiates, and PCP. To this officer's knowledge, the defendant has never been involved in any type of alcohol/drug counseling or treatment program. Mr. Epps verbalizes a desire for drug counseling, to include the possibility of residential narcotic treatment.

EVALUATION/DIAGNOSIS:

Larry D. Epps, AKA James Washington, is a 30 year old male who stands convicted of Burglary II in D.C. Superior Court. His criminal record evidences numerous convictions for theft-related offenses, for which he has served periods of probation/parole supervision and terms of incarceration. Mr. Epps was extremely open and honest with this officer in the presentation of himself, background, use of alcohol/drugs, circumstances surrounding the commission of the present offense and criminal record. He did not attempt to minimize or rationalize his behavior and in fact, was quite candid in discussion. It appears to this officer that the defendant has reflected on his present legal situation and his life to date, and verbalized much displeasure with it since his recent incarceration. It seems that this reflection has occurred primarily since his encounter with Ms. Branch. He maintains he has looked at his situation and adamantly verbalizes that his love for Ms. Branch has caused to him to make an assessment and requires him to relinquish all past illegal activities, to include his extensive drug use. As may be evident, this officer remains guarded with prognosis for positive community adjustment given the defendant's extensive criminal record, sporadic employment history and long-term drug use. However, the force of the defendant's convictions within himself for positive change rings true and sincere to this officer. It is felt that perhaps the defendant is indeed sincere and this period of time in his life may be a turning point for him. It is felt this opportunity should be extended to him, although unsuccessful in the past, with very rigid guidelines imposed by the court; specifically, a long period of incarceration suspended should he not follow through with court-imposed obligations. Further, it should be noted that if Your Honor is considering a period of incarceration as a sentencing alternative, consideration be made as to a specific Federal Designation, as the defendant has been a source to the FBI in the convictions of other individuals.

TREATMENT PLAN:

1. maintenance of employment or participation in employment/vocational training.

2. periodic urine surveillance to ascertain any drug use.

3. minimum of X twice weekly attendance at group alcohol/drug counseling or treatment programs i.e. narcotic anonymous meetings.

Based on the information herein, it is respectfully recommended that the defendant be sentenced to a period of probation supervision.

Respectfully Submitted,

*Linda R Mulford*

Linda R. Mulford
Probation Officer
879-1880

Approved by: _____
               Supervisory Probation Officer

