UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Larry D. Epps,
    plaintiff,

-V-

G. Paul Howes, et al.,
    defendant,

Civil Case No.:06cv:00717(RMC)

*Let this be filed*
*RM Collyer*
*6/9/08*

MOTION FOR RELIEF FROM THE JUDGEMENT
FEDERAL RULE OF CIVIL PROCEDURE RULE 60.(b)(2)and 60.(6)

    Comes here now, Plaintiff Larry D. Epps, before this Honorable Court in the aboved style pro-se motion for relief from the judgement, pursuant to Fed.R.Civ.P., Rule 60.(b)(2)and 60.(b)(6).

    Plaintiff repectfully moves this Court to re-visit the above listed civil action, based upon Newly Discovered Evidence.

    This case was closed for lack of prosecution on behalf of the plaintiff, who at the time and date of the closing of this case, (July 31,2007), plaintiff did not have sufficient evidence to comport with the allegation in the complaint. However, since the said time, plaintiff has obtain the evidence that through due diligence was obtained.

    Plaintiff, for years sought to obtain the Transcripts that related to the matters alleged in this case. Plaintiff was inform that no transcripts existed in case number F9286-88(b); Which was later discovered not to be true, and transcripts did exist in this case.

    Due to plaintiff asserting his First Amendment Right to redress, he has incured all types of retalitory retribution for attempting to address the extrinsic fraud that was proform by the

-2-

("Defedant G. Paul Howes, et al.,), who sought mesaures that would insure that the public record was sealed in case No.: <u>F9286-88(b)</u>."

In the newly discovered evidence, it is clear that a conflict of interest exist within the public record of facts. For years, plaintiff sought access to the transcripts, begining as far back as June 26, 1990. The United States Department of Justice's Parole Commission, nor The Department of Justice's Bureau of Prisons (BOP) were ever made privy to the full publice record until September of 2005, when Plaintiff Epps, and Counselor Browning sought measures to un-seal the Public record throught use of a Fax machine and caller-ID. Counselor Browning and Unit Manager James Stewart, were so appall at the results of our find, which verified everything that Plaintiff had been saying for years; That my Unit Manager, my Counselor, and my case manager, all went to my Parole Hearing to support their findings in the public that did not coincide with the information in the public record that they had. Mr. Stewart, Mr. Browning, and Mr. Masters, all represented Plaintiff, before Mr. Robert, Hayworth, Commissioner for the Parole Commission, who chaired the hearing. Plaintiiff, has the tapes of that hearing as well as the out come of the hearing, where Plaintiff was given parole, not based upon anything other than the relization by authorities that they had been dupe by their owen Government in to acting in an un-ethical capacity based upon an parcial recording of the public public record which served to under mind the resaults of all parole hearings that were ever helled concerning Plaintiff Epps. These allegation are easily confirmable.

-3-

The subversive counter measures that were under-taken by Ex-AUSA, G. Paul Howes, et al., who succeeded in covering his tracks until the grace of God un-covered them. Plaintiff was always under the impression that The Honorable Recardo Uribina, sealed the public record until he learn that during the time of his case, it was an un-spoken practice for AUSA's, to just go to the criminal Records Division of the D.C. Superior Court and request that tshey Seal the public record in a case and it would be done. The Record would be placed under seal, which would serve to confuse the public record, for all time. This was only part of the intrinsic fraud committed on the Court as well as on the Plaintiff. See: (Throckmorton statement), (" While the bill is elaborate in its statement of matters which [98 US 63] are supposed to impeach the decreem and is corresondingly silent as to anything tending to its support, there are important facts which cannot escape attention, that could not be omitted. Among these is, that, in attempting to negative the idea that juridical possession of the land was ever delivered to Richardson by the Mexican authorities, if is incidentally admitted that at the time the transaction occurred on which his claim is founded, he was in actual possession and reiding on part, if not all the land in controversy. So, also, it is tacitly admitted that the archives of the Mexican Government, turned over to the office of the United states Surveyor-General, and original documents produced by Richardson, sshowed an espediente which was sufficient to establish sthe claim, except for the want of the final concession. It is, therefore, to be taken as true that Richardson, being on the land prior to 1838, made his petition to

the Governor for a grant of this land, that the proper reference for information was made, and the proper reposrt was had that there was no objection to the grant. According to Mexican law, but two things remained to perfect the title, namely: a grant or concession by the Governor, and the delivery of juridical possession. The latter has never been held by this court as indispensable to confirmation of the grant, and least of all when the party was already in by possession of many years' standing. It is also important to observe that the original prtition was filed before the Board March 16, 1852, and its decree was rendered December 27, 1853; that an appeal was affirmed; that an appeal was again taken to the Superme Court of the United States, which was dismissed by order of the attorney-General on the 2d day of April, 1857. The case was pending in litigation, therefore, more than five years before the decree became final and more than four years affter the alleged fraudulent grant by Micheltorena was filed in the case. It is also to be observed that the necessity of such a paper to the support of Richardson's claim had been made obvious to the Board of commissioners, to the claimant himself, and ot the attorneys representing the Government, by the report of the Surveyor-General, that while everything else seemed right in [98 US 64] his office, the important final decree of concession was not there. The attention, therefore, of all the parties and of the court must have been drawn to a close scrutiny of any proceeding to supply this important document.

There was also ample time to make all necessary inquiries and produce the necessary proof, if it existed, of the fraud. The allegation of the bill is that this simulated concession was filed with

the Board of commissioners in January, 1853, and the decree rendered on December 27, thereafter. The appeal was pending after this in the district court over two years; and after the final decree in that court it remained under the consideration of the Attorney--General another year, when he authorized the dismissal of the appeal.

The case, then, unless these officers neglected their duties, underwent the scrutiny of two judicial tribunals and of the Attorney-General of the United states, as well as of his subordinates in the State of California, and it was before them for a priod of five years of litigation,

The bill in this case is filed May 13, 1876, more than twenty years after the rendition of the decree which it seeks to annul. During that time Richardson, the claimant, and the man who is personly charged with the guilt of the fraud, has died; his heirs, who with himself were claimants in the suit are not made parties and the land has passed from his ownership to that of the present defendants by purchase and conveyance.

It is true that the defendants are charged, in general terms, with being purchasers with notice.

It is true that the United states is not bound byu the Statue of Limitations, as an individual would be . And we have not recited any of the foregoing matters found in the bill as sufficienty of itself to prevent relief, in a case otherwise properly cognizable in equity. But we think these are good reasons why a bill which seeks under thses circumstances to annul a decree thus surrounded by every presumption which should give it support, shall present on its face a clear andunquestionable ground on the jurisdiction

it invodes can rest.

Let us inquire if has been done.<*pg.95>

" There is no questionof the general doctrine that fraud vitiates the most solemn contracts, documents and even judgments).

Because of the activity on the part of AUSA G. Paul Howes,et at., there in fact were no transcripts as far as anyone knew of due to the sealing of the public record. Appellate Counsel Dennis M.Heart, filed an Anders brief, Anders -v- California, 386 U.S. 738, S. Ct. 1396 (1967). The public record will reflect that no appeal was ever rendered in this case due the non-production of the transcripts, of which Mr. Dennis M. Heart requested and was denied access to said transcripts, which in turn caused him to file an Anders brief.

This action was based upon him not being trail counsel and as he stated: " Without the production of the transcripts he could not do his job because he was not trial counsel and without the transcripts there was no way of determaining the issues in this case."

These are more words clearly in the public record. To this day Plaintiff has been receiving written briefs from the lower court in its attempts to justify the action or non-action that was rendered against the Plaintiff, without due process. The Public record shows, that no judge signed off on the supposed appeal. It was Just rubber-stamped by the appeals court as confirmed. Some how it has been gathered from the public record that Plaintiff aided or assisted the Government in the prosecution of Mr. Darryl J. Smith's Murder Trial, which ended in a non conviction of Mr. Smith, due to a huge

level of prosecutorial mis-conduct, whcih was detailed in the... (Washington Post), who reported the case from start to finnish.

This is clearly a decption in the public record, created by G. Paul Howes to deceive the court. On the contrary, Defendant, G. Paul Howes, et al., lost the Smith Murder Trial because Plaintiff Epps, refused to be apart of the case due to the fact that Howes in the begining had Plaintiff Epps, as the target suspect and found out later that Epps was not even around when the Murder took place, and this also is in the public record of facts. The Defendant, G. Paul Howes, et al., while acting in his official capacity, indited Plaintiff, Epps, as Smith and Young's Co-Defendant because Epps, refused to testify against Smith and Young, so Howes only means of bringing Epps into the Case, Was to indite him along with smith. However, when Defense Counsel Sherily Mare Gray, learn of Defendant G. Paul Howes's, activities, she filed for an eveidentuary hearing, for Prosecutorial Mis-conduct, and this is when Howes, concocted a to dis-miss the murder case where he had charged Plaintiff wrongfully in exchange for a guilty plea, and a non denial of a rule 35.(b) Motion that was suppsed to be heard before, theHonorable Peter H.Wolf, who recrudesce him self, a week after Plaintiff was sentenced due to his son being arrested for selling pounds of marijuana out the basement of his home, where the DEA, staked out the home for one year to detirmain whether or no the Honorable Peter H. Wolf was involved in the crimes that his son was committing. This is how the Honorable Recardo Uirbina, got the case. Howes, who knew that Epps was not a part of the Smith case, proved as much, when he convicted Smith on a case of <u>Obstruction of Justice</u> case cite: <u>DARRYL J. SMITH, APPELLANT, v. UNITED STATES, APPELLEE</u> District of Columbia Court

of Appeals 591 A.2d 229; 1991 D.C. App. No. 90- 564 April 25, 1991, argued May 24, 1991, Decided. In the Defendant's Memorandum of Points and Authority of its Motion to Dismiss expressly inserted the words (" the exculpatory evidence advanced in the foregoing case was alays in the possession of AUSA G. Paul Howes,et al., who continued to use the foregoing case to assert pressure on Plaintiff Epps,"). Plaintiff Epps, was in fact innocent of any wrongful conduct associated with the Darryl J.Smith murder case, and Defendant G. Paul Howes,et al., knew as much, but choose to force Plaintiff to assist him in gaining a conviction, and when Plaintiff, refused, he was indited as Smith's co-defendant. The federal Defendant's Counsel, claims Howes, threaten Plaintiff, with another murder case. Again, Defendant Howes, did much more than threaten; he in fact indited Epps, after admitting in the presents of others, and to be more exact, Police Officer Wayne W. Epps, who is the blood brother, of Plaintiff Larry D. Epps, and who was closely associated with the Defendant for years, as a moble Crime Scean Search Lab Technician charged with the collection, preservation, and presentation of evidence, which Officer Epps, would comprise and give to the prosecutor, as forensic evidence to scientifically support the government's theory as to the corpus delicti of a case. When Defendant G.Paul Howes, et al., indited Plaintiff Epps, and then moved to dismiss that inditement, in exchange for Epps' plea of guilty to a count of second-degree murder, when he was aware that Epps, had a legal defense of self-defense yet choose to commit infrinsic fraud on Epps, as well as the Court to dispose of his prosecutorial mis-conduct, in such a way that it would or could appear that Epps was really guilty of two murder charges, but shoose to plea out in ex-change for a lesser included offense; which

also caused the United states Department of Justice's U.S. Parole Commission to infer that Plaintiff Epps was an extreme risk to the public safety based upon an incomplete public record that was sealed after a point to conceal the actions proform by the government in case No.: F 9286-88 (b), going back to 1989 and continuing on as of to date. All sorts of mis-conduct took place in the prosecutor's office. Consessions were made to assist Defendant Howes, wherefore Charles Cobb, who appeared to be Howes supervisor, allowed Howes to handle the rule 35 (b) in order to have leverage to insure that the plea bargan deal that was cut went according to the Plan of the Defendant. The May 8, 1989 plea bargan accepted by the Honorable Peter H. Wolf, was almost not accepted and verification of those transcripts are hereto included by sworn affidavit, of the May, 8th hearing. There is also a copy of the April of 1990 rule 35 (b) hearing where Howes admits on the public record that Epps acted in a manner consistantly equal to self -defense as it is clear from the transcripts that Epps, was left with limitted choices as he was faced with a life or death situation.

It is further noted that Plaintiff's Defense Counsel, Sherily Mari Gray, had to have known or should have; that the Defendant G. Paul Howes, et al., was acting in a manner that was against the code of cannon for lawyers, but choose to sell out her client, and take a job with the Public Defender Service after she brokered the deal which fraudulenty dupe Plaintiff out of his self-defense defense that The Honorable Peter H. Wold, felt like Epps had, and made mention of as much.

-10-

## IN CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requset that his case under Federal Rule of civil Procedure Rule 59 (e) and Fed. R. Civ. P., 60 (b), Relief From The Judgement, Be allowed and granted based on newly discovered evidence obtain around July 8, 2007. Plaintiff did not have time to prepare a brief, before the closing onJuly 31, 2007. Also find a copy of a letter from Public Defender Mona Asiner, who obtain the transcripts of the Rule 35 (b) hearings as well as the Show cause Hearings that imposed violation of the five years of probation and re-sentencing of 12, years to life. The federal defendant Paul Howes, et al, was allowed to through the rock and hide the hand, with the blessing of the court as well as the plaintiff. Plaintiff did not file an appeal in this matter after he received the newly discovered evidence, and prays that this Honorable Court will grant him relief in the matter before the Court.

Respectfully Submitted,

SO REQUESTED:

                                              Respectfully Requested,

                                              Larry D. Epps/Reg/#36966-118
                                              113 Wilmington Place, S.E.,
                                              Suite #/303
                                              Washington, DC 20032
                                              (202)(561-0115)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Larry D. Epps,<br>    Agrieved/Plaintiff,<br><br>-v-<br><br>ATTORNEY GENERAL, et al.,<br>    &<br>UNITED STATES DEPARTMENT<br>OF JUSTICE'S U.S. PAROLE<br>COMMISSION,<br>    via<br>FORMER AUSA G. PAUL HOWES, et al.,<br>    Federal Defendants, | CIVIL ACTION CASE No.:06cv00717<br>(RMC) |

## ORDER

It is hereby order that the Plaintiff's Motion for Relief from Judgment pursuant to Fed. R. Civ.P. 60 (b) and Plaintiff's Motion to amend the complaint to comport with the evidence pursuant to Fed. R. Civ. P. 15.(c) is hereby GRANTED this_____day of _____2008,

And it is further ordered that the Federal Defendants shell respond no later than the_____day of _____2008.

SO ORDERED:

                                                      The Honorable RoseMary Collyer
                                                    United states District Court Judge