CLERK OF
COURT OF THE
OF COLUMBIA

JAN 30  10 55 AM '91

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

```
------------------------------
UNITED STATES OF AMERICA :
                         :
           v.            :        Crim. No. F9268-88
                         :         JUDGE URBINA
JAMES WASHINGTON         :
    aka Larry D. Epps    :
------------------------------
```

## O R D E R

Upon consideration of Defendant's Motion for Reduction and Modification of Sentence, Government's Opposition to Defendant's Motion for Reconsideration and Modification of Sentence and the record herein, it is 23 day of January, 1991

ORDERED that Defendant's Motion is hereby DENIED.

SO ORDERED.

**SIGNED IN CHAMBERS:**

JAN 2 3 1991

*Ricardo M. Urbina*
RICARDO M. URBINA
Associate Judge

Copies shall be sent to:

Carrie L. Fair, Esq.
1025 Connecticut Avenue, N.W.
Suite 700
Washington, D.C.  20036

G. Paul Howes, Esq.
Assistant U.S. Attorney
Felony Trial Division

Mr. Larry D. Epps
DCDC #188-413
D.C. Department of Corrections
Maximum Security
Lorton, VA  2207

Copies mailed to
parties listed

JAN 3 0 19

DISTRICT OF COLUMBIA COURT OF APPEALS

No. 91-265

DISTRICT OF COLUMBIA
COURT OF APPEALS

REC'D AUG    1991

—— *Per ...* ——

Larry D. Epps,

*Appellant*

v.

United States Of America,

*Appellee*

*Appeal From The Superior Court Of The
District Of Columbia--Criminal Division*

*BRIEF OF COUNSEL SUBMITTED PURSUANT TO
ANDERS v. CALIFORNIA, 386 U.S. 638 (1967)*

DENNIS M. HART

Counsel for Appellant
552 Seventh Street S.E.
Washington, D.C. 20003
(202) 546 7770
935643

*Crim. No. F*

# Table of Contents

Table of Authorities........................................... 2

Statement of the Case......................................... 3

Statement of Facts............................................ 4


REASONS FOR THE MOTION TO WITHDRAW

I    COUNSEL IS UNABLE TO ADVANCE ANY NON FRIVOLOUS
     ARGUMENTS IN SUPPORT OF THE APPEAL.................... 7

     1. Review Undertaken By Counsel....................... 7

     2. Issues Raised By Appellant's
        October 16, 1990 Motion........................... 9

     3. Additional Issues Which Appellant
        Requested Counsel to Raise on Appeal...............10

     4. The Standard for Review of a Denial
        of a Motion to Reduce or Modify Filed
        Pursuant to Rule 35................................13

Conclusion.................................................... 14

Certificate of Service........................................ 16

# Table of Authorities

_____ v. California, 386 U.S. 739 (1967)..................... 8

_____ v. United States, 457 A.2d 390 (D.C. 1983)............... 8

Garcia v. United States, 543 A.2d 1237 (D.C. 1988)........... 13

Johnson v. United States, 513 A.2d 798 (D.C. 1986)............ 8

Patterson v. United States, 570 A.2d 1198 (D.C. 1990)........ 11

Suggs v. United States, 391 F.2d 971 (D.C.Cir. 1968).......... 8

United States v. Pollack, 655 F.2d 243 (D.C.Cir. 1980)........ 14

*Walden v. United States, 366 A.2d 1075 (D.C. 1976)........... 13

Williams v. United States, 470 A.2d 302 (D.C. 1983),
        cert. denied, 472 U.S. 1019 (1985)................... 13

*Williams v. United States, 571 A.2d 212 (D.C. 1990).......... 14

-2-

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 91-265

## Larry D. Epps,
*Appellant*

v.

## United States Of America,
*Appellee*

*Appeal From The Superior Court Of The
District Of Columbia--Criminal Division*

*BRIEF OF COUNSEL SUBMITTED PURSUANT TO
ANDERS v. CALIFORNIA, 386 U.S. 738 (1967)*

### Statement of the Case

On August     1988, a criminal complaint was filed in
which it was alleg.    James Washington, also known as Larry

-3-

Epps, murdered a Cyrus Gray during the course of a rob-
bery. On that same day, Mr. Epps was presented before a Superior
Court Commissioner on a charge of Felony Murder while armed.

As a result of plea negotiations, Mr. Epps pled guilty
to a second degree murder charge on May 8, 1989.  On April 9,
1990, the Honorable Ricardo M. Urbina sentenced Mr. Epps to a
term of twelve years to life; suspended the execution of that
sentence and imposed five years probation with the condition that
the defendant participate in a long term drug treatment program.

On June 26, 1990, a hearing was held for Epps to show
cause why his probation should not be revoked for failure to com-
ply with the drug treatment requirement.  At the conclusion of
that hearing, the original sentence of twelve years to life was
imposed.

On October 16, 1990, appellant's sentencing counsel
filed a motion to modify his sentence pursuant to Rule 35.   On
January 23, 1991, the sentencing court denied Mr. Epps' motion
for reduction and modification of the June 26, 1990, sentence.
This appeal followed.


### STATEMENT OF FACTS


On August 9, 1988, a criminal complaint was filed in
D.C. Superior Court, which alleged that the appellant murdered an
individual known as Gray during the course of a robbery.

-4-

was alleged to have taken place on July 13, 1988. On the August 9, 1988, the appellant was presented before a Superior Court Commissioner on a charge of Felony Murder while armed. Appellant was held without bond. (R. 10)

As a result of plea negotiations with the government, the appellant eventually entered a plea of guilty before the Honorable Peter H. Wolf to a second degree murder charge on May 3, 1989. (R. 14)[1]  As part of this agreement, the government would dismiss murder charges in a second case and would expect the appellant's cooperation in the prosecution of that matter. (R. 25)[2] Because of some difficulty in bringing the second matter to a trial, the appellant was not sentenced until April 9, 1990.

By the time that apppellant was sentenced, the matter had been transferred to the Honorable Ricardo M. Urbina and on April 9, 1990, the appellant was sentenced to a term of twelve years to life.  Judge Urbina then suspended the execution of that sentence and imposed five years probation with the condition that the defendant participate in a long term drug treatment program. (R. 29)

On May 24, 1990, the Superior Court Probation Department recommended a show cause hearing based on the appellant's

---

1 Appellant pled guilty to a felony information which charged him with the second degree murder of Cyrus Gray after waiving his right to indictment by a grand jury. (R. 15)

2 United States v.          J. Smith, F 9938-88.

failure to satisfy his community service obligations, his VVCC[3] assessment of $250 and the allegation that he absconded from his drug treatment program. (R. 31) On June 12, 1990, a show cause order was issued for the appellant. (R. 32)

On June 26, 1990, a hearing was held for appellant to show cause why his probation should not be revoked for failure to comply with the drug treatment requirement. At that hearing, appellant's counsel explained the background of the case and why the appellant felt compelled to leave the treatment facility. (June 26, Tr. 9-14) Counsel noted that upon his return to the District of Columbia (the original drug treatment program was in Colorado) the appellant had registered with a local treatment program and had obtained a job while waiting for bed space to open for treatment. (June 26, Tr. 11-12) After recommendations by both the probation department (June 26, Tr. 5-6) and the prosecutor's office (June 26, Tr. 14-18), the sentencing court heard from the appellant. (June 26, Tr. 21-22) At the conclusion of that hearing, the sentencing court found that the appellant had violated the conditions of probation and revoked it. (June 26, Tr. 22-25) The original sentence of twelve years to life was imposed. (R. 30). An order revoking probation was filed that same day. (R. 37)

On October 16, 1990, the appellant filed a motion for reduction and modification of his sentence. (R. 55-61) In that

---

3 Victims of     Crime Compensation Act of 1981.

motion, counsel for appellant sought a modification of the sentence to permit drug treatment at an in-patient facility in Pennsylvania. (R. 59) The government opposed this request in a written response. (R. 40-44)

On January 23, 1991, the sentencing court denied the appellant's motion by a one sentence order. (R. 107) A notice of appeal was filed by appellant's sentencing counsel on March 4, 1991. (R. 111)[4]

## COUNSEL IS UNABLE TO ADVANCE ANY NON FRIVOLOUS ARGUMENTS IN SUPPORT OF THE APPEAL

Unable to discover any non frivolous issues in the present case requires counsel to move to withdraw pursuant to *Anders v. California,* 386 U.S. 738 (1967) As grounds for this request, counsel would show the following:

### 1. Review Undertaken By Counsel

Counsel has reviewed the complete appellate record in the present case. Counsel has reviewed the probation revocation hearing transcript of June 26, 1990. He has discussed the contents of that record and transcript with the appellant in written

---

4 Althou... apparently date stamped March 4, 1991, the jacket entry ... the file date of March 5, 1991. (R. 9)

-7-

documentation. The location of the appellant in a Tennessee prison facility made a personnel interview impossible.

Transcript was ordered and produced for the revocation hearing and a copy was supplied to appellant for his review.[5] In addition, present counsel has attempted, albeit unsuccessfully, to solicit any views that prior counsel might have on potential issues.

Counsel has reviewed the statutory and case law regarding motions for reduction and modification of sentence filed pursuant to Rule 35. The results of this review have been communicated to the appellant in writing. In addition, counsel has reviewed the case law regarding motions to withdraw an appeal. *Anders, supra.; Suggs v. United States,* 391 F.2d 971 (D.C.Cir. 1968); *Johnson v. United States,* 513 A.2d 798 (D.C. 1986); *Bell v. United States,* 457 A.2d 390 (D.C. 1983). The general legal principles contained in these decisions have also been communicated to the appellant.

Despite counsel's conclusion that the appeal is without non frivolous issues, the appellant has informed counsel that he feels that Judge Urbina's decision to revoke his probation is

---

5 At appellant's request, transcript was also ordered for his initial plea hearing on May 8, 1989. This was requested by motion on June 7, 1991. While this transcript has not yet been produced, it is highly unlikely that it would have any effect on the present appeal since Judge Urbina was never presented with a challenge to the propriety of the original plea.

in several respects and that he should have been given
access to a drug rehabilitation program. Appellant has
instructed counsel that he does not wish to withdraw the matter and
prefers to have this Court consider the appropriateness of Judge
Urbina's January 23, 1991, order of denial.

Counsel has explained to the appellant that the instant
brief will be filed with the Court but not served upon counsel
for the government and that he will have the opportunity to
respond himself, if he wishes, upon receipt of the brief.

### 2. Issues Raised By Appellant's October 16, 1990 Motion

Appellant's October 16, 1990, motion to reduce or modify
his sentence pursuant to Rule 35 of the Superior Court Rules of
Criminal Procedure contained several themes. The first was that
the appellant had been unfairly pushed by government counsel into
entering a drug treatment program for which everyone else knew he
would fail. The second theme was that appellant's counsel had
located a program in Pennsylvania in which appellant would have a
greater chance of success. Finally, the motion asked that since
nearly 120 days had elapsed since the revocation that this was
sufficient punishment for the appellant's unauthorized leave from
the initial drug program. (R. 55-61)

Significantly, the motion of October 16th made no men-
tion of any illegality the revocation of the probation or in
the hearing of June 26.

-9-

Additional Issues Which Appellant
Requested Counsel to Raise on Appeal

In discussions with present counsel the appellant has suggested that a brief be filed which asks this Court to review a number of issues that were not directly raised in the October 14th motion to reduce and modify.

These issues are as follows:

A. Whether the sentencing court erred in revoking his probation solely on the basis of hearsay evidence and whether this violated his right to confront and cross examine the witnesses against him.

B. Whether the evidence presented at the probation revocation hearing was sufficient to support the sentencing court's conclusions.

C. Whether the sentencing court erred in basing the revocation of probation upon the attempt of the appellant to save himself from further criminal charges.

D. Whether the sentencing court erred when it did not hear the appellant's character witnesses.

E. Whether the appellant was the victim of racial bias within the court system and the drug program from which he absconded.

As a result of these suggestions and upon a review of the record in this case and the case law, counsel would make the following observations:

A. Appellant admits through counsel, albeit with an explanation, his absconde the Colorado drug program. When

-10-

given the chance to address the court, the appellant did nothing
to challenge the allegation that he left the program in violation
of his probation condition. (June 26, Tr. 21-22)    There was no
dispute on this question during the hearing of June 26th.    Nor
was there any factual dispute raised in the October 16th motion
for modification or reduction.    Without any factual dispute and
with all parties assuming the correctness of the core assumption-
that appellant left the drug program without permission-it is im-
possible to assign error to this decision no matter what standard
of evidence was utilized.[6]

Yet even if a level of evidence is required for a hear-
ing in which there are no disputed essential facts, it is clear
from prior decisions of this Court that hearsay is admissible as
long as it is "worthy of belief."    *Patterson v. United States,*
570 A.2d 1198, 1199 (D.C. 1990)    The essential facts of violation
were contained in the probation violation report of May 24, 1990,
(R. 31) and adopted by the sentencing court (June 26, Tr. 3-5)
and fall within the category of evidence permitted in *Patterson.*
Nor is there any merit to the allegation that the use of such
evidence deprived the appellant of his right to confront the wit-
nesses.    *Patterson,* 570 A.2d 1198, 1199, note 1.

B.  The evidence presented at the hearing was sufficient to
support the sentencing court's conclusion since there was no dis-

---

6 Indeed the appell.    ...as not now even challenge the essential
fact that he left          ...gram without permission--only that the
sentencing court d          ...ree with his reason for leaving.

-11-

........ the violation.  Given the second opportunity to raise
.. .... .... question in the October 16th motion for modifica-
. ... .... appellant a, .m did not advance this issue.

.. the appellant's major complaint appears to be that the
sentencing court did not agree with the judgment call the appel-
lant made in leaving the Colorado drug program.  It is clear from
the record however, that the sentencing court was aware of the
situation.  It was presented to the court both by defense counsel
(June 26, Tr. 7-13) and by government counsel. (June 26, Tr. 14-
18)  The appellant does not now, nor has he ever, challenged the
accuracy of those representations.  Furthermore, the appellant
elected to present nothing new as a defense in his October 16th
motion for modification.

D. The appellant did not present character witnesses at
the June 26th revocation hearing.  The appellant did not in any
fashion indicate that such witnesses were available or that he
wanted to call such witnesses.  Appellant did not seek any con-
tinuance for such a person.  In the October 16th motion for modi-
fication, the appellant makes no mention of additional witnesses
or character testimony.  Moreover, appellant has not presented
such witnesses or any indication of their testimony to un-
dersigned counsel.  This must be viewed as nothing more than an
after the fact attempt to find some error in the revocation deci-
sion.

E. Although the appellant has advanced much rhetoric in
support of his position th.....  .. a victim of racial bias on the

12-

... ... the ... Justice System, he has presented no facts
... ... ... ... that conclusion in any way.

4. The Standard for Review of a Denial
   of a Motion to Reduce or Modify Filed
   Pursuant to Rule 35

        Pursuant to Rule 35(b) of the Superior Court Criminal
Rules, a motion to reduce or modify a sentence may be made within
120 days after sentence is imposed or probation revoked.   The
Rule also requires that the trial court shall determine the mo-
tion within a reasonable time.   There are no other requirements
applicable to the present motion within Rule 35.

        This Court has concluded that the purpose of Rule 35
is to allow the trial court to consider, after further reflec-
tion, whether the sentence originally imposed was too harsh in
light of the defendant's conduct. *Williams v. United States,* 470
A.2d 302 (D.C. 1983), *cert. denied,* 472 U.S. 1019 (1985).

        A motion for reduction or modification of sentence is
basically a plea of leniency and is addressed to the trial
court's discretion. *Walden v. United States,* 366 A.2d 1075 (D.C.
1976)   Thus, the standard for a review of such a motion is the
abuse of that discretion.   Under established principles, this
means that dissatisfied movants have an extremely limited right
of appeal from the trial court's exercise of discretion. *Garcia
v. United States,* 542 A.   ..37 (D.C. 1988).   This is required
since appellate courts ...   ... substitute their judgment for that

-13-

of the trial court in matters of sentence reduction or modifica-
tion. Williams v. United States, 571 A.2d 212 (D.C. 1990).

Counsel has considered the potential issue of timeli-
ness of the trial court's decision since the motion was made on
October 16, 1990, and not decided until January 23, 1991.  Rule
5 does require a timely decision by the trial court.  *See,*
*United States v. Pollack* 655 F.2d 243 (D.C.Cir. 1980)  The delay
in this case does not appear to in any way have infringed on any
interest of the appellant so as to form the basis for appellate
review.

Under these general principles, it is clear that ap-
pellant has no appealable issues in the present case.  The trial
court exercised its discretion without legal challenge on June
26, 1990, when it revoked probation and executed the sentence.
The subsequent exercise of discretion in denying the motion to
reduce and modify is without any fault.


## CONCLUSION


While the appellant has sought redress for what he per-
ceives to be a trick played upon him by the government who re-
quired him to participate in a drug program which he believes he
was justified in absconding from, he has exhausted his available
legal remedies.  Unable to convince the sentencing court of the
merits for a second time at his revocation hearing, his sub-

-14-

. . . . . . . . motion raises no legal or factual issue which
. . . . . . . the basis for a review by this Court.

In discussions with present counsel, the appellant has
asked for the appellate consideration of a number of different
issues. Counsel notes that none of these issues were raised in
the motion from which this appeal originates. Yet even if there
were some way that jurisdiction to review could be obtained, none
of the issues suggested by the appellant has any factual support.

For the foregoing reasons, counsel respectfully requests
that this Court permit him to withdraw from further representa-
tion in this matter.

Respectfully submitted,

~~Dennis M. Hart~~
552 Seventh Street S.E.
Washington, D.C. 20003
(202) 546 7770

15-

## CERTIFICATE OF SERVICE

I, Dennis M. Hart, do certify that a true and correct copy of the foregoing was served, by mail, with first class postage prepaid, upon Larry D. Epps, DCDC 188-413, CCA West Tennessee Detention Facility, 555 Finde Naifeh Jr. Drive, Mason, Tennessee, this 8th day of August, 1991.

Dennis M. Hart

-16-

## District of Columbia
## Court of Appeals

DISTRICT OF COLUMBIA
COURT OF APPEALS

**FILED**

*Filed E. ~*
Clerk

No. 91-265

LARRY D. EPPS,
~~A/K/A JAMES WASHINGTON~~

                                     Appellant,
                                     F9286-88

        v.

UNITED STATES,

                                     Appellee.

### O R D E R

        On consideration of the motion of appellee to vacate the advanced briefing order of June 10, 1991, and it appearing that on August 8, 1991, counsel for appellant filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), it is

        ORDERED that the motion is granted and this court's advanced briefing order of June 10, 1991 is hereby vacated.  It is

                        BY THE COURT:

                        *John A. Terry*

                        JOHN A. TERRY
                        Acting Chief Judge

Copies to:

Dennis M. Hart, Esquire
552 7th Street, S.E.
Washington, D.C. 20003

John R. Fisher, Esquire
Assistant United States Attorney

gr

# District of Columbia
# Court of Appeals

August 20, 1991

Mr. Larry D. Epps
DCDC #188-413
CCA West Tennessee Detention Facility
555 Finde Naifeh Jr. Drive
Mason, Tennessee

RE: No. 91-265 – *Larry D. Epps v. United States*

Dear Mr. Epps:

   In the above case, your court-appointed counsel has filed a motion to withdraw from this appeal.  If you wish to do so, you may file a response to this motion on or before September 27, 1991, indicating your reasons why Dennis M. Hart, Esquire, should not be permitted to withdraw or any grounds for appeal you believe you may have.  In the event you need additional time within which to respond, please advise me.  I have enclosed a self-addressed stamped envelope for your use.

   After your response has been received or the time for filing has expired, the motion and any response you may make will be submitted to the court for its consideration.  The court will also review the record of the trial proceedings including the court reporter's transcript.  If the court concludes the appeal lacks merit and grants the motion of your court-appointed counsel to withdraw, the appeal may be dismissed.  Therefore, it is important that you file a response to the motion if you believe there are grounds for appeal.

                              Sincerely,

                              Jane E. Petkofsky
                              Senior Staff Attorney

JEP-gr

# District of Columbia
# Court of Appeals

DISTRICT OF COLUMBIA
CLERK OF APPEALS

No. 91-265

FILED

LARRY D. EPPS,

               **Appellant,**

      v.

*Richard B. Hoffman*
Clerk

**F9286-88**

UNITED STATES,

             **Appellee.**

BEFORE:   Terry and Steadman, Associate Judges, and Gallagher, Senior Judge.

### JUDGMENT

On consideration of the motion of counsel for appellant for leave to withdraw, and there appearing to be no opposition thereto, and it further appearing that there are no non-frivolous issues on appeal, it is

ORDERED that the motion is granted.  See *Anders v. California*, 386 U.S. 638 (1967).  It is

FURTHER ORDERED and ADJUDGED that the order on appeal is hereby affirmed.

                        FOR THE COURT:

                        *Richard B. Hoffman*

                        RICHARD B. HOFFMAN
                        Clerk of the Court

Copies to:

Honorable Ricardo M. Uri

Clerk, Superior Court

DISTRICT OF COLUMBIA COURT OF APPEALS

APPEAL FROM THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

9100265

TITLE OF CASE

LARRY D. EPPS
a/k/a JAMES WASHINGTON ,

ATTORNEYS FOR APPELLANT

*DENNIS M. HART
CJA NEW
552 7th Street SE
WASHINGTON DC    20003   546-7770

APPELLANT,

v.

UNITED STATES

APPELLEE,

COURT NO: F9286-88
COURT DIVISION: CRIMINAL
TRIAL JUDGE: RICARDO M. URBINA
DATE OF JUDGMENT/ORDER: 01/30/91
NOTICE OF APPEAL FILED: 03/04/91

ATTORNEYS FOR APPELLEE

JOHN R. FISHER
USAO
555 4th St NW   Rm 5220   JUDICIARY
WASHINGTON, DC    20001    514-7088

CITE:

REMARKS: REDUCTION OF SENT
AJ

ATTORNEYS

<div style="border:1px solid">

**DARRYL J. SMITH**, APPELLANT, v. UNITED STATES, APPELLEE
**District of Columbia Court of Appeals**
**591 A.2d 229;1991 D.C. App. LEXIS 118**
**No. 90-564**
**April 25, 1991, Argued**
**May 24, 1991, Decided**

</div>

**Editorial Information: Prior History**

Appeal from the Superior Court of the District of Columbia; Hon. Frederick H. Weisberg, Trial Judge.

**Disposition:** *Affirmed.*

**Counsel**                        *Stephen I. Singer,* Public Defender Service, with whom *James Klein,* Public Defender Service, was on the brief, for appellant.
                        *Stevan E. Bunnell,* Assistant United States Attorney, with whom *Jay B. Stephens,* United States Attorney, *John R. Fisher* and *G. Paul Howes,* Assistant United States Attorneys, were on the brief, for appellee.

**Judges:** Terry and Steadman, Associate Judges, and Kern, Senior Judge.

### Opinion

**Opinion by:**            STEADMAN

### Opinion

{591 A.2d 230} The issue in this appeal, although technically one of sufficiency of the evidence, basically involves the scope of the criminal offense of obstruction of justice insofar as it applies to witness tampering. The relevant provision, D.C. Code § 22-722 (a)(1) (1989), reads:

(a) A person commits the offense of obstruction of justice if that person:

(1) Corruptly, or by threats or force, endeavors to influence, intimidate, or impede any juror, witness, or officer in any court of the District of Columbia in the discharge of his or her duties.

Appellant was convicted under this provision for attempting to persuade two friends of his to testify falsely on his behalf about his lack of participation in an alleged murder. We affirm.

I

Appellant was arraigned on August 24, 1988, for a murder committed twenty-two days before. Shortly after being released, on September 8, 1988, he asked two friends of his, Dominic Dorsey and Joseph Calhoun, to testify that they had been with appellant at the scene of the killing and had seen the killing committed not by appellant but instead by one Larry Epps. As Dorsey testified, "he wanted us to say that -- when we went to court, he said he wanted us to be his witness and say that he didn't do it." About 10 days later, appellant again approached Calhoun, along with another friend of appellant,

dccases                                        1

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Lamarr Young, and asked them to testify to a more elaborate story also pinning the blame on Epps. Appellant told Young to tell this story "to whoever when I come to court and tell it to the judge." Some days later, after learning that the police wanted to talk to witnesses, appellant, Calhoun, and Young again talked about the story.

In fact, Calhoun was not present at the scene of the killing or anywhere near it. Dorsey was a member of the group that accompanied appellant to the apartment house where the killing took place and was a witness to the events in the apartment {591 A.2d 231} where appellant, the victim, and Epps (among others) were all present shortly prior to the killing; however, Dorsey was not present at the time or scene of the killing, which took place in a stairwell. Calhoun initially told the Assistant United States Attorney that Epps had been the killer but eventually admitted he was not anywhere present. Dorsey refused to go forward with the false story. Young, who was an eyewitness, testified at the trial that appellant had been the killer. At the trial, appellant was acquitted of the murder but convicted on two counts of obstruction of justice under D.C. Code § 22-722 (a)(1), which related to his conversations with Calhoun and Dorsey. 1

Appellant's arguments with respect to the sufficiency of the evidence address the two counts in somewhat different but related ways. We take each in turn.

II

With respect to Dorsey, appellant's assertion is that no evidence was introduced that at the time appellant spoke to him, Dorsey was expected to testify and that he was therefore not a "witness" as required by the statute. 2

The word "witness" is not defined in the statute itself. The jury was instructed, without objection by appellant, that in order to convict, the government must prove beyond a reasonable doubt that Dorsey "was a witness or a potential witness in a case pending in the District of Columbia Superior Court." 3 The jury was further instructed:

The term "witness" means a person who knows or may know facts that are material to a pending case and who is expected to testify in that case, whether or not the person has actually been subpoenaed to testify at that time. A person is not a witness when regardless of his knowledge of material facts bears [sic -- presumably "there is"] no present expectation or intention that the person will be called to testify.

This was a substantially correct statement of the law. D.C. Code § 22-722 was part of the District of Columbia Theft and White Collar Crimes Act of 1982. In the main, it carried forward the provisions of pre-existing law, D.C. Code § 22-703 (1981), which in turn reflected the provisions of former 18 U.S.C. § 1503 (1970). The Extension of Comments of the chairperson of the Committee on the Judiciary, July 20, 1982, in commenting on proposed section 722, states that "as under the current law, the term 'witness' is intended to mean a person who knows or is supposed to know material facts about a case which is pending and who may be called to testify," citing in a footnote United States v. Jackson, 168 App. D.C. 198, 513 F.2d 456 (1975). In that case, involving 18 U.S.C. § 1503, the court stated that "indubitably, one is a witness, within the meaning of section 1503, when he knows or is supposed to know material facts, and expectably is to be called to testify to them." United States v. Jackson, supra, 168 U.S. App. D.C. at 201, 513 F.2d at 459.

The facts here supported a jury finding that Dorsey was a witness within the above definition. As one who had accompanied {591 A.2d 232} appellant to the general area of the killing, he clearly had knowledge of relevant facts immediately surrounding the offense, and could be expected to testify concerning them. See Toliver v. United States, 468 A.2d 958 (D.C. 1983). Certainty as to one's role as a witness is not the test; it is whether there is a reasonable expectation to that effect. As put in the

dccases                                              2

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Extension of Comments quoted above, the issue is whether the person "may" be called to testify. Thus, even if Dorsey is regarded as a potential witness for the prosecution, we think the jury could find him to be a protected "witness."

III

The argument with respect to Calhoun is more intricate. Here it cannot be questioned that at the moment when appellant first approached Calhoun, he (Calhoun) knew no facts material to appellant's murder trial and therefore at that point in time was not a "witness." Appellant asserts that under the statute, a person must have the status of a "witness" at a point pre-existing the moment when a defendant first "endeavors to influence, intimidate, or impede" that person in any statements concerning the offense. The government meets this argument in two mutually reinforcing ways, both of which we think are correct.

A

First, however relevant appellant's position may be with respect to witnesses for the prosecution, it fits poorly when dealing with witnesses for the defense. As to the latter, it is the defendant who to a greater or lesser degree determines who are to fall in that category, potential or actual. If, as here, by his actions, a defendant attempts to vest a person with the status of one who "may know" or "is supposed to know" -- for it is not actual knowledge that is required -- then that person indeed becomes a witness within the meaning of the statute.

The statutory goal of preventing the obstruction of justice requires no less. The provision at issue here by its language covers the broad category of participants, potential or actual, in pending criminal proceedings, and its application extends not only to those who inherently fall within that category by their actual knowledge of material facts but those as well who are by the defendant's own acts brought within that category.

The defendant argues that such an interpretation makes meaningless the prohibition against subornation of perjury, contained in another section of the 1982 Act, D.C. Code § 22-2512 (1989). However, that provision, dealing with a wide variety of statements under oath, covers a multitude of instances which would not be reached by § 22-722 (a)(1), and the latter section likewise covers far more than attempts to seek false testimony. Cf. United States v. Partin, 552 F.2d 621, 631 (5th Cir.) (noting that attempted subornation of perjury "may well" violate witness tampering provision of former federal obstruction of justice statute), cert. denied, 434 U.S. 903, 98 S. Ct. 298, 54 L. Ed. 2d 189 (1977). Furthermore, there is nothing remarkable in the fact that the same act may violate two or more statutory provisions. See, e.g., Holt v. United States, 565 A.2d 970 (D.C. 1989) (en banc).

B

Furthermore, appellant's contact with Calhoun here was not limited to a single encounter. By the time the second and third meetings had occurred, Calhoun had become knowledgeable of facts material to the pending litigation; namely, appellant's consciousness of guilt in seeking fabricated testimony. See Smith v. United States, 312 A.2d 781, 784-85 (D.C. 1973) (testimony that defendant had threatened a witness constituted highly relevant implied admission of guilt). Indeed, the trial court without objection instructed the jury that they "may consider" appellant's attempts to influence Dorsey and Calhoun to testify falsely as evidence "tending to prove Mr. Smith's consciousness of guilt," although they were not required to do so. While we recognize that reliance upon this theory {591 A.2d 233} standing alone could present potential jury unanimity problems, no such objection was raised at trial or request for a unanimity instruction made, and we perceive no "plain error" in that regard. Shivers v. United States, 533 A.2d 258, 263 (D.C. 1987).

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

For the foregoing reasons, the judgment of conviction appealed from must be
*Affirmed.*

### Footnotes

1

Appellant was not charged with obstruction of justice with respect to his conversation with Young. The trial court granted appellant's motion for a judgment of acquittal on a third count of obstruction of justice relating to one Howard Benson-El.

2

Appellant appears to bifurcate this argument into two parts, namely, whether Dorsey himself expected to testify and whether appellant himself knew or had reason to know that Dorsey was expected to testify. We see no significance in this distinction for purposes of this appeal, since a jury could easily infer that both Dorsey and appellant knew or had reason to know of Dorsey's potential as a witness. In this regard, we think the facts here significantly differ from *Walker v. United States,* 93 F.2d 792 (8th Cir. 1938), on which appellant places heavy reliance. In that case, a split 2-1 decision, the person approached was a co-defendant who could not be forced to testify, and the court apparently thought it important that the evidence show that she "intended to be a witness." No such problem is presented in the case before us.

3

Appellant now takes issue with the use of the phrase "potential witness," but this is a helpful clarification whose import was made clear by the further explanation of the term.

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.