SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Criminal Division

UNITED STATES OF AMERICA      :
                             :
            v.               :    Criminal No. F 9286-88
                             :    Judge Wolf
JAMES WASHINGTON             :    Post Conviction Remedy
   aka Larry D. Epps         :

## ~~MOTION FOR REDUCTION~~ AND MODIFICATION OF SENTENCE

Defendant, James Washington, aka Larry D. Epps, by and through his attorney, Carrie L. Fair, Esquire, respectfully moves this Court pursuant to Rule 35 of the Court's Rules of Criminal Procedure to reduce the twelve year to life imprisonment sentence previously imposed on defendant. Defendant also requests that the Court modify the present sentence by recommending to the Attorney General of the United States that he serve his sentence at a federal institution.

In support of this motion, defendant states the following:

1. On August 9, 1988, defendant was charged with the offense of felony murder while armed.

2. On May 8, 1989, pursuant to a pre-indictment plea offer, defendant entered a plea of guilty to one count of second degree murder while armed before the Honorable Peter H. Wolf. As part of the plea offer, defendant agreed to assist       government in its prosecution of a co-defendant, Darryl Smith, in      case No. F 9938-88. Thereafter, Criminal Case No. F 1451       be dismissed against defendant. In addition, the government a       oppose defendant's request, at the time of sentencing, for a feder       nation.

3. At the senten       ring, on June 23, 1989, as aforesaid, the

- 2 -

Court sentenced defendant to twelve years to life imprisonment.

4.    His counsel, (then Shirlimarie M. McAroy-Gray, Esquire) again advised the Court of defendant's agreement to assist the government and of his desire to serve his sentence at a federal institution.  The Court declined to give defendant a federal designation until such time as he had completed his obligation to the government.

5.    Since being sentenced in this matter, defendant has prepared to fulfill his obligation under the plea agreement.  He was ready, willing and able to testify for the government against Darryl Smith on August 28, 1989. Unfortunately, the co-defendant Smith was granted a continuance on the day of trial.  A new trial has been scheduled for the end of November, 1989.

6.    Pursuant to rules of this Court, a motion seeking the reduction and modification of a previously imposed sentence must be filed within 120 days after sentencing.  Therefore, defendant is seeking a reduction of his sentence and in addition, a modification of his sentence, that is designation to a federal institution.

7.    Defendant truly desires a chance at rehabilitation.  It is his considered opinion that this can only be achieved at a federal institution which provides a wider    ay of rehabilitative services.  Because of this superiority of services and     disparity between the District of Columbia parole guidelines and    al parole guidelines, defendant, by serving his sentence at a     itution, would not gain the benefit of the Good Time Credit Act o.    the pre-parole release provisions provided under the District of (    parole guidelines.  Thus, he would virtually have to serve all of     imposed by this Court.  With that awareness defendant

- 3 -

seeks a modification of his sentence so that he can, in tandum, receive the benefits of a federal institution during his incarceration.

8.    Defendant also requests a hearing on this matter and prefers to have the hearing set for early December 1989, after the completion of co-defendant Darryl Smith's trial, which is now scheduled for the end of November, 1989.

WHEREFORE, for the above-stated reasons and for such other reasons as may appear at a hearing on this Motion, defendant respectfully requests a reduction and a modification of his sentence.

Respectfully submitted,

Carrie L. Fair, Esquire        048884
Attorney for James Washington aka
 Larry D .Epps
1025 Connecticut Avenue, N.W.
Suite 700
Washington, D. C. 20036
(202) 785-2442

## CERTIFICATE OF SERVICE

I he... ...y that a copy of the foregoing Motion was this 20th day of Octob. ...iled, first-class, postage prepaid, to Charles Cobb, Esquire, ...wes, Esquire, Office of the United States Attorney, 555 4th Stre... ...shington, D. C. 20001.

Carrie L. Fair, Esquire

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CRIMINAL DIVISION - FELONY BRANCH

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal Case No. F9286-88 |
| v. | : |
| | : Judge Ricardo M. Urbina |
| JAMES WASHINGTON | : |
| (AKA LARRY EPPS) | : |
| | : Sentencing: 4-9-90 |

MAR 16  9 35 AM '90

FILED

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR REDUCTION & MODIFICATION
OF SENTENCE

The United States, through its attorney, the United States
Attorney fore the District of Columbia, makes the following re-
presentations in response to defendant's motion for a modifi-
cation and reduction of sentence.

1. The defendant entered a plea in the case before this Court
in exchange for the government's dismissal of murder charges in a
second case, contingent upon the defendant testifying truthfully
under oath at the trial of the second matter (United States v.
Darryl J. Smith, F9938-88). The latter was tried before Judge
Weisberg beginning on February 20, 1990.

2. The government wishes to make specific representations
at the bench concerni... ...pects of Mr. Epps's cooperation.

3. The governm... ...not oppose federal designation; in
fact, the governme... ...s that Mr. Epps will benefit from
training programs ...federal system. Moreover, in light
of these matters, ...welfare is best assured outside
this jurisdiction...

4. The gove... ...lieves Mr. Epps has the intelligence,
talents, and skil... ...e a productive and creative member of
any community, h... ...prison or in the community. He has

-2-

This is the final opportunity for Mr. Epps to decide whether
his extensive artistic talents and business skills will be
show cased behind bars or behind windows. The government be-
lieves that Mr. Epps has the capacity to be a useful and non-
violent member of the community.

5. Investigation of the case before this Court shows that
Mr. Epps was faced with limited choices. While finding no basis
for a legitimate self-defense claim, given Mr. Epps's criminal
(drug-related) activities, he would have been the victim had
he not killed the decedent in his case. Extensive informant
data and investigation by a special task force shows that the
man Mr. Epps killed had a contract on Mr. Epps's life and planned
to kill Mr. Epps -- and he would have, but Mr. Epps acted first.

6. The government in no way condones Mr. Epps's criminal
violence and drug-related conduct. Mr. Epps is a mature, talented,
and very intelligent man with the ability to make the right
choices in his life. He is the first to explain -- but not
attempt to excuse -- his criminal record with one word: cocaine.
Mr. Epps educated and advised several young government witnesses that
their choices could and would lead them to the same plight he
faces unless they change their ways: not talk, just commitment.
Mr. Epps played an instrumental role in the strategic decisions
reached in the Smith  a role he was not required in any
way to play under no event. But he was truthful and provided
a crucial link in his turning the government's theory into
an explanable and logic case of premeditated murder, with
fact and circumstance that only Mr. Epps could provide.

-3-

7. The government does not mitigate the fact that Mr. Epps took another man's life, but in all candor -- within the realm of drug dealing -- Mr. Epps was a marked man by a New York/Jamaican group and he came within moments of being murdered. In light of Mr. Epps's cooperation -- well beyond what was required under his agreement, as he served literally as a role model for young witnesses in what they could well become unless they were truthful with themselves about their own addictions and choices -- the government joins in the defendant's request for a reduction of sentence and a federal designation for the remainder of his time. The government wishes to reserve further representations at the bench during the hearing on this matter.

Respectfully submitted,

JAY B. STEPHENS
UNITED STATES ATTORNEY

G. PAUL HOWES
ASSISTANT UNITED STATES ATTORNEY

CERTIFICATE OF SERVICE

I hereby ce         a copy of this motion was mailed to
the defendant,     ngton (aka Larry Epps), P.O. Box 25,
Central Facility    Va., 22199, and to his counsel, Carrie
L. Fair, Esq.,     Avenue NW., Suite 700, Washington, D.C.
20036, this 16th    March 1990.

G. PAUL HOWES
ASSISTANT UNITED STATES ATTORNEY

SUPER    COURT OF THE DISTRICT OF )LUMBIA

CRIMINAL DIVISION  -  FELONY BRANCH

UNITED STATES OF AMERICA          :

          V.                             :    Criminal Case No. F9286-88  3 50 /// '90

                        :    Judge Urbina

LARRY D. EPPS                      :    Closed
(aka JAMES WASHINGTON)             :

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
## FOR RECONSIDERATION AND MODIFICATION OF SENTENCE

The United States, through its attorney, the United States Attorney for the District of Columbia, opposes defendant's motion for reconsideration and modification of sentence, and offers the following points, authorities, and representations:

1. Defendant plead guilty to second degree murder in a separate case on May 8, 1989. In June 1989 he was sentenced by Judge Wolf to serve 12 years to life in prison. This case, F9286-88, was dismissed by this prosecutor, as part of the plea arrangement in the separate case, upon the condition that the defendant testify truthfully at trial as a government witness against Darryl Smith, charged in the stairwell execution of Billy Wilson on August 2, 1988 inside a high-rise at 5929 East Capitol Street Southeast.

2. Defendant w    prepared to testify in the Darryl Smith murder trial although he was n.   .d by the prosecutor. However, it should be noted that defendant c   11 the prosecutor the full truth about the murder until the t     trial, at the same time the defendant offered his gratuitous    ions for trial strategy and witness preparation.

3. In lig    defendant's assistance to the government in the Smith murder c.   because the prosecutor believed that the defendant wa  talented,    gent, and finally at an age when he could decide to

-2-

alter his life of drug abuse and criminal conduct; and because the
prosecutor personally investigated defendant's separate murder case
and found it to be lacking a valid self-defense claim but that there
had been a contract on the defendant's life such that had he was faced
with a kill or be killed situation, the prosecutor arranged to have
defendant placed in Stout Street in Denver, Colorado. This accommod-
ation for defendant was unprecedented.

4. Defendant was granted several weeks to place his personal af-
fairs in order before the government paid for his air fare to Den-
ver. The prosecutor was in contact with his family and with the
older family friend with whom he lived throughout that period.
Defendant picked his initial departure date and then, at the last
moment, asked for and received an extension from the prosecutor so
that he could conclude personal matters.

5. Before his departure the prosecutor and at least two police
detectives spoke at length to the defendant about the Stout Street op-
portunity. He told us that Stout Street was what he wanted to do, not-
withstanding the rigors of the program. He never once mentioned the
try-this-one-get-another-program-later option nor was such an oppor-
tunity mentioned to him or ever hinted at. The government is never in
the business of providing alternative non-prison sentences in murder
cases. The prosecutor, for the reasons stated here, believed this to
be a special case worthy of affording defendant a chance to trade 12
years to life in exchange for 2-3 years in a program where he could rid
himself of his addiction and alter the course of his life.

6. At no time prior to defendant's ignominious return to the
District three weeks into the program did any member of the Pub-
lic Defender Service or the defendant himself or his former or present

-3-

counsel or any family member raise or even hint at the prosepect that
Stout Street was not the right program. In fact, any program sanc-
tioned by the government and approved of by the court which would
offer defendant the choice between 12 years to life in prison or 2-3
years in an intensive treatment regimen was thought to be just short
of miraculous. The assertion that defendant sought to please the
prosecutor is incredible. Defendant was not offered a menu from which
to choose the program of his liking. Defendant was offered one oppor-
tunity to change his life, if he were strong enough to do so, and if
he had reached the stage where he feared not changing more than he
accepted being an habitual criminal.

7. This was not a case where defendant could try a program for
however long he chose and then make a change when he decided to. Defen-
dant's obligation was to make a choice: complete Stout Street or serve
12 years to life for second degree murder. Three times defendant called
from Denver to the prosecutor's home at night to complain about the
rigors of the program. That was to be expected at least for the first
or second call. No one promised him the alteration from criminal drug
addict to drug-free productive citizen would be easy, especially at his
age and with his record. But to have failed completely in less than
three weeks is testi     only to defendant's continuing con game. His
failures are always    one else's fault. His inability to change is
always someone els     sibility. His refusal to deal with reality,
to over come his          , to address his fears and insecurities
-- which are mas         believes, in word games and seeming sophis-
tication -- is a         ationalized as needing one more chance. A de-
fendant with hal         Epps's intellect and talent would have played
any therapy game         he anything required to escape life in prison.

-5-

It should not be forgotten that when defendant was given the opportunity to speak at his hearing, he uttered not one word of remorse for his failure; not one word of thankfulness for the chance extended to him by the court. But now, through his counsel, he is penitent and humble. It is more than mere coincidence that those character alterations come about when he is again facing 12 years to life in prison.

11. The government has no objection to defendant's transfer to a federal correctional facility where drug treatment is available.

WHEREFORE, in light of defendant's choice of prison rather than a respected drug treatment program, defendant's motion for reconsideration and reduction of sentence should be summarily denied without a hearing.

Respectfully submitted,

JAY B. STEPHENS
UNITED STATES ATTORNEY

G. PAUL HOWES
ASSISTANT UNITED STATES ATTORNEY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this motion response was mailed to defense counsel Carrie L. Fair, Esq., 1025 Conn. Avenue NW., Suite 700, Washington, D.C. 20036, this 23d day of October 1990.

G. PAUL HOWES
ASSISTANT UNITED STATES ATTORNEY

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

United States of America
District of Columbia

vs.

*#99*

*Harry D. Epps*
*AKA James Washington*

Case No. *F 9250-88 B*

PDID No. *304 430*

### JUDGMENT AND COMMITMENT/PROBATION ORDER

The above-named defendant having entered a plea of [ ] Not Guilty [✓] Guilty to the Charge(s) of *≤3*
*Second Degree Murder*

and having been found guilty by [ ] Jury [✓] Court, it is hereby ORDERED that the defendant has been
convicted of and is guilty of the offense(s) charged, and is hereby SENTENCED to *Count (B)*
*Not less than 18 yrs. and More than Life*

_____

[ ] MANDATORY MINIMUM term of _____ applies to the sentence imposed.

[✓] MANDATORY MINIMUM term does not apply.

[✓] ORDERED that the defendant be committed to the custody of the Attorney General for imprisonment for
the period imposed above. *PSI attach.*

[ ] ORDERED that the defendant be committed to the custody of the Attorney General for treatment and super-
vision provided by the D.C. Department of Corrections pursuant to Title 24, Section 803[b] of the D.C. Code
[Youth Rehabilitation Act 1985].

[ ] ORDERED that the defendant be placed on probation in charge of the Director, Social Services Division,
and it is further ORDERED that while on probation the defendant observe the following marked conditions
of probation:

[ ] Observe the general conditions of probation listed on the back of this order.

[ ] Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with
written notice from your Probation Officer.

[ ] Treatment for [ ] alcohol problems [ ] drug dependency or abuse as follows: *6-14-0*

[ ] Restitution of $_____ in monthly installments of $_____
_____ (see reverse side for payment schedule) and the Court

will distribute monies to _____

Costs in the aggregate amount of $ *250.00* have been assessed under the Victims of Violent Crime
Compensation Act of 1981, and [ ] have [✓] have not been paid.

ORDERED that the Clerk deliver a true copy of this order to appropriate authorized official(s) and that the
copy shall serve as the commitment/order for the defendant.

*6/23/89*
Date

*Peter H. Wolf*
Judge

Certification by Clerk pursuant to Criminal Rule 32(d).

*6/23/89*
Date

*10:15 p.m.*

_____
Deputy Clerk

Form CDF19 1005 Aug '85

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

#144

United States of America
District of Columbia

Case No. _EG286-88_ B

vs.

PDID No. _304 430_

_James Washington AKA Larry Epps_

_AMENDED_    JUDGMENT AND COMMITMENT/PROBATION ORDER

The above-named defendant having entered a plea of ☐ Not Guilty ☒ Guilty to the Charge(s) of _____
_Second degree murder_

and having been found guilty by ☐ Jury ☒ Court, it is hereby ORDERED that the defendant has been convicted of and is guilty of the offense(s) charged, and is hereby SENTENCED to _14 years_ _to life. Execution of sentence previously imposed (suspended) 5 years probation._ _(Drug testing ordered after completion of long-term treatment 1 X week for the 1st year after completion + 2 x month second year after long-term treatment)_

_____ MANDATORY MINIMUM term of _____ applies to the sentence imposed.

☐ MANDATORY MINIMUM term does not apply.

☐ ORDERED that the defendant be committed to the custody of the Attorney General for imprisonment for the period imposed above.

☐ ORDERED that the defendant be committed to the custody of the Attorney General for treatment and supervision provided by the D.C. Department of Corrections pursuant to Title 24, Section 803[b] of the D.C. Code [Youth Rehabilitation Act 1985].

☒ ORDERED that the defendant be placed on probation in charge of the Director, ~~Social Services Division,~~ and it is further ORDERED that while on probation the defendant observe the following marked conditions of probation:

☒ Observe the general conditions of probation listed on the back of this order.

☐ Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with written notice from your Probation Officer.

☒ Treatment for ☐ alcohol problems ☒ drug dependency or abuse as follows:
_Enter & complete long-term inpatient & outpatient phases_

☐ Restitution of $_____ in monthly installments of $_____ beginning _____ (see reverse side for payment instructions). The Court will distribute monies to _____

☒ _Obtain Employment. Probation department to set up community service - preferrably directed toward youth drug rehabilitation._

Costs in the aggregate amount of $ _250.00_ have been assessed under the Victims of Violent Crime Compensation Act of 1981, and ☐ have ☒ have not been paid.

ORDERED that the Clerk deliver a true copy of this order to appropriate authorized official(s) and that the copy shall serve as the commitment/order for the defendant.

_4-9-90_
Date

**A TRUE COPY**
**TEST** _6-14-27_

_____
Judge

Certification by Clerk pursuant ~~to Superior Court of the~~ ~~District of Columbia~~ d).

_4-9-90_
Date

By: _____
Deputy Clerk

_____
Deputy Clerk

Form CRDC 1040 Aug. 87

*StepBack*
*11:19*

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

United States of America
District of Columbia

Case No. *F 9286-88 B*

PDID No. *304-430*

vs.

*Larry D. Epps*

*AKA James Washington*         *Probation is Revoked*

### JUDGMENT AND COMMITMENT/PROBATION ORDER

The above-named defendant having entered a plea of [ ] Not Guilty [X] Guilty to the Charge(s) of _____

*Second Degree Murder*

and having been found guilty by [ ] Jury [X] Court, it is hereby ORDERED that the defendant has been convicted of and is guilty of the offense(s) charged, and is hereby SENTENCED to *Twelve Years to Life.*

[ ] MANDATORY MINIMUM term of _____ applies to the sentence imposed.

[X] MANDATORY MINIMUM term does not apply.

[X] ORDERED that the defendant be committed to the custody of the Attorney General for imprisonment for the period imposed above. *P.S.I. not available. Sentencing on 6-26-89*

[ ] ORDERED that the defendant be committed to the custody of the Attorney General for treatment and supervision provided by the D.C. Department of Corrections pursuant to Title 24, Section 803[b] of the D.C. Code [Youth Rehabilitation Act 1985].

[ ] ORDERED that the defendant be placed on probation in charge of the Director, Social Services Division, and it is further ORDERED that while on probation the defendant observe the following marked conditions of probation:

[ ] Observe the general conditions of probation listed on the back of this order.

[ ] Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with written notice from your Probation Officer.

[ ] Treatment for [ ] alcohol problems [ ] drug dependency or abuse as follows: **A TRUE COPY** *6-14-07* **TEST:**

[ ] Restitution of $ _____ in monthly installment **Clerk Superior Court of the** beginning _____ (see reverse side for pay **District of Columbia** the court will distribute monies to _____ **By:** _____ **Deputy Clerk**

[ ]

Costs in the aggregate amount of $ _____ have been assessed under the Victims of Violent Crime Compensation Act of 1981, and [ ] have [ ] have not been paid.

ORDERED that the Clerk deliver a true copy of this order to appropriate authorized official(s) and that the copy shall serve as the commitment/order for the defendant.

*June 26 1990*
Date

*Ricardo M. ____*
Judge

Certification by Clerk pursuant to Criminal Rule 32(d).

*June 26 1990*
Date

*Gerald A. Mc ____*
Deputy Clerk

Form CDR19-1040/Aug. 87

<u>DARRYL J. SMITH</u>, APPELLANT, v. UNITED STATES, APPELLEE
**District of Columbia Court of Appeals**
**591 A.2d 229;1991 D.C. App. LEXIS 118**
**No. 90-564**
**April 25, 1991, Argued**
**May 24, 1991, Decided**

**Editorial Information: Prior History**

Appeal from the Superior Court of the District of Columbia; Hon. Frederick H. Weisberg, Trial Judge.

**Disposition:** *Affirmed.*

**Counsel**                                      *Stephen I. Singer,* Public Defender Service, with whom *James Klein,*
Public Defender Service, was on the brief, for appellant.
*Stevan E. Bunnell,* Assistant United States Attorney, with whom
*Jay B. Stephens,* United States Attorney, *John R. Fisher* and *G. Paul Howes,* Assistant United
States Attorneys, were on the brief, for appellee.

**Judges:** Terry and Steadman, Associate Judges, and Kern, Senior Judge.

**Opinion**

**Opinion by:**           STEADMAN

**Opinion**

{591 A.2d 230} The issue in this appeal, although technically one of sufficiency of the evidence, basically involves the scope of the criminal offense of obstruction of justice insofar as it applies to witness tampering. The relevant provision,  D.C. Code § 22-722 (a)(1) (1989), reads:

(a) A person commits the offense of obstruction of justice if that person:

(1) Corruptly, or by threats or force, endeavors to influence, intimidate, or impede any juror, witness, or officer in any court of the District of Columbia in the discharge of his or her duties.

Appellant was convicted under this provision for attempting to persuade two friends of his to testify falsely on his behalf about his lack of participation in an alleged murder. We affirm.

I

Appellant was arraigned on August 24, 1988, for a murder committed twenty-two days before. Shortly after being released, on September 8, 1988, he asked two friends of his, Dominic Dorsey and Joseph Calhoun, to testify that they had been with appellant at the scene of the killing and had seen the killing committed not by appellant but instead by one Larry Epps. As Dorsey testified, "he wanted us to say that -- when we went to court, he said he wanted us to be his witness and say that he didn't do it." About 10 days later, appellant again approached Calhoun, along with another friend of appellant,

dccases                                    1

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Lamarr Young, and asked them to testify to a more elaborate story also pinning the blame on Epps. Appellant told Young to tell this story "to whoever when I come to court and tell it to the judge." Some days later, after learning that the police wanted to talk to witnesses, appellant, Calhoun, and Young again talked about the story.

In fact, Calhoun was not present at the scene of the killing or anywhere near it. Dorsey was a member of the group that accompanied appellant to the apartment house where the killing took place and was a witness to the events in the apartment {591 A.2d 231} where appellant, the victim, and Epps (among others) were all present shortly prior to the killing; however, Dorsey was not present at the time or scene of the killing, which took place in a stairwell. Calhoun initially told the Assistant United States Attorney that Epps had been the killer but eventually admitted he was not anywhere present. Dorsey refused to go forward with the false story. Young, who was an eyewitness, testified at the trial that appellant had been the killer. At the trial, appellant was acquitted of the murder but convicted on two counts of obstruction of justice under D.C. Code § 22-722 (a)(1), which related to his conversations with Calhoun and Dorsey. 1

Appellant's arguments with respect to the sufficiency of the evidence address the two counts in somewhat different but related ways. We take each in turn.

II

With respect to Dorsey, appellant's assertion is that no evidence was introduced that at the time appellant spoke to him, Dorsey was expected to testify and that he was therefore not a "witness" as required by the statute. 2

The word "witness" is not defined in the statute itself. The jury was instructed, without objection by appellant, that in order to convict, the government must prove beyond a reasonable doubt that Dorsey "was a witness or a potential witness in a case pending in the District of Columbia Superior Court." 3 The jury was further instructed:

The term "witness" means a person who knows or may know facts that are material to a pending case and who is expected to testify in that case, whether or not the person has actually been subpoenaed to testify at that time. A person is not a witness when regardless of his knowledge of material facts bears [sic -- presumably "there is"] no present expectation or intention that the person will be called to testify.

This was a substantially correct statement of the law. D.C. Code § 22-722 was part of the District of Columbia Theft and White Collar Crimes Act of 1982. In the main, it carried forward the provisions of pre-existing law, D.C. Code § 22-703 (1981), which in turn reflected the provisions of former 18 U.S.C. § 1503 (1970). The Extension of Comments of the chairperson of the Committee on the Judiciary, July 20, 1982, in commenting on proposed section 722, states that "as under the current law, the term 'witness' is intended to mean a person who knows or is supposed to know material facts about a case which is pending and who may be called to testify," citing in a footnote United States v. Jackson, 168 App. D.C. 198, 513 F.2d 456 (1975). In that case, involving 18 U.S.C. § 1503, the court stated that "indubitably, one is a witness, within the meaning of section 1503, when he knows or is supposed to know material facts, and expectably is to be called to testify to them." United States v. Jackson, supra, 168 U.S. App. D.C. at 201, 513 F.2d at 459.

The facts here supported a jury finding that Dorsey was a witness within the above definition. As one who had accompanied {591 A.2d 232} appellant to the general area of the killing, he clearly had knowledge of relevant facts immediately surrounding the offense, and could be expected to testify concerning them. See Toliver v. United States, 468 A.2d 958 (D.C. 1983). Certainty as to one's role as a witness is not the test; it is whether there is a reasonable expectation to that effect. As put in the

dccases                                            2

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Extension of Comments quoted above, the issue is whether the person "may" be called to testify. Thus, even if Dorsey is regarded as a potential witness for the prosecution, we think the jury could find him to be a protected "witness."

III

The argument with respect to Calhoun is more intricate. Here it cannot be questioned that at the moment when appellant first approached Calhoun, he (Calhoun) knew no facts material to appellant's murder trial and therefore at that point in time was not a "witness." Appellant asserts that under the statute, a person must have the status of a "witness" at a point pre-existing the moment when a defendant first "endeavors to influence, intimidate, or impede" that person in any statements concerning the offense. The government meets this argument in two mutually reinforcing ways, both of which we think are correct.

A

First, however relevant appellant's position may be with respect to witnesses for the prosecution, it fits poorly when dealing with witnesses for the defense. As to the latter, it is the defendant who to a greater or lesser degree determines who are to fall in that category, potential or actual. If, as here, by his actions, a defendant attempts to vest a person with the status of one who "may know" or "is supposed to know" -- for it is not actual knowledge that is required -- then that person indeed becomes a witness within the meaning of the statute.

The statutory goal of preventing the obstruction of justice requires no less. The provision at issue here by its language covers the broad category of participants, potential or actual, in pending criminal proceedings, and its application extends not only to those who inherently fall within that category by their actual knowledge of material facts but those as well who are by the defendant's own acts brought within that category.

The defendant argues that such an interpretation makes meaningless the prohibition against subornation of perjury, contained in another section of the 1982 Act, D.C. Code § 22-2512 (1989). However, that provision, dealing with a wide variety of statements under oath, covers a multitude of instances which would not be reached by § 22-722 (a)(1), and the latter section likewise covers far more than attempts to seek false testimony. Cf. *United States v. Partin*, 552 F.2d 621, 631 (5th Cir.) (noting that attempted subornation of perjury "may well" violate witness tampering provision of former federal obstruction of justice statute), cert. denied, 434 U.S. 903, 98 S. Ct. 298, 54 L. Ed. 2d 189 (1977). Furthermore, there is nothing remarkable in the fact that the same act may violate two or more statutory provisions. See, e.g., Holt v. United States, 565 A.2d 970 (D.C. 1989) (en banc).

B

Furthermore, appellant's contact with Calhoun here was not limited to a single encounter. By the time the second and third meetings had occurred, Calhoun had become knowledgeable of facts material to the pending litigation; namely, appellant's consciousness of guilt in seeking fabricated testimony. See Smith v. United States, 312 A.2d 781, 784-85 (D.C. 1973) (testimony that defendant had threatened a witness constituted highly relevant implied admission of guilt). Indeed, the trial court without objection instructed the jury that they "may consider" appellant's attempts to influence Dorsey and Calhoun to testify falsely as evidence "tending to prove Mr. Smith's consciousness of guilt," although they were not required to do so. While we recognize that reliance upon this theory {591 A.2d 233} standing alone could present potential jury unanimity problems, no such objection was raised at trial or request for a unanimity instruction made, and we perceive no "plain error" in that regard. *Shivers v. United States*, 533 A.2d 258, 263 (D.C. 1987).

dccases                                           3

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

For the foregoing reasons, the judgment of conviction appealed from must be

*Affirmed.*

### Footnotes

1

Appellant was not charged with obstruction of justice with respect to his conversation with Young. The trial court granted appellant's motion for a judgment of acquittal on a third count of obstruction of justice relating to one Howard Benson-El.

2

Appellant appears to bifurcate this argument into two parts, namely, whether Dorsey himself expected to testify and whether appellant himself knew or had reason to know that Dorsey was expected to testify. We see no significance in this distinction for purposes of this appeal, since a jury could easily infer that both Dorsey and appellant knew or had reason to know of Dorsey's potential as a witness. In this regard, we think the facts here significantly differ from *Walker v. United States,* 93 F.2d 792 (8th Cir. 1938), on which appellant places heavy reliance. In that case, a split 2-1 decision, the person approached was a co-defendant who could not be forced to testify, and the court apparently thought it important that the evidence show that she "intended to be a witness." No such problem is presented in the case before us.

3

Appellant now takes issue with the use of the phrase "potential witness," but this is a helpful clarification whose import was made clear by the further explanation of the term.

dccases                                     4

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



IN THE DISTRICT OF COLUMBIA COURT OF APPEALS

LARRY D. EPPS,
DEFENDANT/PETITIONER,

     VS.                          CASE No.: F9286-88B

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA,
and HONORABLE CHERYL M.LONG, JUDGE,

### Petition For A Writ of Mandamus

    Comes now, Larry D. Epps, Hereinafter petitioner, and pur-
suant to the applicable law, title 28 U.S.C., Sec. 1651, and the
**XIV** Amendment, U.S.Constitution, moves This Honorable Court For
an order to issue grant a writ of mandamus is the cited case.

[1] **Relief  Requested**

    An order to issue to order the Superior Court For the District
of Columbia, and Hon. Cheryl M. Long,Judge, to unseal the trans-
cript[s], and related documents pertaining to the criminal prose-
cution of the named Petitioner. Order The Court to Furnish the
Petitioner copies of the transcripts, or in the alternative,
allow the petitioner to purchase the transcript[s].

[2] **Statement of the case:**

    [a] Petitioner, Larry D. Epps, was indited #F9286-88B .
Charged: Felony Murder While Armed. Based upon the advise of
counsel, and written plea agreement Petitioner intered a plea
of guilty to the lesser charge of Second Degree Murder.

The written plea agreement stipulated, "the government would not allocute during the sentencing proceedings. Further, the government stipulated that the government would not oppose a rule 35.

[c] **Sentencing:** The court, Honorable Peter H. Wolf, Judge Sentenced Petitioner to a 12 to Life term of inprisonment, No Direct appeal was Filed. See: Exhibit # 1. Judgement & commitment order.

[d] **Assigned Counsel**[s]: Attorney **Shirliemarie M. Gray,** Esq., was the assigned counsel during the plea proceeding,arraignment and Sentencing. Assistant U.S.Attorney, Paul Howes, represented the government.

[e] **Collateral Proceedings:**

The Documented Record Shows a Rule 35... was filed, 10/23/1989. A hearing was conducted, 4/9/1990.* Attorney Carrie L.;Fair, Esq., assisted the Petitioner during the hearing.

During the Rule35... Proceeding, the record should show, The government informed the court that the * The Hon.**Ricardo Urbina,** Judge, Presided. The record show The Hon.**Peter H.Wolf** Recused from presiding during further proceedings in the case. See: EXHIBIT #2.

Petitioner shot the victim seconds before the victim would have shot the defendat. Based upon this information the court vacated the petitioner's sentence of 12 to Life, and imposed a period of Probation. See: EXHIBIT #3. Judgement & Commitment.

10 April 1990, Petitioner was assigned to a Drug Program, Denver, Colorado.Stout Street Drug treatment Program. Due to a verbal ...

3

verbal confrontation with a resident in the program petitioner
was terminated, and ordered to return to the District of Col-
umbia.

upon petitioner's return to the District a Revocation
Hearing was ordered. Dated: June 27, 1990. The Hon. Judge
Urbina, presided. The court Revoked the period of probation,
and resentenced the petitioner to the original sentence, 12 to
life. Attorney Carrie L. Fair, Esq, filed a rule 35, thereafter.
The court, Hon. Urbina, Judge, denied the motion, A direct appeal
was initial. D.C.C.A. No:<u>91-00265</u>

Record Shows the petitioner's Prose motion styled, "motion
to reconsider, reduce, modify, or suspend pursuant to Superior
Court Rule 35..."Additionally, a motion styled, "Motion For Pro-
duction of documents[Transcripts] was attached.  The motion was
filed, July 23, 2004.  In a order dated, 9, November 2004, the
court denied the motions. See: EXHIBITS # 4. 2. 5.

[3] **Reason why order should Issue:**

[1] Petitioner is presently suffering collateral consequences
a direct proximate of the failure of the government to honor the
written plea agreement.

[2] The Transcripts of the plea collony & the Rule 35...
proceedings will show the government informed the court that the
incarceration of the petitioner would terminate upon a finding of
a "Suitable" Drug Treatment Program.

4

[3] The transcripts are required in order to ensure the Petitioner receive a full and fair hearing in the courts. on the merit of his claim, "The government breached the plea agreement, and committed fraud upon the court.

**Argument:** A writ of mandamus is a. extraordinary writ which is use when there is no other available remedy.  In the instant case the petitioner has exhausted the available remedy. The Superior Court has refused to make available the transcripts of the following proceedings:

        [a] The Arraignment / plea colloquy, Dated, May 8, 1989

        [b] The Rule 35. Proceedings, Date, April 9, 1990

        [C] The Show Cause Hearing, Date, Jun 26, 1990

Wherefore, Petitioner believes, justice so requires the court to grant the relief requested.

DATED: _____/____/2004.

Larry D. Epps, #36966-718
USP., Atlanta, P.O. BOX 150160
Atlanta, Ga 30315

CC:  Hon. Cheryl M. Long, Judge
CC:  Office of the Clerk, D.C.Sup. Ct.
Avers:  Titles 28 USC, §1746 & 18 USC,
       §1621.

Larry D.Epps,

4

CERTIFICATE OF SERVICE

Pursuant to the penalty of perjury, I avers, a true and correct copy of the foregoing pleading, "Motion For Reconsideration of Rule 35... Notice ofIntent To File Mandamus" has been mailed Postage Paid and Sealed in a correctly addressed envelope to:

The Office ofthe Clerk

Superior Court For The District of Columbia

500 Indiana Ave., N.W.

Washington, D.C. 20001

Chief. Special Proceeding Section [FYI]

Office ofthe United States Attorney

555 Fourth Street, N.W.

Washington, D. C. 20001

CC: Honorable Cheryl M. Long, Judge

Done this __11__ day of __17_____ ,2004.

_Larry D. Epps_

Larry D. Epps #36966-118
U.S.P., Atlanta, Box 150160
601 Mc-Donough Blvd., S.E.
Atlanta, Georgia. 30315

Sworn to and Subscribed before me

This _____day of _____ ,2004.

_____
Notary Public
My Commission Expires:_____

Page #1 of 1